**No. 22-11226**

In the

# United States Court of Appeals

for the

# Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff – Appellee,*
v.
TIMOTHY BARTON,
*Defendant – Appellant.*

From the United States District Court
for the Northern District of Texas
Honorable Brantley Starr, U.S. District Judge
Cause No. 3:22-cv-2118-X

**Receiver's Motion to Dismiss**

Brown Fox PLLC
Charlene C. Koonce
State Bar No.11672850
8111 Preston Road, Suite 300
Dallas, TX 75225
T: (214) 327-5000
F: (214) 327-5001
charlene@brownfoxlaw.com

*Counsel for Receiver Cortney C. Thomas*

## I. INTRODUCTION

On December 21, 2022, Appellant Timothy Barton filed a notice of appeal of the Order Granting Receiver's Motion for sale of the Rock Creek Property (the "Order"). No appellate jurisdiction exists for an interlocutory appeal of this Order and the Receiver accordingly moves the Court to dismiss this appeal. In support, he respectfully shows the Court as follows:

## II. BACKGROUND

The SEC filed suit against Barton for securities fraud. Dkt.1[1] Through its investigation, the SEC discovered "Barton had been commingling, transferring, dissipating, and encumbering investor funds and assets purchased with investor funds," while at the same time using investor funds to "pay personal expenses of Barton and his family, including exorbitant credit card bills, rent, and to buy a plane." Dkt. 6 at 2, 7. To preserve the limited assets available to repay the investors whose funds Barton had misappropriated, the SEC filed a Motion for Appointment of Receiver ("Motion to Appoint"). Dkt. 6.[2]

On October 18, 2022, the District Court entered the Order Appointing Receiver ("Receivership Order") Dkt. 29. The factual basis for the Receivership

[1] References to the District Court's docket are referenced above as "Dkt._."

[2] Barton was also indicted on seven counts of wire fraud, one count of conspiracy to commit wire fraud, and one count of securities fraud due to his alleged misuse of over $26 million acquired from investors.

Order was Barton's misappropriation of investor funds, which the SEC's evidence demonstrated he misused to, "among other things, purchase properties in the name of other entities he controlled, pay undisclosed fees and commissions, pay expenses associated with unrelated real estate development projects, and fund his lifestyle." Dkt. 6 at 1; Dkt. 7 at 10–15.

The Receivership Order directs the Receiver to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend, compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." Receivership Order ¶¶ 6(H), 6(J). In accordance with the further orders and governing statutes, such as 28 U.S.C. §§ 2001 and 2004, the Receivership Order also authorized the Receiver to sell real property owned by the Receivership Entities. Receivership Order ¶ 39.

On December 2, 2022, in accordance with 28 U.S.C. § 2001, the Receivership Order, and a subsequent Order Governing Administration of Receivership Estate, (Dkt. 63)[3] the Receiver filed a Motion for Appointment of Appraisers, Approval of

[3] "Sale of Real Property, if any, shall be made pursuant to 28 U.S.C. § 2001 with further motions and notices filed and published as required by that statute. If multiple offers are received from disinterested purchasers for any one property, the Court hereby concludes that the Receiver may, in his discretion, utilize any one or more of such offers as one or more of the "appraisals" required by § 2001(b). Similarly, the Receiver may in his discretion utilize informal "opinions of value" received from respected brokers in the respective industries related to the subject property, as one or more of the "appraisals" required by § 2001(b)." Order Governing Administration of Receivership Estate ¶ (D)(2).

Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property ("Motion to Approve Sale"). Dkt. 76. Following an objection filed by Defendant Barton (Dkt. 91), the Receiver's Notice of Publication regarding the sale (Dkt. 100, 101) and the Receiver's Reply in Support of the Motion, (Dkt. 93), the District Court granted the Motion to Approve Sale, in part, by appointing the appraisers and accepting the appraisals submitted with the Motion to Approve Sale. Dkt.99. On December 19, 2022, the District Court conducted a hearing to consider approving the sale. Following the hearing, on December 20, 2022, the District Court entered an order approving the sale (Dkt. 104) (the "Rock Creek Order"). True and correct copies of the Motion to Approve Sale and the Rock Creek Order are attached to this Motion.

On December 21, 2022, Barton filed a notice of appeal, seeking this Court's review of the Rock Creek Order. Dkt. 108. No jurisdiction exists for the appeal.

