NO. 22-11226

IN THE UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

# BRIEF OF APPELLANT TIMOTHY BARTON

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Parties**

   a. **Defendant-Appellant**: Timothy Barton

   b. **Plaintiff-Appellee**: Securities and Exchange Commission

   c. **Intervenors**:

      i. United States of America

      ii. Gillespie Villas LLC

      iii. Venus59 LLC

      iv. TRTX Properties LLC

      v. MXBA LLC

      vi. Titan Investments LLC

      vii. HNGH Turtle Creek, LLC

   d. **Other Personal Defendants** (entity defendants included below)

      i. Haoqiang Fu *also known as* Michael Fu

ii. Stephen T. Wall

**2. Attorneys**

a. **For Appellant**: Hunton Andrews Kurth LLP: Michael J. Edney, Ted Huffman, Michael Dingman

b. **For Appellee**: Keefe M. Bernstein, James E. Etri, David B. Reece

c. **For Defendant Stephen T. Wall**: Johnson Vaughn & Heiskell: Michael P. Heiskell

d. **For Interested Party HNGH Turtle Creek**: Kirkland & Ellis LLP: Erin Angela Nealy Cox; Kane Russell Coleman & Logan PC: John Joseph Kane

e. **For Interested Party Maximilien Barton**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

f. **For Intervenors Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, and Titan Investments LLC**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

g. **For Interested Party David Dhiraj Ramolia**: Chandler & Shavin PLLC: Eliot Dana Shavin, Daniel Rasoul Alexander; Chandler Law PC: Corinna Pia Chandler

h. **For Interested Party Palisades-TC, LLC**: Tillotson Law: Jonathan Patton

i. **For Interested Party Circle H Contractors, LP**: Slates Harwell LLP: Aaron Capps

j. **For Interested Party MFO Venus Development, LLC**: Ian Fullington

**3. Other**

**a. 159 Other Entities Seized**

| | | |
|---|---|---|
| Carnegie Development, LLC (Defendant) | WALL007, LLC (Defendant) | WALL009, LLC (Defendant) |
| WALL010, LLC (Defendant) | WALL011, LLC (Defendant) | WALL012, LLC (Defendant) |
| WALL016, LLC (Defendant) | WALL017, LLC (Defendant) | WALL018, LLC (Defendant) |

| | | |
|---|---|---|
| WALL019, LLC (Defendant) | DJD Land Partners, LLC (Relief Defendant) | LDG001, LLC (Relief Defendant) |
| BM318 LLC | D4DS LLC | D4FR LLC |
| D4KL LLC | Enoch Investments LLC | FHC Acquisition LLC |
| Goldmark Hospitality LLC | JMJ Acquisitions LLC | JMJ Development LLC |
| JMJAV LLC | JMR100 LLC | Lajolla Construction Management LLC |
| Mansions Apartment Homes at Marine Creek LLC | MO 2999TC, LLC | Orchard Farms Village LLC |
| Villita Towers LLC | 126 Villita LLC | AVEG WW, LLC |
| AVG West, LLC fka JMJ Acquisitions, LLC | Barton Texas Water District, LLC | Barton Water District, LLC |

| | | |
|---|---|---|
| BC Acquisitions, LLC | BEE2019, LLC | Broadview Holdings, LLC |
| Broadview Holdings Trust | BSJ Trading, LLC | BUILD VIOLET, LLC |
| Carnegie Development, Inc. | D4AT, LLC | D4AVEG, LLC |
| D4BM, LLC | D4BR, LLC | D4IN, LLC |
| D4MC, LLC | D4OP, LLC | D4OPM, LLC |
| D4SMC, LLC | D4WP, LLC | Dallas Real Estate Investors, LLC |
| Dallas Real Estate Lenders, LLC | Dallas Real Estate Management, LLC | Five Star GM, LLC |
| Five Star MM, LLC | FIVE STAR MM, LLC | Five Star TC, LLC |
| Glenwood (18340) Property, LLC | HR Sterling, LLC | Illuminate Dallas, LLC |
| JB Special Asset, LLC | JMJ Acquisitions Mgmt, LLC | JMJ Aviation, LLC |

| | | |
|---|---|---|
| JMJ BLUES TX, LLC | JMJ Centre, LLC | JMJ Development Brasil, LTDA |
| JMJ Development, Inc | JMJ Development Fund | JMJ Development Fund, Inc |
| JMJ EB5 Fund, LP | JMJ EB5 Fund GP, LLC | JMJ Holdings, LLC |
| JMJ Holdings US LLC | JMJ Holdings USA, Inc. | JMJ Home Building Inc. |
| JMJ Hospitality, LLC | JMJ Hospitality General Trading FZE | JMJ Hospitality UAE |
| JMJ Investments Limited | JMJ Land Acquisition, Inc | JMJ Land Development, Inc |
| JMJ Land Venture, LLC | JMJ MF Development, LLC | JMJ Mezzanine, Inc |
| JMJ Multifamily, Inc | JMJ Offshore, LTD | JMJ Regional Center, LLC |
| JMJ Residential, LLC | JMJ Valley Center, LLC | JMJ VC Management, LLC |