## III. <u>ARGUMENT</u>

"Congress has given the courts of appeals jurisdiction over interlocutory appeals only in certain, limited circumstances." *Complaint of Ingram Towing Co.*, 59 F.3d 513, 515 (5th Cir. 1995). The exceptions are found at 28 U.S.C. § 1292,[4]

[4] "(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court; (2) Interlocutory orders appointing receivers, or

with section 1292(a)(2) governing appeals of certain orders related to receiverships. Although the statue is not a model of clarity, it does not provide appellate jurisdiction "mid-stream" orders issued in the ordinary course of a receivership, like the Rock Creek Order.

"Courts narrowly construe § 1292(a)(2) 'to permit appeals only from the three discrete categories of receivership orders specified in the statute, namely [1] orders appointing a receiver, [2] orders refusing to wind up a receivership, and [3] orders refusing to take steps to accomplish the purposes of winding up a receivership.'" *US v. Solco I, LLC*, 962 F.3d 1244, 1250 (10th Cir. 2020) (quoting *In re Pressman-Gutman Co.*, 459 F.3d 383, 393 (3d Cir. 2006)). Every circuit to address the meaning of § 1292(a)(2)'s 'refusing orders' interprets it to "permit[ ] appeals only from orders 'refusing . . . to take steps to accomplish the purposes of [winding up receiverships].'" *Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015) (quoting *SEC v. Am. Principals Holdings, Inc.*, 817 F.2d 1349 (9th Cir. 1987)) (brackets in original).[5]

---

refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property; (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." 28 U.S.C. § 1292(a).

[5] Indeed, although not explicit, *Netsphere* indicates that sales of property by a receiver are not appealable under 28 U.S.C. § 1292. "In *United States v. "A" Manufacturing Co., Inc.*, we addressed the question of whether an order by a receiver confirming a sale after the fact is appealable under section 1292(a)(2). We said it was, relying mainly on cases interpreting the final-judgment doctrine. But in doing so, we used expansive language to describe section 1292(a)(2), saying it 'provides for appeals from interlocutory orders which take steps to accomplish the

Because of the exceptional nature of the relief, Congress made orders appointing receivers immediately appealable. *Netsphere*, 799 F.3d at 332. However, orders "entered in the normal course of a receivership," are treated differently. *Id.* As recently observed by the Eleventh Circuit, the difference between 28 U.S.C. §§ 1292(a)(2) and 1292(a)(1) reveals the different treatment afforded interlocutory appeals of orders related to injunctions and orders related to receiverships:

> "That provision [1292(a)(1)] more broadly confers jurisdiction over orders 'granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.' 28 U.S.C. § 1292(a)(1). It thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or 'dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review of interim receivership-related orders, it could have included similar language in § 1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022).

"To conclude otherwise would mean that virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable. Such a piecemeal approach to the appellate process would be disruptive and costly, both to the parties and the courts." *Id.* at 332–33 (internal quotation omitted); *see also United States v.*

---

purpose of receiverships such as directing the sale or disposal of property.' This language arguably conflicts with the reading of section 1292(a)(2) we have just put forward." *Netsphere, Inc. v. Baron*, 799 F.3d 327, 333 (5th Cir. 2015) (internal citation omitted).

*Antiques Ltd. P'ship*, 760 F.3d 668, 671–72 (7th Cir. 2014) (concluding no jurisdiction existed over order approving receiver's sale of property, because "that would both strain the statutory language and make anything the receiver did appealable immediately, which could flood the courts of appeals with interlocutory appeals."). This Court found it lacked jurisdiction over other orders issued in the course of a receivership, such as orders authorizing the execution of a lease by a receiver.[6]

The Rock Creek Order does not fall within any of the three discrete categories of orders for which interlocutory jurisdiction exists. The Rock Creek Order approves a purely administrative matter, the sale of real estate. Approvals of other similar sales are likewise pending before the District Court. *See* Dkt.110. More will be filed. Entertaining this appeal will open the flood gates in this case, and in future receiverships, for Defendant Barton to appeal *every single administrative order*. Indeed, Defendant Barton has indicated his intent to do just that, by appealing the Order Governing Administration of Receivership Estate in Appeal No. 22-11132, and appealing an Order Ratifying a Settlement Agreement, Dkt. 109, in Appeal No. 22-11242.

The Court should dismiss this appeal.

[6] *See Belleair Hotel Co. v. Mabry*, 109 F.2d 390, 391 (5th Cir. 1940) ("The order appealed from dealt with an administrative matter within the discretion of the district court, and it does not fall within that class of interlocutory orders from which an appeal may be taken.").

## IV. CONCLUSION

The Receiver respectfully requests that the Court dismiss this appeal for lack of jurisdiction and requests such other relief to which he may show himself entitled.