| | | |
|---|---|---|
| JMJ148, LLC | JMJAV, LLC | JMJD4, LLC |
| JMJD4Allensville LLC | JMJDWG, LLC | JMJKH, LLC |
| LC Aledo TX, LLC | Lynco Ventures, LLC | Lynn Investments, LLC |
| Lynco Ventures, LLC | Mansion Apartment Homes at Marine Creek, LLC | MCFW, LLC |
| MCRS2019, LLC | Middlebury Trust | MMCYN, LLC |
| MXBA Managed, LLC | MXBA Services, LLC | Myra Park 635, LLC |
| Northstar 114, LLC | Northstar PM, LLC | One Agent, LLC |
| One Agent Texas, LLC | ONE FHC, LLC | One MFD4, LLC |
| One Pass Investments, LLC | One RL Trust | ONE SF Residential, LLC |
| Residential MF Assets, LLC | Ridgeview Addition, LLC | Riverwalk Invesco, LLC |

| | | |
|---|---|---|
| Riverwalk Opportunity Management, LLC | Riverwalk OZFM, LLC | Riverwalk OZFV, LLV |
| Riverwalk QOZBJ, LLC | Riverwalk QOZBM, LLC | Riverwalk QOZBV, LLC |
| Seagoville Farms, LLC | SF Rock Creek, LLC | SK Carnegie, LLC |
| STL Park, LLC | The MXBA Trust | The Timothy L. Barton Irrevocable Life Insurance Trust |
| TLB 2018 Trust | TLB 2019 Trust | TLB 2020 Trust |
| TRWF, LLC | TRWF LODGE, LLC | VenusBK195, LLC |
| VenusPark201, LLC | WRL2019, LLC | 126 Villita Towers, LLC |
| 2999 Acquisitions, LLC | 2999 Middlebury, LLC | 2999 Roxbury, LLC |

| | | |
|---|---|---|
| 2999TC Acquisitions, LLC fka 2999TC, LLC | 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC | 2999TC Founders, LLC |
| 2999TC JMJ, LLC | 2999TC JMJ, LLC | 2999TC JMJ CMGR, LLC |
| 2999TC JMJ Equity, LLC | 2999TC LP, LLC | 2999TC JMJ MGR, LLC |
| 2999TC MZ, LLC | 2999TC MM, LLC | TC Hall, LLC |
| Titan 2022 Investment, LLC | Marine Creek SP, LLC | Aledo TX, LLC |

**b. Interested Parties**

i. Bank of America, N.A. (Respondent)

ii. Maximilien Barton

iii. Palisades-TC, LLC

iv. Circle H Contractors, LP

v. MFO Venus Development, LLC

**c. Receiver & Amicus**

i. Cortney Thomas

*/s/ Michael J. Edney*
Counsel for Timothy Barton

## Statement Regarding Oral Argument

At issue in this appeal is the District Court's order seizing a citizen's only home and authorizing its sale to a third party. The District Court's reason: The Securities and Exchange Commission filed a lawsuit against Appellant Timothy Barton, alleging that a series of commercial loan agreements constituted securities fraud for which Mr. Barton is responsible. The District Court authorized the permanently disposing of a defendant's only home before the Government was put to any proof and, indeed, before an ounce of civil discovery occurred.

This case, thus, raises important and complex questions regarding the circumstances under which the Government can seek and the lower courts may order the seizure and permanent sale of a defendant's most personal asset—his primary residence—prior to any judgment assessing liability. Defendant respectfully requests oral argument to assist the Court in addressing factual, procedural, and legal nuances underlying this important issue.

# Table of Contents

Certificate of Interested Persons ........ ii
Statement Regarding Oral Argument ........ xi
Table of Contents ........ xii
Table of Authorities ........ xiii
Jurisdictional Statement ........ 1
Statement of the Issues ........ 4
Statement of the Case ........ 6
Summary of Argument ........ 12
Argument ........ 16
I. The District Court Erred by Seizing and Permanently Selling the Defendant's Personal Residence Without Any Meaningful Inquiry into Whether It Was the Proceeds of Illicit Activity. ........ 17
II. The District Court Erred By Authorizing the Sale of the Defendant's Permanent Residence Prior to any Judgment of Liability and Without a Remotely Sufficient Finding of Necessity ........ 22
Conclusion ........ 29
Certificate of Filing and Service ........ 31
Certificate of Compliance ........ 32

# Table of Authorities

**Cases** **Page(s)**

*In re Am. Colonial Broad. Corp.*,
758 F.2d 794 (1st Cir. 1985) .......... 2

*Citibank, N. A. v. Data Lease Fin. Corp.*,
645 F.2d 333 (5th Cir. 1981) .......... 1

*Contimortgage Corp. v. Anglezis*,
173 F. App'x 458 (7th Cir. 2006) .......... 1

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008) .......... 24

*First Nat. Bank of Cleveland v. Shedd*,
121 U.S. 74 (1887) .......... 1

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) .......... 15, 18

*Kern v. TXO Prod. Corp.*,
738 F.2d 968 (8th Cir. 1984) .......... 21

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) .......... 2, 13, 24

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) .......... *passim*

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
24 F.4th 442 (5th Cir. 2022) .......... 2

*Sage v. Cent. R. Co.*,
96 U.S. 712 (1877) .......... 1

*Santibanez v. Wier McMahon & Co.*,
105 F.3d 234 (5th Cir. 1997) .......... 28

*SEC v. Am. Bd. Of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987) ....................................................................... 28