Respectfully submitted,

By: */s/ Charlene C. Koonce*

Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF COMPLIANCE

1. I certify that this Motion complies with the type-volume limit of FED. R. APP. P. 21(d) because, excluding the words that need not be counted, it contains 1,697 words.

2. This Motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

*/s/ Charlene Koonce*
Charlene Koonce

## CERTIFICATE UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I certify that (1) required privacy redactions have been made (see Local Rule 25.2.13); (2) the electronic submission is an exact copy of the paper document (*see* Local Rule 25.2.1); and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Charlene Koonce*
Charlene Koonce

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | |
| | § | |
| ***Defendants,*** | § | |
| | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| | § | |
| ***Relief Defendants.*** | § | |

**RECEIVER'S MOTION FOR APPOINTMENT OF APPRAISERS, APPROVAL OF APPRAISALS OF ROCK CREEK PROPERTY, AND SETTING HEARING REGARDING APPROVAL OF SALE OF ROCK CREEK PROPERTY**

Cort Thomas, as the court appointed Receiver, respectfully moves the Court as follows:

## SUMMARY

In compliance with the Court's Order Appointing Receiver (the "Receivership Order") and 28 U.S.C. § 2001, the Receiver requests appointment of three appraisers, approval of the appraisals, and a hearing regarding approval of the sale of certain property.

## FACTUAL SUMMARY

1. On October 18, 2022, the Court entered an Order Appointing Receiver (the "Receivership Order") by which Cortney C. Thomas was appointed as Receiver for certain entities (the "Receivership Entities"). The Court directed the Receiver to take possession and control of all Receivership Property and Receivership Records. *Receivership Order* ¶¶ 6, 16, 17.

2. On November 16, 2022, the Court entered the Order Governing the Administration of the Receivership ("Administrative Order") which also established procedures in conformity 28 U.S.C. § 2001[1] for sales of real property.

3. In a Supplemental Order, the Court concluded that SF Rock Creek, LLC is a "Receivership Entity." [Dkt. 62].

4. Pursuant to the Receivership Order and in accordance with the Administrative Order, the Receiver listed 4107 Rock Creek Drive, Dallas, Texas 75204 (the "Property") for sale through Dan Rhodes of The Rhodes Group at Compass. (In the initial days of his appointment, the Receiver discovered that Defendant Barton, through SF Rock Creek, had also entered a listing

---

[1] "(a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs. Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts. (b) After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale. 28 U.S.C.A. § 2001.

agreement on October 17, 2022 related to the Property). *See* Declaration of Cort Thomas ("Thomas Dec.") included in the Appendix at pp. 1-3.

**A. SALE OF ROCK CREEK PROPERTY**

5. On November 16, 2022, subject to the Court's approval, the Receiver entered into a contract to sell the Property, "AS IS" for One Million Four Hundred Thousand Dollars ($1,400,000), to JNJ Group, LLC. A true and correct copy of the real estate contract is attached as Exhibit A (the "Contract"). *App.* pp. 5-22. JNJ Group, LLC is not related to, nor controlled by any of the parties to this lawsuit, and is not related to, nor controlled by the Receiver, or any of his agents, employees, or attorneys.[2] *Thomas Dec.* ¶ 3; *App.* p. 1.

6. Subject to the Court's approval, the closing is scheduled for December 28, 2022. Although the closing date may be extended by mutual agreement, if the buyer does not consent to extend the sale, the Buyer is entitled to terminate the Contract and receive a full refund of his $15,000 earnest money deposit. *Thomas Dec.,* ¶ 5; *App.* pp. 1; 17; 22.

7. The Receiver seeks permission from this Court to sell the Property pursuant to the Contract, and in accordance with the Administration Order and 28 U.S.C. § 2001.

8. In accordance with this Court's Orders and 28 U.S.C. § 2001 the Receiver obtained three independent appraisals of the Property. True and correct copies of the three appraisals are included in the Appendix as Exhibits B-1, B-2, and B-3. *App.* pp. 23-43; 44-70; and 71-94. The Receiver requests that the Court appoint the appraisers for the purpose of providing the attached appraisals and accept these three appraisals in satisfaction of the requirements of 28 U.S.C. § 2001(b).

[2] While the entity purchasing the Property has a trade name similar to Receivership Entity JMJ Development, the Receiver has confirmed that the entities are not related. *Thomas Dec.,* ¶

9. The three appraisals value the Property at $1,385,000,[3] $1,385,000,[4] and $1,410,000,[5] respectively, resulting in an average appraised value of $1,393,333. Thus, the contracted sales price, $1,400,000, not only exceeds two-thirds of the average appraised value of the Property as required by 28 U.S.C. § 2001(b), but in fact exceeds the average appraised value. Accordingly, the Receiver contends the sale of the Property pursuant to the Contract at the sales price of $1,400,000 is in the best interest of the receivership and exceeds two-thirds of the average appraised value.