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) ............................................................... 24

*SEC v. Faulkner*,
No. 3:16-CV-1735-D, 2018 WL 4362729 (N.D. Tex. Sept. 12, 2018) ........................................................................................ 18, 20

*SEC v. First Fin. Grp. of Tex.*,
645 F.2d 429 (5th Cir. 1981) ...................................................................... 28

*SEC v. Forex Asset Mgmt. LLC*,
242 F.3d 325 (5th Cir. 2001) ............................................................. 2, 3, 10

*SEC v. Phillip A. Michael Sec., Inc.*,
No. 74 CIV. 2158, 1974 WL 416 (S.D.N.Y. June 26, 1974) ................ 13

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) ...................................................................... 16

*United States v. Garcia*,
474 F.2d 1202 (5th Cir. 1973) .................................................................... 16

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ...................................................................... 16

**Statutes**

15 U.S.C. §§ 77t(b), 77t(d), 77v(a), 78u(d), 78u(e), and 78aa.................... 1

28 U.S.C. § 1291 ...................................................................................... 1, 2, 3

## Jurisdictional Statement

The District Court has subject matter jurisdiction over this case under 15 U.S.C. §§ 77t(b), 77t(d), 77v(a), 78u(d), 78u(e), and 78aa, which provide jurisdiction to adjudicate alleged violations of certain securities laws. The Securities and Exchange Commission alleges violations of those laws. **ROA.23–24**. This Court has two independent bases for jurisdiction: the longstanding rule that a judicial order confirming the sale of property is an appealable final order and, alternatively, the collateral order doctrine.

*First,* this Court has jurisdiction under 28 U.S.C. § 1291 because the district court's "order confirming a judicial sale of property is a final order." *Citibank, N. A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981); *see Contimortgage Corp. v. Anglezis*, 173 F. App'x 458, 462 (7th Cir. 2006) ("an order confirming sale is final and appealable"). That principle has been black-letter law for 150 years. *See Sage v. Cent. R. Co.*, 96 U.S. 712, 714 (1877) ("[A] decree confirming a sale, if it is final, may be appealed from."); *First Nat. Bank of Cleveland v. Shedd*, 121 U.S. 74, 85 (1887) (rejecting argument that a property-sale order in receivership proceeding was merely "an interlocutory decree or order of sale, and not

a final decree"); *see also In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801–03 (1st Cir. 1985) (rejecting appeal of order authorizing sale negotiations while noting that parties can appeal from an order confirming a sale); *Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 165 (9th Cir. 1960) (citing 28 U.S.C. § 1291 as the basis for jurisdiction over, *inter alia*, a receivership liquidation order).

*Second*, and in the alternative, the district court's order "fits within the confines of the collateral order doctrine." *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001). The collateral order doctrine provides appellate jurisdiction when an order "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 448 (5th Cir. 2022) (quotation and original alterations omitted). The district court's order approving the sale meets these requirements. To begin, the order unequivocally resolves the disputed question: Whether the Receiver may sell the property at issue and on what terms. **ROA.2741**. Next, the question of whether this property should be sold is important, as the property was

Appellant's personal residence, and is a separate matter from the merits of the SEC's securities claims. *Forex Asset Mgmt.*, 242 F.3d at 330 (holding that "distribution of assets" from receivership in SEC action is an important issue that "is separate from the merits of the SEC's complaint"); *see* **ROA.3060** (statement at sale hearing highlighting that the property is Appellant's "only home"). Finally, the district court's order will be effectively unreviewable on appeal because the house will be sold, "and likely unrecoverable, long before the action brought by the SEC is subject to appellate review." *Forex Asset Mgmt.*, 242 F.3d at 330. Thus, even if this Court concludes that the district court's order is not appealable under 28 U.S.C. § 1291, it would be appealable under the collateral order doctrine.

The district court issued the appealed order on December 20, 2022. **ROA.2742**. Barton noticed this appeal on December 21, 2022, **ROA.2781–82**, within the 60-day period allotted by Federal Rule of Appellate Procedure 4(a)(1)(B). This appeal is therefore timely.

## Statement of the Issues

In September 2022, the Securities and Exchange Commission filed a civil complaint against the Appellant, alleging that he is liable for securities fraud. The SEC simultaneously requested that the district court seize all assets owned or controlled by any corporate entity associated with Mr. Barton and place them under the control of a court-appointed receiver. Among the assets the district court seized was Mr. Barton's personal residence, which he held through a limited liability company the sole purpose of which was to own and maintain his personal residence. The Receiver, with the district court's blessing, immediately removed Mr. Barton from his home.

As his first order of business, the Receiver sought authorization to sell the Appellant's house, and the district court approved that sale.

1. Did the District Court err by approving the permanent sale of the Appellant's primary residence before any discovery or trial on the merits, much less adjudication of liability for alleged securities fraud?

2. Did the district court err by approving the sale of the Appellant's personal residence without any serious effort to trace any allegedly improperly obtained funds into the purchase of that residence?

## Statement of the Case

Appellant Timothy Barton, up until the Receivership Order, was the Chief Executive Officer of JMJ Development LLC. JMJ Development was founded by Mr. Barton and had led significant real estate development projects in the Dallas-Fort Worth area, and beyond, for more than thirty years.