10. In connection with a different motion, Defendant Timothy Barton submitted a redacted appraisal from June 2022 performed by Garvin Appraisals LLC, which used a cost approach to value the property at $2,061,228. The Receiver believes that the sale of the Property pursuant to the Contract at the sales price of $1,400,000 is nevertheless in the best interest of the Receivership because (1) Barton's appraisal does not use the correct valuation methodology;[6] (2) despite the Property being on the market for several weeks and receiving multiple offers, the negotiated sales price of $1,400,000 was the highest offer received, indicating that market conditions are consistent with the Receiver's appraisers' valuations of the Property; (3) even if Barton's appraisal of $2,061,228 were accurate, and the Receiver was able to obtain two additional independent appraisals that applied a correct methodology and arrived at the same value, a sale for $1,400,000 would still be authorized under 28 U.S.C. § 2001 because the price exceeds the 2/3 minimum ($1,374,152); and (4) if the value of the Property is as high as Barton contends, pursuant

---

[3] The appraisal was issued by Matthew Waldron and is dated as of November 29, 2022. *App.* pp. 23-43.

[4] The appraisal was issued by Bryan S. Hagen and is dated as of November 17, 2022. *App.* pp. 44-70.

[5] The appraisal was issued by Mark V. Milliorn and is dated as of November 18, 2022. *App.* pp. 71-94.

[6] As reflected in each of the three appraisals submitted with this Motion, real estate appraisals for residential properties usually value properties based on a sales comparison or market approach, not a cost approach.

to 28 U.S.C. § 2001, another bona-fide independent buyer can purchase the property by submitting a bona fide offer exceeding $1,540,000. *Thomas Dec.,* ¶¶ 11; *App.* pp. 2.

11. Finally, while Barton has insisted that the Receiver should not sell the Property at this time, the sale is necessary because, among other things, (1) utility and insurance payments continue to deplete whatever value exists in the home, (2) loan and interest payments continue to accrue, further depleting any recovery from sale of the Property, (3) the administrative costs of the Receivership incrementally increase with each managed property, and (4) current economic uncertainty makes it impossible to predict how difficult it will be to sell the Property in the coming months. *Thomas Dec.,* ¶¶ 12; *App.* p. 3.

**B. NOTICE OF SALE AND REQUIRED HEARING**

12. The governing statute, 28 U.S.C. § 2001, also requires that the Court conduct a hearing to consider the proposed sale. And, at least ten days before the hearing, the statute requires publication of the terms of the proposed sale so that bona fide interested purchasers can submit competing bids of not less than 10% more than the Contract price. Any competing offers should be accompanied by proof of funds for a cash sale, or confirmation of approved financing to allow an immediate closing on the same "AS IS" basis provided in the Contract.

13. The Receiver accordingly requests that the Court schedule a hearing before December 28, 2022 to consider the sale. The Receiver will publish notice of the hearing at least ten (10) days prior to the hearing as required by 28 U.S.C. § 2001(b) and provide notice of the hearing through the receivership website.

14. The Receiver requests that any bona fide offers for purchase of the Property which exceed by ten percent (10%) the Contract sales price of $1,400,000 be served on the Receiver and filed with the Court not later than two days before the hearing scheduled to consider the sale.

## CONCLUSION AND PRAYER

As set forth above, the Receiver requests that the Court (1) appoint the three appraisers identified above and in the appraisals included in the Appendix, (2) approve and accept the appraisals provided by each appraiser; (3) set this matter for hearing to consider approval of the sale on the terms provided by the Contract or as offered in any bona fide competing offer received after the date of this Motion; and, (4) provided no timely bona fide offers exceeding the Contract price by 10% are received two days before the date of the hearing, enter an order authorizing the Receiver to sell the Property pursuant to the terms of the Contract. The Receiver also requests such other and further relief to which he is justly entitled.

Respectfully submitted,

By: */s/ Charlene C. Koonce*

Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on December 1, 2022, the Receiver conferred with counsel for all parties regarding the relief requested in this Motion. The SEC and Defendant Fu are unopposed to the relief requested herein. As of the date and time of filing, Defendant Barton had not responded to the conference on this Motion, but the Receiver presumes he is opposed. Defendant Wall also did not respond to the conference.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | |
| | § | |
| ***Defendants,*** | § | |
| | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| | § | |
| ***Relief Defendants.*** | § | |

**ORDER APPOINTING APPRAISERS, APPROVING APPRAISALS, AND SETTING HEARING REGARDING APPROVAL OF SALE OF ROCK CREEK PROPERTY**

Before the Court is the Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property (the "Motion"). Having considered the Motion, the Court is of the opinion that it should be GRANTED.