The Securities and Exchange Commission ("SEC") filed the instant case on September 23, 2022. It concerns the handling of loans provided by Chinese nationals for real estate projects sourced by Mr. Stephen Wall, one of the defendants in the case. The suit alleges that Mr. Wall, Mr. Barton, and others handled those loans in a manner that violated the securities laws. **ROA.22–23**. Specifically, the SEC alleges that certain real estate development entities, including some associated with Mr. Barton, used loan proceeds for real estate development projects that were different than the ones specified in the loan agreements. **ROA.22–23**. All told, the SEC alleges that the Chinese nationals in question provided $26 million in connection with these loan agreements. **ROA.22**.

On the same day that the SEC filed its complaint, the Department of Justice had the Appellant arrested in connection with parallel criminal

charges concerning the same alleged loan transactions. *See United States v. Barton*, No. 3:22-cr-00352-K (N.D. Tex. Sep. 20, 2022).

The next business day, the SEC filed a motion to appoint a receiver, identifying 29 companies that it believed should be placed into receivership based on assertions that those companies had received some of the $26 million in loan proceeds in question in the case. **ROA.121–22, 179** (citing **ROA.182**). Among those 29 companies were 9 special purpose entities—each named for Mr. Wall and followed by a number (the so-called "Wall Entities")—that were the counterparties to the loan agreements at issue. **ROA.182**. The SEC also sought to place Mr. Barton's long-time company JMJ Development into the receivership, based on allegations that it had received payments from the Wall entities. **ROA.167**. The SEC's motion did not attempt to account for any payments JMJ Development may have received for development services in association with the projects. Nor did the SEC address the many other assets and business operations of JMJ Development developed through 30 years in business that were unrelated to any Wall Entity or associated funding.

The proposed order attached to the SEC's motion, in addition to specifying the 29 identified companies to be placed into receivership, also authorized the Receiver to seize "any other entities that . . . Timothy Barton directly or indirectly controls." **ROA.143**. The SEC's briefing in support of its motion to appoint a receiver included no argument or evidence supporting the seizure of all companies associated with Mr. Barton.

On October 18, 2022, the district court granted the SEC's motion and entered the SEC's proposed order, save for one change. **ROA.601–25**. Instead of appointing the real estate professional proposed by the SEC as receiver, the district court appointed a contemporary trial lawyer with whom he had experience, Mr. Cortney Thomas. **ROA.603**. The district court provided no opinion or independent explanation justifying the appointment of a receiver, much less for the scope of that receiver's authority. *Compare* **ROA.142–160** (SEC's proposed order) *with* **ROA.601–25** (largely identical district court order).

That same day, the Receiver removed Mr. Barton from his company offices and seized all commercial assets that Mr. Barton controlled. **ROA.603–04**; **ROA.1205**. On the third day of the receivership, the

Receiver also removed Mr. Barton from his personal residence. The residence is a 4 bedroom, approximately 3,840 square foot house, located at 4107 Rock Creek Drive in Dallas, Texas. **ROA.629;** *see also* **ROA.2639–43**. Mr. Barton owned his home through a non-commercial corporation: SF Rock Creek, LLC. **ROA.629, 1213**. SF Rock Creek had no business operations and served no other purpose than to hold title to Mr. Barton's home. **ROA.629, 2632.** Indeed, Mr. Barton purchased the home in 2020 and held the title to it in his personal capacity, only transferring that title to the holding corporation months prior to the receivership order. **ROA.2639**. SF Rock Creek is not a defendant in the lawsuit and is not alleged to have participated in any securities violations or to have received lender funds. *See generally* **ROA.21–49** (SEC complaint neither mentioning SF Rock Creek nor purporting to trace lender funds to it).

Mr. Barton sought an emergency court order to block the Receiver from removing him from his home and to clarify that the house was outside the Receiver's control. **ROA.628–30.** The district court denied the request twenty-five minutes later, without explanation. **ROA.11** (ECF No. 33, showing electronic denial).

On November 17, 2022, Mr. Barton filed a notice of appeal of the district court's Receivership Order, and as to its separate order denying removal of the residence from the estate. **ROA.1197**. That appeal is well underway, with briefing to be completed by March 2, 2023. *See SEC v.* Barton, Case No. 22-11132 (5th Cir. 2022).

On December 2, 2022, the Receiver filed a motion seeking approval to sell Mr. Barton's home to a third party, a move that would ensure that Mr. Barton's house would never be returned to him. Under the proposed sale, the house would be sold to third-party entity, JNJ Group LLC, for the sale price of $1.4 million. **ROA.2389**. After repaying mortgages on the property, property taxes, and administrative closing costs, the sale would yield "between $100,000 and $200,000" for the estate. **ROA.1215, 2633**.

Mr. Barton opposed that request, arguing (among other things) that governing legal principles barred the permanent sale of a personal residence prior to any adjudication of liability in the underlying case. Instead, the Receiver's role prior to judgment is *to preserve the status quo* so that seized property can later be returned or, if liability is found, used to satisfy a judgment. **ROA.2635–36.**

The district court authorized the sale during a hearing on December 19, 2022. **ROA.3098**; *see also* **ROA.2740–42**. According to the district court, the following factors supported a decision to authorize the sale: (1) general economic conditions could potentially result in the value of the home decreasing in the future, (2) the Receiver had told the court that other properties of the estate that could not be efficiently sold, (3) allegations of commingling involving *different* entities other than SF Rock Creek provided "enough to know" that Mr. Barton bought his personal residence with funds obtained from Chinese lenders, and (4) concerns about the Receiver having to pay real estate taxes or a loan on the home the Receiver seized from Mr. Barton. **ROA.3096–98** (Hearing Tr.50:24–52:15). Mr. Barton moved to stay that sale, but the district court denied the motion. **ROA.3080, 2741**. The Receiver has not yet closed the sale and even suggested that seeking a stay before this Court was not necessary because certain issues had to be resolved before the sale would close. The Receiver blamed Mr. Barton for the sale's failure immediately to close, claiming that Mr. Barton alerted the purchaser to certain water leakage issues in the home after the Court's hearing. The

Receiver, however, also claims that he may close the sale without seeking further authorization from the district court.

On December 21, 2022, Mr. Barton noticed his appeal of the district court's sale order.

## Summary of Argument

The district court's order seizing the defendant's home and authorizing its permanent sale puts the cart before the horse. In the most acutely personal manner possible, it reverses the time-honored sequence of our system of justice and presumes, before any discovery or any trial, that the defendant is responsible for misconduct alleged by the Government. Thus, the punishment comes immediately. The district court not only seized the defendant's business assets, it kicked out the defendant from his home. And the district court is not, somehow, just holding it for safekeeping. It has authorized the Receiver to sell it for good, so the defendant will never get it back no matter whether the Government ultimately prevails in proving liability or whether any potential liability is satisfied with other business assets.

The district court's order permanently disposing of a defendant's home—before proceedings on the merits have begun in earnest—is

contrary to applicable principles of law and equity and is an abuse of discretion.

First, the sale order is contrary to the purpose of a receivership imposed prior to judgment, which is to preserve the status quo and to prevent the flight of assets *pending a determination of liability*. Using a receivership, prior to a finding of liability, to punish a defendant is improper. *See, e.g., SEC v. Phillip A. Michael Sec., Inc.*, No. 74 CIV. 2158, 1974 WL 416, at *2 (S.D.N.Y. June 26, 1974) ("[T]he extraordinary remedies of injunctive relief and receivership should not be invoked when the only effect would be punitive, not remedial."); *see also Los Angeles Tr. Deed & Mortg. Exch.*, 285 F.2d at 182 (expressing concern about the "penalty" that would result by ordering liquidation through SEC receivership). The purpose to punish, however, infuses the Receiver and district court's actions here. The original receivership order expressly sought to punish the defendant. **ROA.602** (stating that the receivership was warranted to "penaliz[e]" the Appellant's alleged "past unlawful conduct"). And the Receiver made his first order of business removing the defendant from and permanently selling his home, bypassing commercial assets of less personal significance. Courts frown on receiver

efforts, prior to any finding of liability, to liquidate business assets absent a showing of unique necessity. This Court should be even more demanding of an effort to permanently sell a defendant's home, and the district court erred in finding it warranted here.

The Receiver clothed his effort to sell the defendant's home by claiming he needed cash from the sale proceeds to keep the defendant's other businesses afloat, and there was no other option than to sell the defendant's home. *See, e.g.,* **ROA.2377**, **ROA.2659**, **ROA.3052** (Hearing Tr. 6:19–22), **ROA.3056** (Hearing Tr. 10:20–22), **ROA.3089-90** (Hearing Tr. 43:5–44:25). As an initial matter, a house sale projected to yield between $100,000 and $200,000 in net proceeds is not somehow necessary to run a commercial real estate business with what the SEC projected as having more than $70 million in assets. **ROA.2633, 2638–39**; *see* **ROA.181** (SEC appendix listing assets). Such net proceeds make no difference; the sale is clearly meant to hamper the defendant. In any event, the record showed multiple commercial transactions that would address any short-term need for operating cash. **ROA.3062–63** (Hearing Tr. 16:7–17:21); *see also* **ROA.1116–19**, **ROA.1341–46**, **ROA.2633–34**, **ROA.2785–89**. The district court engaged in no meaningful inquiry into

these alternatives to the uniquely punitive and personal option of seizing and selling the defendant's home. And, indeed, the Receiver began requesting permission for commercial transactions that would address cash issues mere days after the Court's order authorizing the house sale. *See, e.g.,* **ROA.2785–90** (seeking approval of $9 million property sale on December 22, 2022, two days after the Court approved the sale of the Appellant's home).

*Second*, the district court erred by finding it had authority to sell the defendant's personal residence at all. In this Circuit, receivers may seize—much less permanently liquidate—only such property that is "the subject of the underlying dispute," *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012), or that illegitimately has been transferred to a non-defendant entity, *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). Neither requirement was satisfied here. SF Rock Creek—the entity in which the residence is titled by Mr. Barton—is not a defendant in the lawsuit. No party made any effort to show that loan proceeds that are the subject of this case had been used to purchase the house or had been passed to the limited liability company holding title to the house.

For these reasons, the district court's order for the sale of the Appellant's home should be reversed.

## **Argument**

This Court reviews a district court's appointment and supervisory actions of a receiver for an abuse of discretion. *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 839 (5th Cir. 2019); *Netsphere*, 703 F.3d at 305; *see also United States v. Garcia*, 474 F.2d 1202, 1205 (5th Cir. 1973) (applying abuse of discretion standard in considering sale of realty under 28 U.S.C. § 2001). "[A] court's exercise of its discretion is not unbounded; that is, a court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008).

Here, the district court made two major categories of error when it seized and authorized the permanent sale of the defendant's only home. First, the district court did not make sufficient findings to demonstrate that selling the defendant's home, before any judgment of liability, was necessary to serve any legitimate purpose of a Government-sought receivership. Second, the district court erred by seizing and ordering the permanent sale of the defendant's home without tracing the loan

proceeds that are the subject of the Government's complaint to the home's purchase or to the limited liability company holding title to the home. Accordingly, the district court's order irrevocably and improperly alters the status quo and has the explicit effect of punishing the defendant for alleged wrongdoing before a single witness has been called, much less a trial held. The Court should reverse the district court's order authorizing the sale and remand with instructions to return the defendant to his home.

## I. The District Court Erred by Seizing and Permanently Selling the Defendant's Personal Residence Without Any Meaningful Inquiry into Whether It Was the Proceeds of Illicit Activity.

In violation of this Court's precedents, the district court did not engage in any meaningful inquiry to demonstrate that the defendant's home was the proceeds of the wrongdoing alleged in the suit, before it seized and then authorized the permanent sale of that home.

In the Fifth Circuit, the district court may not seize through a receivership or thereafter authorize the permanent sale of property, prior to a judgment of liability, unless it is the "the subject of the underlying dispute." *Netsphere,* 703 F.3d at 306. The defendant's personal home is not the subject of the underlying dispute. The limited liability

corporation that does nothing else than hold title to the property—SF Rock Creek, LLC—is not a defendant in the SEC's case. **ROA.629, 2632**. When seeking the receivership, the SEC did not assert, much less assemble evidence to show, that the corporation received any of the loan proceeds at issue in this case or that Mr. Barton used loan proceeds to purchase the home. *See generally* **ROA.115–41** (SEC's motion for appointment of a receiver that does not mention SF Rock Creek, LLC), **ROA.143** (SEC's proposed order not naming SF Rock Creek, LLC as a receivership entity).

At a minimum, the SEC would have been required to show that the non-defendant corporation holding title to the home "(1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." *Janvey,* 588 F.3d at 834. To do so, the SEC would have had to attempt tracing the loan proceeds at issue in this case to the corporation holding title to the home or at least to Mr. Barton's purchase of his home. *See, e.g., Netsphere*, 703 F.3d at 310 (holding that the district court could not impose a receivership over "personal property and assets" not traceable to the underlying subject matter of the dispute); *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *5 (N.D. Tex. Sept. 12, 2018)

(requiring the movant to show that the non-party entity is both controlled by the defendant and in possession of funds traceable to the alleged fraud). The SEC did absolutely none of that. There was not even an attempted fund-tracing analysis made with respect to corporation holding the home or the home purchase; indeed, the SEC never even alleged that any improper transfers were ever made to that entity or in support of the purchase. **ROA.21–49**. At most, the SEC claims to have traced lender funds to the 29 corporate entities specifically named in its order seeking a receivership, none of which is the corporation holding title to or otherwise associated with Mr. Barton's personal residence. **ROA.179** (citing **ROA.182**).

Neither the district court nor the Receiver made up for the shortcomings in the SEC's showing. The district court's order sweeping SF Rock Creek LLC contained no analysis as to why. When explaining his oral order authorizing sale of the Mr. Barton's home, the district court found the following: "On commingling and tracing, it seems like commingling was the rule of the day for how Barton ran his different entities. And so I think I have seen enough to know that it was funds that were at issue in the SEC allegations that were used for the home."

**ROA.3097** (Hearing Tr. 51:20–25). That summary conclusion was accompanied by reference to no fact or piece of evidence suggesting that loan proceeds somehow reached the corporation holding title to his personal residence or funded the purchase of his home. The focus of that analysis was also based on the SEC's assertions as to how payments were made between or among 29 commercial real estate operating companies that Mr. Barton managed as businesses. *See* ROA.179, 182 (identifying 29 commercial entities as alleged recipients of lender funds).

If that is what the district court is referring to, that is not sufficient as a matter of this Court's precedents. Courts require more than an allegation that other corporations associated with a defendant have made payments between each other or commingled funds. Instead, the court must trace the illicit funds to the corporation or asset the Government wishes to seize. *See, e.g.*, *Faulkner* 2018 WL 4362729, at *5 (relying on "unrebutted evidence [that] indicates [the defendant] may have redistributed [the relevant] assets" to the particular corporation the Government sought to place into receivership). It cannot throw up its hands and assume that a corporation or asset received subject funds,

because of an allegation that transfers and commingling occurred elsewhere.

That is especially so here, as the district court is relying on allegations about the way Mr. Barton ran his commercial real estate businesses and potentially transfers between those commercial ventures. Mr. Barton's home, by stark contrast, is a *uniquely personal matter*.

In that regard, the SEC never made any separate argument, much less an evidentiary showing, that funds were treated similarly by Mr. Barton for any corporation that he used for a solely personal purpose. In fact, the SEC has been clear that it had no intention of imposing a receivership over Mr. Barton in his personal capacity or his personal assets. And the SEC has cited to having limited the receivership to commercial entities associated with Mr. Barton's real estate development business—and making no effort to reach his personal assets—as a sign of the remedy's reasonableness. **ROA.121–23**.

The district court's lack of detailed analysis renders error in any finding of a link between Mr. Barton's personal residence and the commercial real estate loan proceeds at issue in this case. *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984) ("An abuse of discretion . . .

can occur . . . when a relevant factor that should have been given significant weight is not considered [or] the court, in weighing those factors, commits a clear error of judgment."). Even following the district court's oblique reference to commingling among commercial real estate development operations to its roots is insufficient to support seizing and selling a defendant's personal residence.

The district court's sale order should therefore be reversed.

## II. The District Court Erred By Authorizing the Sale of the Defendant's Permanent Residence Prior to any Judgment of Liability and Without a Remotely Sufficient Finding of Necessity.

The Securities and Exchange Commission can seek, and a district court can order, the imposition of a receivership over assets that are the subject of the SEC's claims in a lawsuit. *Netsphere*, 703 F.3d at 306. The SEC can seek this remedy from the beginning of a case, before any finding of the defendant's liability. *Id.* The sole legitimate purpose of such a prejudgment receivership, however, is to preserve the status quo: To prevent a demonstrated risk of asset flight and to keep them safe for return to the defendant (in the event the SEC cannot prove its case) or for use to compensate alleged victims (in the event of a later judgment of liability). The point is to leave the assets placed into receivership in as

close to the condition they were when found and not to assume (prior to any discovery, proof, or trial) that the defendant is liable.

The district court is turning that principle on its head. The district court found that a purpose the receivership's vacuuming of assets was to punish Mr. Barton. **ROA.602** ("[T]he Court finds that the SEC has brought this action to . . . penalize[e] past unlawful conduct."). The district court has even held that the receivership should seize assets belonging to Mr. Barton's son, quoting the Book of Ezekiel to observe:

> '[t]he righteousness of the righteous shall be upon himself, and the wickedness of the wicked shall be upon himself.' Ezekiel 18:20. So in holding the Max Barton Entities accountable for the actions of their true controller—Timothy Barton—the Court acts consistently with Scripture's just admonition that each ought to be penalized for his own wrongdoing.

**ROA.2605 n.16**. From these foundations, it was not much of a reach to hold that the Receiver should seize Mr. Barton's personal residence and then permanently sell it. The order is a point of departure, from which there is no going back. If the SEC's case falters, the defendant cannot be given back his home. Because district court erred in finding punishing the defendant now (prior to any trial or judgment) is a legitimate purpose

of the receivership, the impossibility of unwinding the separation of the Appellant from his home was of little concern to the district court.

Long-standing principles governing prejudgment receiverships demonstrate the error of the district court's order authorizing the permanent sale of the Appellant's home. Even when assets are placed into receivership, the liquidation or sale of those assets prior to a judgment of liability is highly disfavored. *See, e.g., SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) (explaining "[t]he further step of liquidating [the defendant's] assets or declaring bankruptcy is not necessary to protect [the defendant's] investors nor are such drastic measures appropriate prior to the entry of final judgment"); *Los Angeles Tr. Deed & Mortg. Exch.*, 285 F.2d at 182 (expressing concern about the "penalty" that would result by ordering premature liquidation through an SEC receivership); *see also Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (reiterating "strong reservations" as to receivership liquidations in general).

It is also inconsistent with the nature of a prejudgment receivership as a remedy akin to a preliminary injunction. *See, e.g., Phillip A. Michael Sec., Inc.*, 1974 WL 416, at *2 ("[T]he extraordinary remedies of

injunctive relief and receivership should not be invoked when the only effect would be punitive, not remedial."). Liquidation permanently alters the status quo rather than preserves it. With regard to the imposition and actions of an SEC-sought, prejudgment receiver, the district court is required first to find that "[1] there [was] a clear necessity to protect a party's interest in property, [2] legal and less drastic equitable remedies [were] inadequate, and [3] the benefits of receivership outweigh[ed] the burdens on the affected parties." *Netsphere*, 703 F.3d at 305.

Those required findings were never made by the district court, much less with consideration of Mr. Barton's personal home, an entity with no connection to the SEC's claims in the lawsuit. Nor were any less drastic remedies considered for SF Rock Creek other than liquidation by receiver.

The Receiver claimed that selling the home was necessary to raise cash for the Receiver to operate the rest of Mr. Barton's commercial real estate development businesses that the Receiver had seized. *See, e.g.*, **ROA.2377**, **ROA.2659**, **ROA.3052** (Hearing Tr. 6:19-22), **ROA.3056** (Hearing Tr. 10:20-22), **ROA.3089–90** (Hearing Tr. 43:5-44:25). The district court did not make an express holding validating the Receiver's

claim of necessity. In any event, the record would not have supported such a finding. The house's sale was projected to raise $100,000 to $200,000 in net proceeds, **ROA.1215**, a sum irrelevant to running a commercial real estate development business the SEC claimed to have more than $70 million in assets. **ROA.181**.

If the sale of some real estate asset to raise cash for operating the commercial real estate development businesses were found necessary, the Receiver should have targeted *other business-related commercial assets held by those entities*. The Appellant urged these options on the district court, in lieu of selling his personal residence. **ROA.3062–64** (Hearing Tr. 16:7–25, 17:1–25; 18:1–4), **ROA.3068–69** (Hearing Tr. 22:23–25, 23:1–4). But the district court disregarded entirely and summarily held that: "The sale of other properties [is] not as efficient from a timeline standpoint as the sale of this property because they are not properties in development or have other encumbrances on them, like the other commercial properties would." **ROA.3097** (Hearing Tr. 51:15–19).

This cursory treatment of the issue was an abuse of discretion. A detailed analysis would have revealed that the Receiver was poised to

propose precisely such purely commercial transactions, just days after the approval of the house's sale. Two days after the Court's hearing authorizing the sale of the Appellant's house, the Receiver proposed approval of a commercial transaction raising millions dollars in cash. **ROA.2785–90**; **ROA.1215** (estimating net proceeds of $2 million from that sale). By December 2022, prior to the district court's order to sell the home, Appellant had already assisted the Receiver in securing a sale transaction of a development project grossing $9 million. **ROA.2785–90**, **ROA.3020–23**. The Appellant consented to that sale, and the district court approved it. ECF No. 142. Appellant separately arranged for an independent appraisal of two apartment complexes, both ripe for sale, **ROA.1119**, later adding a third apartment complex, **ROA.1117**, and even securing a letter of intent for the proposed sales. **ROA.1341–46**. The Receiver has entered into sale contracts for two of those properties: one to be sold for at least $51 million, and the other for $27 million. ECF No. 161 at 8; ECF No. 164 at 5**.**

Plus, the Receiver's claim of necessity—to sell the home to raise operating cash—is betrayed by his having listed the home for sale just three weeks into his appointment. **ROA.2404** (indicating incoming

contract offers as early as Nov. 10, 2022). The Receiver's focus on selling the defendant's home has never been moored to some necessary measure to raise operating cash. If that were so, the Receiver would have started by completing an accounting of the equity in the estate. *See SEC v. Am. Bd. Of Trade, Inc.*, 830 F.2d 431, 436-37 (2d Cir. 1987) (counseling against receivership litigation, noting receivership tasks to ascertain the true state of affairs and preserve the status quo). Instead, selling the home was the Receiver's first order of business. And it was an effort to punish, in a uniquely personal way, the defendant. After all, the district court erroneously had held from the beginning that punishing Mr. Barton was a legitimate objective for the Receiver. **ROA.602**.

The district court's concerns about the Receiver confronting real estate tax payments on the home or having to carry to interest payments on the mortgage is no justification for selling it. **ROA.3097** (Hearing Tr. 51:3–14) (expressing concern over "increasing" interest rates and "[p]roperty taxes"). Receiverships are to prevent the loss of assets by preventing their flight. *See SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 439 (5th Cir. 1981) (appointing a receiver because the cash assets could be relocated easily); *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234,

241–42 (5th Cir. 1997) (focusing on whether there is "imminent danger" that assets will be concealed). It is assumed that when the Government choses to seize assets prior to a finding of liability, it will bear the costs of maintaining them as they are until a final judgment. In any event, this whole problem stems from the district court's error in seizing the Appellant's personal home in the first place. It was going nowhere. Had the district court stayed out of the defendant's personal home, and focused on the commercial business assets the SEC claimed to be the point of the receivership, the Appellant would be paying property taxes and mortgage interest, with no effect on the receivership estate.

The district court's findings are insufficient to demonstrate the necessity of selling a defendant's most personal asset—his personal residence—prior to a judgment of liability. The Court should reverse.

## Conclusion

The district court's order for the sale of a personal residence is the result of repeated misapplications of receivership law. This Court should reverse the district court's order to sell the property and remand with instructions that the home be returned to the Appellant.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Michael J. Edney*
Michael J. Edney
Michael D. Dingman
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*
*mdingman@huntonak.com*

Ted A. Huffman
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
(214) 979-3000
*thuffman@huntonak.com*

ATTORNEYS FOR APPELLANT
TIMOTHY LYNCH BARTON

February 27, 2023

## Certificate of Filing and Service

I hereby certify that on February 27, 2023, this motion was filed and served in PDF format using the United States Court of Appeals for the Fifth Circuit's CM/ECF system upon all counsel of record, as follows:

Ezekiel L. Hill
hillez@sec.gov
Securities and Exchange Commission
100 F St., N.E.
Washington, DC 20549

Keefe M. Bernstein
bernsteink@sec.gov
James E. Etri
etrij@sec.gov
David B. Reece
reeced@sec.gov
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102

*Counsel for the Securities and Exchange Commission*

In addition, I further certify that this electronic filing is an exact copy of the paper document and any privacy redactions have been made. This filing has been scanned for viruses and has been found to be free of viruses.

*/s/Michael J. Edney*

## Certificate of Compliance

I hereby certify that this document complies with the word limit of Fed. R. App. P. 27(d)(2)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 5,661 words, as calculated using the word processor used to prepare this document, Microsoft Word for Microsoft 365. I also certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Michael J. Edney*