Accordingly, it is hereby ORDERED that pursuant to 28 U.S.C. § 2001(b) the Court appoints the three appraisers identified in Exhibits B-1, B-2, and B-3 submitted in support of the

Motion as qualified disinterested persons for appraisal of the Property. The Court further ACCEPTS the three appraisals submitted in Exhibits B-1, B-2, and B-3 as the appraisals required by 28 U.S.C. § 2001(b).

IT IS FURTHER ORDERED that on ____________________, 2022, at _____ a.m./p.m., the Court will hear arguments and objections regarding confirmation of the sale of the Property pursuant to the Contract submitted with the Motion. The Court's consideration of the sale will be contingent on the Receiver publicizing the terms of the proposed sale prior to the hearing and providing a ten-day window following publication in which anyone objecting to the proposed sale may submit to the Receiver a bona fide offer for the purchase of the Property exceeding the proposed sale price by at least ten percent (10%).

Any such bona fide offer SHALL BE accompanied by proof of sufficient funds for a cash sale, or confirmation of approved financing to allow an immediate closing on the same "AS IS" basis for the in the Contract submitted with the Motion. Further, any bona fide offers for purchase of the Property which exceed by ten percent (10%) the Contract sales price of $1,400,000 SHALL BE served on the Receiver and filed with the Court not later than two days before the hearing.

SO ORDERED this ______ day of ___________________, 2022.

______________________________________
BRANTLEY STARR
UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>TIMOTHY BARTON,<br>CARNEGIE DEVELOPMENT, LLC,<br>WALL007, LLC,<br>WALL009, LLC,<br>WALL010, LLC,<br>WALL011, LLC,<br>WALL012, LLC,<br>WALL016, LLC,<br>WALL017, LLC,<br>WALL018, LLC,<br>WALL019, LLC,<br>HAOQIANG FU (a/k/a MICHAEL FU),<br>STEPHEN T. WALL,<br><br>*Defendants*,<br><br>DJD LAND PARTNERS, LLC, and<br>LDG001, LLC,<br><br>*Relief Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 3:22-CV-2118-X |

**ORDER GRANTING MOTION TO APPROVE SALE**

Before the Court is the Receiver's motion to approve the sale of property at 4109 Rock Creek Drive, Dallas, Texas 75402 (the "Property") [Doc. No. 76] and Defendant Timothy Barton's cross-motion to prohibit that sale [Doc. No. 91]. Also before the Court is the Receiver's Motion to Declare Lis Pendens Void. [Doc. No. 96].

At the conclusion of the hearing before the Court yesterday, and for the reasons stated at the hearing, the Court made the following findings. First, the proposed sale satisfies all statutory requirements: the Receiver published notice of the sale,[1] the proposed sale price exceeds two-thirds of the appraised value, and the Receiver received no competing offers.[2] Second, the proposed sale is in the best interest of the Receivership. And third, Barton's Notice of Lis Pendens on the Property is void and, as defense counsel acknowledged during the hearing, it would not have encumbered the sale even if it were not.

In light of these findings, the Court **GRANTS** the Receiver's motion for sale of the Property [Doc. No. 76] and **DENIES** Barton's motion to prohibit the sale [Doc. No. 91]. The Court **GRANTS** the Receiver's motion to declare the lis pendens void and **ORDERS** Barton to pay, within three days of this Order, $1,200 to the Receiver for fees incurred in opposing the lis pendens. [Doc. No. 96]. During the hearing, defense counsel made an oral motion to stay the sale of the Property should the Court find that selling it is in the Receivership's best interest. For the reasons stated at the hearing, the Court **DENIES** that oral motion.

Finally, as discussed at the hearing, the Court **ORDERS** the Receiver to remove Barton's personal items[3] from the Property before the Property is sold, and to place them in storage at the expense of the receivership estate. If storage expenses cause the personal items to rapidly deteriorate in value when compared to the cost of

[1] *See* Doc. No. 100.

[2] 28 U.S.C. § 2001(b).

[3] *See* Doc. No. 89 at 2 (detailing the items).

the storage, the Receiver may seek Court approval to sell the items, and Barton must notify the Court in response if he will pay the storage costs to avoid a sale.

**IT IS SO ORDERED,** this 20th day of December, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE