NO. 22-11226

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

# RECORD EXCERPTS OF APPELLANT TIMOTHY BARTON

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
medney@huntonak.com

*Attorney for Appellant Timothy Barton*

# Table of Contents


| Tab | Item | Citation | |
|---|---|---|---|
| 1 | Docket Sheet | ROA.1-ROA.20 | RE-1 – RE-20 |
| 2 | Defendant's Notice of Appeal | ROA.2781-ROA.2782 | RE-21 – RE-22 |
| 3 | Order Granting Motion to Approve Sale | ROA.2740-ROA.2742 | RE-23 – RE-25 |
| 4 | Transcript of the Hearing Before the District Court on the Receiver's Motion for Sale | ROA.3047-ROA.3118 | RE-26 – RE-97 |
| 5 | Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property | ROA.2373-ROA.2379 | RE-98 – RE-104 |
| 6 | Defendant Barton's Response to Motion for Sale of Rock Creek Property, and Cross-Motion for Order Prohibiting Sale of Personal Property Located at Rock Creek Home | ROA.2629-ROA.2648 | RE-105 – RE-124 |
| 7 | Receiver's Reply in Support of Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, Etc. and Response to Motion to Prohibit Sale of Personal Items | ROA.2654-ROA.2664 | RE-125 – RE-135 |

March 6, 2023

Respectfully submitted,

*/s/ Michael J. Edney*
Michael J. Edney
Michael Dingman
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*
*mdingman@huntonak.com*

Ted A. Huffman
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
(214) 979-3000
*thuffman@huntonak.com*

ATTORNEYS FOR APPELLANT
TIMOTHY LYNCH BARTON

## **Certificate of Service**

I, Michael J. Edney, counsel for Appellant, hereby certify that on March 6, 2023, caused a true and correct copy of the foregoing Record Excerpts of Appellant Timothy Barton to be filed electronically with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the Appellate CM/ECF System. Participants in this case who are registered CM/ECF users will be served electronically by the Appellate CM/ECF System.

*/s/Michael J. Edney*

# Tab 1

APPEAL,JURY,STAYED,TOLIVER

# U.S. District Court
# Northern District of Texas (Dallas)
# CIVIL DOCKET FOR CASE #: 3:22-cv-02118-X

Securities and Exchange Commission v. Barton et al
Assigned to: Judge Brantley Starr
Case in other court: USCA5, 22-11132
USCA5, 22-11242
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 09/23/2022
Jury Demand: Plaintiff
Nature of Suit: 850 Other Statutes: Securities/Commodities/Exchange
Jurisdiction: Federal Question

**Plaintiff**

**Securities and Exchange Commission** represented by

**Keefe M Bernstein**
Securities and Exchange Commission
801 Cherry Street
Suite 1900
Fort Worth, TX 76102
817-900-2607
Fax: 817-978-4927
Email: bernsteink@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**David B Reece**
US Securities & Exchange Commission
Burnett Plaza Suite 1900
801 Cherry St Unit # 18
Fort Worth, TX 76102-6882
817-978-6476
Fax: 817-978-4927
Email: reeced@sec.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**James E Etri**
US Securities & Exchange Commission
801 Cherry St
Unit 18 Suite 1900
Fort Worth, TX 76102
817-978-1406
Email: etrij@sec.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Timothy Barton** represented by

**Richard B Roper , III**
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-969-1700
Fax: 214-964-9501
Email: richard.roper@hklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Edwin Andrew Huffman**
Hunton Andrews Kurth LLP/Dallas
1445 Ross Avenue
Ste 3700
Dallas, TX 75202
214-468-3561
Fax: 214-880-0011
Email: thuffman@huntonak.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Javan Porter**
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
214-696-1345
Fax: 214-999-1618
Email: javan.porter@hklaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael Christopher Dingman**
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue NW
Suite 905
Washington, DC 20037
771-210-9693
Email: mdingman@huntonak.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael J Edney**
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
202-778-2204
Email: medney@HuntonAK.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Sean O'Connell**

Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue NW
Suite 905
Washington, DC 20037
202-955-1500
Fax: 202-778-2201
*Bar Status: Not Admitted*

**Defendant**

**Carnegie Development LLC**

**Defendant**

**Wall007 LLC**

**Defendant**

**Wall009 LLC**

**Defendant**

**Wall010 LLC**

**Defendant**

**Wall011 LLC**

**Defendant**

**Wall012 LLC**

**Defendant**

**Wall016 LLC**

**Defendant**

**Wall017 LLC**

**Defendant**

**Wall018 LLC**

**Defendant**

**Wall019 LLC**

**Defendant**

**Haoqiang Fu**
*also known as*
Michael Fu

**Defendant**

**Stephen T Wall** represented by **Michael P Heiskell**
Johnson Vaughn & Heiskell
5601 Bridge St

Suite 220
Fort Worth, TX 76112
817-457-2999
Fax: 817-496-1102
Email:
mheiskell@johnson-vaughn-heiskell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**DJD Land Partners LLC**
*Relief Defendant*

**Defendant**

**LDG001 LLC**
*Relief Defendant*

V.

**Respondent**

**Bank of America, N.A.**

**Interested Party**

**HNGH Turtle Creek** represented by **Erin Angela Nealy Cox**
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
214-972-1847
Email: erin.nealycox@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**John Joseph Kane**
Kane Russell Coleman & Logan PC
901 Main Street
Suite 5200
Dallas, TX 75202
214/777-4200
Fax: 214/777-4299
Email: jkane@krcl.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Interested Party**

**Maximilien Barton** represented by **Nathan Benjamin Baum**
Norton Rose Fulbright US LLP
2200 Ross Avenue
Suite 2800

Dallas, TX 75201
214-855-7487
Fax: 214-855-8200
Email:
nathan.baum@nortonrosefulbright.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Chris Cooke**
Norton Rose Fulbright US LLP
111 W. Houston Street
Suite 1800
San Antonio, TX 78205
210-270-7175
*Bar Status: Not Admitted*

**Interested Party**

**Gillespie Villas LLC** represented by **Nathan Benjamin Baum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Chris Cooke**
(See above for address)
*Bar Status: Not Admitted*

**Interested Party**

**Venus59 LLC** represented by **Nathan Benjamin Baum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Chris Cooke**
(See above for address)
*Bar Status: Not Admitted*

**Interested Party**

**TRTX Properties LLC** represented by **Nathan Benjamin Baum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Chris Cooke**
(See above for address)
*Bar Status: Not Admitted*

**Interested Party**

**MXBA LLC** represented by **Nathan Benjamin Baum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Chris Cooke**
(See above for address)
*Bar Status: Not Admitted*

**Interested Party**

**Titan Investments LLC** represented by **Nathan Benjamin Baum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Chris Cooke**
(See above for address)
*Bar Status: Not Admitted*

**Interested Party**

**Palisades-TC, LLC** represented by **Jonathan Patton**
Tillotson Law
1807 Ross Avenue
Suite 325
Dallas, TX 75201
214-382-3041
Fax: 214-292-6564
Email: jpatton@tillotsonlaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Interested Party**

**David Dhiraj Ramolia** represented by **Eliot Dana Shavin**
Chandler & Shavin PLLC
12377 Merit Drive, Suite 880
Dallas, TX 75251
214-522-2010
Email: shavin@chandlershavin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Corinna Pia Chandler**
Chandler Law PC
3900 Elm Street
Dallas, TX 75226
214-722-5997
Fax: 972-692-5220
Email: chandler@chandlerlawpc.com
*ATTORNEY TO BE NOTICED*

*Bar Status: Admitted/In Good Standing*

**Daniel Rasoul Alexander**
Chandler & Shavin PLLC
12377 Merit Drive
Suite 880
Dallas, TX 75251
469-236-4503
Email: alexander@chandlershavin.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Notice Only**

**Southern Star Capital, LLC**
*doing business as*
Reliance Morgage Company

represented by **Robert W Buchholz**
Law Office of Robert W Buchholz PC
5220 Spring Valley Road
Suite 618
Dallas, TX 75254
United Sta
214-754-5500
Fax: 214-754-9100
Email: bob@attorneybob.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Receiver**

**Receiver**

represented by **Cort Thomas**
Brown Fox PLLC
8111 Preston Road Suite 300
Dallas, TX 75225
214-367-6094
Fax: 214-327-5001
Email: cort@brownfoxlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charlene Cantrell Koonce**
Brown Fox PLLC
8111 Preston Road
Suite 300
Dallas, TX 75225
214-327-5000
Fax: 214-327-5001
Email: charlene@brownfoxlaw.com
*ATTORNEY TO BE NOTICED*

*Bar Status: Admitted/In Good Standing*

V.

**Intervenor**

**United States of America** represented by **Renee M Hunter-DOJ**
United States Attorney's Office
Northern District of Texas
1100 Commerce Street
Suite 300
Dallas, TX 75242
214-659-8798
Email: renee.hunter@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/23/2022 | 1 (p.21) | COMPLAINT WITH JURY DEMAND against Timothy Barton, Carnegie Development, LLC, DJD Land Partners, LLC, Haoqiang Fu (A/K/A Michael Fu), LDG001, LLC, Stephen T Wall, Wall007, LLC, Wall009, LLC, Wall010, LLC, Wall011, LLC, Wall012, LLC, Wall016, LLC, Wall017, LLC, Wall018, LLC, Wall019, LLC filed by Securities and Exchange Commission. (Filer fee note- Filed by the USA) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.21) Cover Sheet) (Bernstein, Keefe) (Entered: 09/23/2022) |
| 09/23/2022 | 2 (p.51) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Securities and Exchange Commission. (Clerk QC note: No affiliate entered in ECF). (Bernstein, Keefe) (Entered: 09/23/2022) |
| 09/23/2022 | 3 (p.53) | Request for Clerk to issue Summons filed by Securities and Exchange Commission. (Bernstein, Keefe) (Entered: 09/23/2022) |
| 09/23/2022 | 4 (p.83) | New Case Notes: A filing fee is not due for this case. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Toliver). Clerk to provide copy to plaintiff if not received electronically. (mlb) (Entered: 09/23/2022) |
| 09/23/2022 | 5 (p.85) | Summons Issued as to Timothy Barton, Carnegie Development LLC, DJD Land Partners LLC, Haoqiang Fu, LDG001 LLC, Stephen T Wall, Wall007 LLC, Wall009 LLC, Wall010 LLC, Wall011 LLC, Wall012 LLC, Wall016 LLC, Wall017 LLC, Wall018 LLC, Wall019 LLC. (mlb) (Entered: 09/23/2022) |

| | | |
|---|---|---|
| 09/26/2022 | 6 (p.115) | Expedited MOTION for Appointment of Receiver filed by Securities and Exchange Commission with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Bernstein, Keefe) Modified text on 9/27/2022 (ygl). (Entered: 09/26/2022) |
| 09/26/2022 | 7 (p.161) | Appendix in Support filed by Securities and Exchange Commission re 6 (p.115) MOTION Plaintiff's Expedited Motion for Appointment of Receiver and Brief In Support (Attachments: # 1 (p.21) Additional Page(s) Part 1 of 5) (Bernstein, Keefe) (Entered: 09/26/2022) |
| 09/26/2022 | 8 (p.265) | ADDITIONAL ATTACHMENTS to 7 (p.161) Appendix in Support by Plaintiff Securities and Exchange Commission. (Bernstein, Keefe) (Entered: 09/26/2022) |
| 09/26/2022 | 9 (p.305) | ADDITIONAL ATTACHMENTS to 7 (p.161) Appendix in Support by Plaintiff Securities and Exchange Commission. (Attachments: # 1 (p.21) Additional Page(s) Appendix Part 4 of 5, # 2 (p.51) Additional Page(s) Appendix Part 5 of 5) (Bernstein, Keefe) (Entered: 09/26/2022) |
| 09/28/2022 | 10 (p.477) | SUMMONS Returned Executed as to Timothy Barton ; served on 9/26/2022; Carnegie Development LLC ; served on 9/26/2022; DJD Land Partners LLC ; served on 9/26/2022; LDG001 LLC ; served on 9/26/2022; Stephen T Wall ; served on 9/26/2022; Wall007 LLC ; served on 9/26/2022; Wall009 LLC ; served on 9/26/2022; Wall010 LLC ; served on 9/26/2022; Wall011 LLC ; served on 9/26/2022; Wall012 LLC ; served on 9/26/2022; Wall016 LLC ; served on 9/26/2022; Wall017 LLC ; served on 9/26/2022; Wall018 LLC ; served on 9/26/2022; Wall019 LLC ; served on 9/26/2022. (Bernstein, Keefe) (Entered: 09/28/2022) |
| 09/28/2022 | 11 (p.519) | WAIVER OF SERVICE Returned Executed as to Haoqiang Fu. Waiver sent on 9/26/2022. (Bernstein, Keefe) (Entered: 09/28/2022) |
| 09/28/2022 | 12 (p.520) | NOTICE of *Service of Plaintiff Securities and Exchange Commission's Expedited Motion for Appointment of Receiver* re: 11 (p.519) Waiver of Service Executed, 10 (p.477) Summons Returned,, filed by Securities and Exchange Commission (Bernstein, Keefe) (Entered: 09/28/2022) |
| 10/05/2022 | 13 (p.524) | NOTICE of Attorney Appearance by Richard B Roper, III on behalf of Timothy Barton. (Filer confirms contact info in ECF is current.) (Roper, Richard) (Entered: 10/05/2022) |
| 10/05/2022 | 14 (p.526) | NOTICE of Attorney Appearance by Richard B Roper, III on behalf of Timothy Barton. (Filer confirms contact info in ECF is current.) (Roper, Richard) (Entered: 10/05/2022) |
| 10/05/2022 | 15 (p.528) | NOTICE of Attorney Appearance by Richard B Roper, III for Javan Porter on behalf of Timothy Barton. (Roper, Richard) (Entered: 10/05/2022) |
| 10/05/2022 | 16 (p.530) | NOTICE of Attorney Appearance by Michael P Heiskell on behalf of Stephen T Wall. (Filer confirms contact info in ECF is current.) (Heiskell, Michael) (Entered: 10/05/2022) |
| 10/12/2022 | 17 (p.531) | NOTICE of Attorney Appearance by Edwin Andrew Huffman for Edwin "Ted" A. Huffman, Michael J. Edney, Sean B. O'Connell, and Michael Dingman on behalf of Timothy Barton. (Huffman, Edwin) (Entered: 10/12/2022) |
| 10/14/2022 | 18 (p.534) | Agreed Motion for Extension of Time to File Answer filed by Timothy Barton (Attachments: # 1 (p.21) Agreed Proposed Order) (Huffman, Edwin) (Entered: |

| | | |
|---|---|---|
| | | 10/14/2022) |
| 10/14/2022 | 19 (p.540) | MOTION for Extension of Time to File Response/Reply to 6 (p.115) MOTION Plaintiff's Expedited Motion for Appointment of Receiver and Brief In Support filed by Timothy Barton (Attachments: # 1 (p.21) Proposed Order) (Huffman, Edwin) (Entered: 10/14/2022) |
| 10/15/2022 | 20 | ELECTRONIC ORDER: The Court DENIES 19 (p.540) Motion to Extend Time to File Response. The Response is due October 17, 2022. (Ordered by Judge Brantley Starr on 10/15/2022) (chmb) (Entered: 10/15/2022) |
| 10/17/2022 | 21 | ELECTRONIC ORDER granting 18 (p.534) Motion for Extension of Time to File Answer. The answer is due 11/16/2022. (Ordered by Judge Brantley Starr on 10/17/2022) (chmb) (Entered: 10/17/2022) |
| 10/17/2022 | 22 (p.550) | Agreed Motion for Extension of Time to File Answer filed by Stephen T Wall (Attachments: # 1 (p.21) Proposed Order) (Heiskell, Michael) (Entered: 10/17/2022) |
| 10/17/2022 | 23 (p.553) | Agreed Motion for Extension of Time to File Answer *for the Relief Defendants* filed by Timothy Barton (Attachments: # 1 (p.21) Agreed Proposed Order) (Huffman, Edwin) (Entered: 10/17/2022) |
| 10/17/2022 | 24 (p.558) | RESPONSE filed by Timothy Barton re: 6 (p.115) MOTION Plaintiff's Expedited Motion for Appointment of Receiver and Brief In Support (Huffman, Edwin) (Entered: 10/18/2022) |
| 10/18/2022 | 25 (p.589) | Appendix in Support filed by Timothy Barton re 24 (p.558) Response/Objection (Huffman, Edwin) (Entered: 10/18/2022) |
| 10/18/2022 | 26 | ELECTRONIC ORDER granting 22 (p.550) Motion for Extension of Time to File Answer. The answer is due 11/16/2022. (Ordered by Judge Brantley Starr on 10/18/2022) (chmb) (Entered: 10/18/2022) |
| 10/18/2022 | 27 | ELECTRONIC ORDER granting 23 (p.553) Motion for Extension of Time to File Answer. The answer is due 11/16/2022. (Ordered by Judge Brantley Starr on 10/18/2022) (chmb) (Entered: 10/18/2022) |
| 10/18/2022 | 28 (p.597) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Michael Dingman (Filing fee $100; Receipt number ATXNDC-13232815) filed by Timothy Barton (Attachments: # 1 (p.21) Certificate of Good Standing) (Huffman, Edwin) (Entered: 10/18/2022) |
| 10/18/2022 | 29 (p.601) | Order GRANTING 6 (p.115) Motion for Appointment of Receiver. (Ordered by Judge Brantley Starr on 10/18/2022) (chmb) (Entered: 10/18/2022) |
| 10/18/2022 | 30 (p.626) | NOTICE of Attorney Appearance by Charlene Cantrell Koonce on behalf of Receiver. (Filer confirms contact info in ECF is current.) (Koonce, Charlene) (Entered: 10/18/2022) |
| 10/19/2022 | 31 | ELECTRONIC ORDER granting 28 (p.597) Application for Admission Pro Hac Vice of Michael Dingman. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 10/19/2022) (chmb) (Entered: 10/19/2022) |
| 10/20/2022 | 32 (p.628) | Emergency MOTION to Amend/Correct 29 (p.601) Order on Motion for Miscellaneous Relief filed by Timothy Barton (Attachments: # 1 (p.21) Proposed |

| | | |
|---|---|---|
| | | Order) (Edney, Michael) (Entered: 10/20/2022) |
| 10/20/2022 | 33 | ELECTRONIC ORDER: The Court DENIES Defendant Barton's 32 (p.628) Motion to Amend the Court's Order Appointing the Receiver. (Ordered by Judge Brantley Starr on 10/20/2022) (chmb) (Entered: 10/20/2022) |
| 10/25/2022 | 34 (p.634) | SUMMONS Returned Executed as to DJD Land Partners LLC ; served on 10/6/2022; LDG001 LLC ; served on 10/6/2022; Wall007 LLC ; served on 10/6/2022; Wall009 LLC ; served on 10/6/2022; Wall010 LLC ; served on 10/6/2022; Wall011 LLC ; served on 10/6/2022; Wall012 LLC ; served on 10/6/2022; Wall016 LLC ; served on 10/6/2022; Wall017 LLC ; served on 10/6/2022; Wall018 LLC ; served on 10/6/2022; Wall019 LLC ; served on 10/6/2022. (Bernstein, Keefe) (Entered: 10/25/2022) |
| 10/25/2022 | 35 (p.667) | SUMMONS Returned Executed as to Carnegie Development LLC ; served on 10/20/2022. (Bernstein, Keefe) (Entered: 10/25/2022) |
| 10/25/2022 | 36 (p.670) | SUMMONS Returned Executed as to Haoqiang Fu. Served on 10/17/2022. (Bernstein, Keefe) Modified docket on 10/26/2022 (oyh). (Entered: 10/25/2022) |
| 10/26/2022 | 37 (p.673) | MOTION Receiver's Unopposed Motion for Approval of Engagement Agreements filed by Receiver (Attachments: # 1 (p.21) Appendix, # 2 (p.51) Proposed Order) (Thomas, Cort) (Entered: 10/26/2022) |
| 10/27/2022 | 38 | ORDER: The Court GRANTS the Receiver's 37 (p.673) Motion for Approval of Engagement Agreements. The Receiver's engagements of Brown Fox, PLLC, Ahuja & Clark, PLLC, and Veracity Forensics LLC, and the terms of each, are APPROVED. Fees and expenses incurred by the engaged professionals shall be paid in accordance with the terms of the Order Appointing Receiver. (Ordered by Judge Brantley Starr on 10/27/2022) (chmb) (Entered: 10/27/2022) |
| 10/27/2022 | 39 (p.698) | NOTICE FILED: Peckar & Abramson (frw) (Entered: 10/27/2022) |
| 10/28/2022 | 40 | ELECTRONIC ORDER: The Court has received, by mail, a request from interested non-party Peckar & Abramson for a hearing on the Securities and Exchange Commission's 6 (p.115) Motion for Appointment of Receiver. This letter, which the Court filed at Doc. 39 (p.698) , is dated October 24, 2022. But on October 18, 2022, the Court entered an Order at Doc. 29 (p.601) granting the SEC's Motion. Construing Peckar & Abramson's letter as a motion for a hearing, the Court thus DENIES AS MOOT the motion, and invites Peckar & Abramson to visit the following website to sign up for the federal courts' Case Management/Electronic Case Files (CM/ECF) system for future reference and filing purposes in federal court: https://www.uscourts.gov/court-records/electronic-filing-cmecf (Ordered by Judge Brantley Starr on 10/28/2022) (chmb) (Entered: 10/28/2022) |
| 11/01/2022 | 41 (p.700) | MOTION to Supplement Order Appointing Receiver filed by Receiver re 29 (p.601) Order . (Attachments: # 1 (p.21) Proposed Order) (Koonce, Charlene) (Entered: 11/01/2022) |
| 11/01/2022 | 42 (p.712) | Appendix in Support filed by Receiver re 41 (p.700) MOTION to Supplement Order Appointing Receiver. (Koonce, Charlene) (Entered: 11/01/2022) |
| 11/01/2022 | 43 | ELECTRONIC ORDER: The Court ORDERS an expedited response to 41 (p.700) the Receiver's Motion to Supplement Order Appointing Receiver. Anyone wishing to respond must respond within ten (10) days. (Ordered by Judge Brantley Starr on |

| | | |
|---|---|---|
| | | 11/1/2022) (chmb) (Entered: 11/01/2022) |
| 11/02/2022 | 44 (p.752) | Unopposed MOTION to Intervene, MOTION to Stay *Proceedings* filed by United States of America (Attachments: # 1 (p.21) Proposed Order). Party United States of America added.Attorney Renee M Hunter-DOJ added to party United States of America(pty:intv) (Hunter-DOJ, Renee) (Entered: 11/02/2022) |
| 11/03/2022 | 45 | ***VACATED PER 48 ORDER***ORDER: The Court GRANTS 44 (p.752) the United States of America's Motion to Intervene and Stay Proceedings. This proceeding is STAYED until otherwise ordered by the Court. Nothing in this Order shall prevent the Court-appointed Receiver from performing the duties and exercising the powers set forth in Doc. No. 29 (p.601) the Court's Order Appointing Receiver. (Ordered by Judge Brantley Starr on 11/3/2022) (chmb) Modified on 11/4/2022 (ykp). (Entered: 11/03/2022) |
| 11/03/2022 | 46 (p.763) | NOTICE of *INTENT TO FILE RESPONSE TO THE GOVERNMENT'S MOTION TO STAY PROCEEDINGS* re: 44 (p.752) Unopposed MOTION to Intervene MOTION to Stay *Proceedings* filed by Timothy Barton (Edney, Michael) (Entered: 11/03/2022) |
| 11/04/2022 | 47 (p.766) | MOTION for Order Governing Administration of Receivership Estate, Notice of Disposition of Certain Personal Property, and Brief in Support filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Koonce, Charlene) (Entered: 11/04/2022) |
| 11/04/2022 | 48 | ELECTRONIC ORDER: The Court VACATES its Order at Doc. No. 45 granting the Government's Motion to Intervene and Stay Proceedings. Defendant Barton, who opposes the motion, has ten (10) days from the date of this Order to file a response. The Government will then have five (5) days to reply. Each party's filing should address what communication it had with the other party regarding whether Defendant Barton opposed the Government's 44 (p.752) Motion to Intervene and Stay Proceedings. (Ordered by Judge Brantley Starr on 11/4/2022) (chmb) (Entered: 11/04/2022) |
| 11/04/2022 | 49 | ELECTRONIC ORDER: The Court ORDERS an expedited response to 47 (p.766) the Receiver's Motion for Order Governing Administration of Receivership Estate. Any response must be filed within ten (10) days of this Order. (Ordered by Judge Brantley Starr on 11/4/2022) (chmb) (Entered: 11/04/2022) |
| 11/07/2022 | 50 (p.790) | AFFIDAVIT re 29 (p.601) Order on Motion for Miscellaneous Relief by Bank of America, N.A.. (Moeller, Evan) (Entered: 11/07/2022) |
| 11/11/2022 | 51 (p.793) | RESPONSE AND OBJECTION filed by HNGH Turtle Creek re: 47 (p.766) MOTION for Order Governing Administration of Receivership Estate, Notice of Disposition of Certain Personal Property, and Brief in Support, 41 (p.700) MOTION to Supplement Order Appointing Receiver (Attachments: # 1 (p.21) Appendix) (Nealy Cox, Erin) (Entered: 11/11/2022) |
| 11/11/2022 | 52 (p.860) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by HNGH Turtle Creek. (Clerk QC note: Affiliate entry indicated). (Nealy Cox, Erin) (Entered: 11/11/2022) |
| 11/14/2022 | 53 (p.862) | RESPONSE filed by Maximilien Barton, Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, Titan Investments LLC re: 41 (p.700) MOTION to Supplement Order Appointing Receiver (Attachments: # 1 (p.21) Exhibit(s) Appendix, # 2 (p.51) Proposed Order) (Baum, Nathan) (Entered: |

| | | |
|---|---|---|
| | | 11/14/2022) |
| 11/14/2022 | 54 (p.1085) | RESPONSE filed by Timothy Barton re: 44 (p.752) Unopposed MOTION to Intervene MOTION to Stay *Proceedings* (Attachments: # 1 (p.21) Proposed Order) (Edney, Michael) (Entered: 11/14/2022) |
| 11/14/2022 | 55 (p.1091) | RESPONSE filed by Timothy Barton re: 41 (p.700) MOTION to Supplement Order Appointing Receiver (Edney, Michael) (Entered: 11/14/2022) |
| 11/14/2022 | 56 (p.1101) | RESPONSE filed by Timothy Barton re: 47 (p.766) MOTION for Order Governing Administration of Receivership Estate, Notice of Disposition of Certain Personal Property, and Brief in Support (Edney, Michael) (Entered: 11/14/2022) |
| 11/14/2022 | 57 (p.1113) | Appendix in Support filed by Timothy Barton re 56 (p.1101) Response/Objection (Edney, Michael) (Entered: 11/15/2022) |
| 11/15/2022 | 58 (p.1125) | Appendix in Support filed by Timothy Barton re 55 (p.1091) Response/Objection (Edney, Michael) (Entered: 11/15/2022) |
| 11/15/2022 | 59 (p.1168) | Agreed Motion for Second Extension of Time to File Answer filed by Timothy Barton (Attachments: # 1 (p.21) Proposed Order) (Edney, Michael) Modified text on 11/16/2022 (ygl). (Entered: 11/15/2022) |
| 11/16/2022 | 60 | ELECTRONIC ORDER granting 59 (p.1168) Motion for Extension of Time to File Answer. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Entered: 11/16/2022) |
| 11/16/2022 | 61 (p.1174) | Agreed Motion for Extension of Time to File Answer *Second Extension to File Answer Complaint* filed by Stephen T Wall (Attachments: # 1 (p.21) Proposed Order) (Heiskell, Michael) (Entered: 11/16/2022) |
| 11/16/2022 | 62 (p.1179) | ORDER: The Court GRANTS the Receivers 41 (p.700) Motion to Supplement Order Appointing Receiver as detailed herein. As to non-party HNGHs 51 (p.793) Response and Objection, the Court withholds judgment regarding the ownership of real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219, because that question is not yet properly before the Court. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Entered: 11/16/2022) |
| 11/16/2022 | 63 (p.1185) | ORDER: The Court GRANTS the Receivers 47 (p.766) Motion for Order Governing Administration of Receivership Estate, Etc. As to non-party HNGHs 51 (p.793) Response and Objection, the Court withholds judgment regarding the ownership of real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219, because that question is not yet properly before the Court. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Entered: 11/16/2022) |
| 11/16/2022 | 64 (p.1195) | ORDER: The Court GRANTS 44 (p.752) the United States of America's Motion to Intervene and Stay Proceedings. This proceeding is STAYED until otherwise ordered by the Court. Nothing in this Order shall prevent the Court-appointed Receiver from performing the duties and exercising the powers set forth in 29 (p.601) the Court's Order Appointing Receiver, as supplemented by 62 (p.1179) the Court's Order Supplementing the Order Appointing Receiver. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Main Document 64 replaced on 11/16/2022) (rekc). (Entered: 11/16/2022) |
| 11/16/2022 | 65 | ELECTRONIC ORDER: The Court VACATES AS MOOT 61 (p.1174) Stephen T. Wall's Motion for Extension of Time to File Answer in light of 64 (p.1195) the |

| | | |
|---|---|---|
| | | Court's Order staying proceedings. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Entered: 11/16/2022) |
| 11/17/2022 | 66 (p.1197) | NOTICE OF INTERLOCUTORY APPEAL as to 63 (p.1185) Order on Motion for Miscellaneous Relief, 33 Order on Motion to Amend/Correct, 62 (p.1179) Order on Motion for Miscellaneous Relief, 29 (p.601) Order on Motion for Miscellaneous Relief to the Fifth Circuit by Timothy Barton. Filing fee $505, receipt number ATXNDC-13311453. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 11/17/2022) |
| 11/17/2022 | 67 (p.1199) | STATUS REPORT *Receiver's Initial Status Report* filed by Receiver. (Thomas, Cort) (Entered: 11/17/2022) |
| 11/21/2022 | 68 (p.1234) | AMENDED DOCUMENT by Bank of America, N.A.. Amendment to 50 (p.790) Affidavit. . (Moeller, Evan) (Entered: 11/21/2022) |
| 11/21/2022 | | USCA Case Number 22-11132 in USCA5 for 66 (p.1197) Notice of Appeal filed by Timothy Barton. (svc) (Entered: 11/21/2022) |
| 11/25/2022 | 69 (p.1237) | MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* filed by HNGH Turtle Creek (Attachments: # 1 (p.21) Proposed Order) (Nealy Cox, Erin) (Entered: 11/25/2022) |
| 11/25/2022 | 70 (p.1255) | Appendix in Support filed by HNGH Turtle Creek re 69 (p.1237) MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* (Nealy Cox, Erin) (Entered: 11/25/2022) |
| 11/28/2022 | 71 (p.1312) | MOTION to Stay *Pending Appeal* filed by Timothy Barton (Edney, Michael) (Entered: 11/28/2022) |
| 11/28/2022 | 72 (p.1338) | Appendix in Support filed by Timothy Barton re 71 (p.1312) MOTION to Stay *Pending Appeal* (Edney, Michael) (Entered: 11/28/2022) |
| 11/30/2022 | 73 (p.1358) | Brief/Memorandum in Support filed by Receiver re 41 (p.700) MOTION to Supplement Order Appointing Receiver *and Further Motion to Supplement* (Attachments: # 1 (p.21) Declaration(s) Part 1, # 2 (p.51) Declaration(s) Part 2) (Koonce, Charlene) (Entered: 11/30/2022) |
| 11/30/2022 | 74 (p.1878) | Appendix in Support filed by Receiver re 73 (p.1358) Brief/Memorandum in Support of Motion (Attachments: # 1 (p.21) Exhibit(s) Part 1, # 2 (p.51) Exhibit(s) Part 2) (Koonce, Charlene) (Entered: 11/30/2022) |
| 12/01/2022 | | Record on Appeal for USCA5 22-11132 (related to 66 (p.1197) appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of |

| | | |
|---|---|---|
| | | appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (mcrd) (Entered: 12/01/2022) |
| 12/01/2022 | 75 | ELECTRONIC ORDER: The Court ORDERS an expedited response to 71 (p.1312) Timothy Barton's Motion to Stay Pending Appeal. A response is due by December 9th, with a reply due by December 12th. The Receiver may respond to this motion within this timeframe as well. (Ordered by Judge Brantley Starr on 12/1/2022) (chmb) (Entered: 12/01/2022) |
| 12/02/2022 | 76 (p.2373) | MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property filed by Receiver (Attachments: # 1 (p.21) Proposed Order) (Koonce, Charlene) (Entered: 12/02/2022) |
| 12/02/2022 | 77 (p.2382) | Appendix in Support filed by Receiver re 76 (p.2373) MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property (Koonce, Charlene) (Entered: 12/02/2022) |
| 12/05/2022 | 78 | ELECTRONIC ORDER: The Court ORDERS expedited briefing on the Receiver's 76 (p.2373) Motion for Appointment of Appraisers, Approval of Appraisals, and Setting a Hearing. A response is due by December 12, 2022, with a reply due by December 15, 2022. It is further ordered that on December 19, 2022, at 10:00 AM, the Court will hold a hearing to consider arguments and objections regarding confirmation of the sale described in the Motion. (Ordered by Judge Brantley Starr on 12/5/2022) (chmb) (Entered: 12/05/2022) |
| 12/05/2022 | 79 | NOTICE OF HEARING to consider arguments and objections regarding confirmation of the sale described in the Receiver's 76 (p.2373) Motion. Hearing set for 12/19/2022 10:00 AM in US Courthouse, Courtroom 1525, 1100 Commerce St., Dallas, TX 75242-1310 before Judge Brantley Starr. (chmb) (Entered: 12/05/2022) |
| 12/07/2022 | 80 (p.2478) | NOTICE of Attorney Appearance by Jonathan Patton on behalf of Palisades-TC, LLC. (Filer confirms contact info in ECF is current.) (Patton, Jonathan) (Entered: 12/07/2022) |
| 12/07/2022 | 81 (p.2480) | RESPONSE filed by Timothy Barton re: 73 (p.1358) Brief/Memorandum in Support of Motion (Edney, Michael) (Entered: 12/07/2022) |
| 12/07/2022 | 82 (p.2486) | RESPONSE filed by Maximilien Barton, Gillespie Villas LLC, MXBA LLC, TRTX Properties LLC, Titan Investments LLC, Venus59 LLC re: 73 (p.1358) Brief/Memorandum in Support of Motion (Attachments: # 1 (p.21) Appendix to Response to Supplemental Motion) (Baum, Nathan) (Entered: 12/07/2022) |
| 12/09/2022 | 83 (p.2506) | RESPONSE filed by Securities and Exchange Commission re: 71 (p.1312) MOTION to Stay *Pending Appeal* (Attachments: # 1 (p.21) Proposed Order) (Bernstein, Keefe) (Entered: 12/09/2022) |
| 12/09/2022 | 84 (p.2523) | RESPONSE filed by Receiver re: 71 (p.1312) MOTION to Stay *Pending Appeal* (Koonce, Charlene) (Entered: 12/09/2022) |
| 12/09/2022 | | |

| | | |
|---|---|---|
| | 85 (p.2543) | Appendix in Support filed by Receiver re 84 (p.2523) Response/Objection (Koonce, Charlene) (Entered: 12/09/2022) |
| 12/12/2022 | 86 (p.2594) | MOTION for Extension of Time to File Response/Reply to 76 (p.2373) MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property, 71 (p.1312) MOTION to Stay *Pending Appeal* filed by Timothy Barton (Attachments: # 1 (p.21) Proposed Order) (Huffman, Edwin) (Entered: 12/12/2022) |
| 12/12/2022 | 87 | ELECTRONIC ORDER granting 86 (p.2594) Motion to Extend Time to File Response/Reply. Defendant Timothy Barton's response to 76 (p.2373) the Receiver's Motion for Appointment of Appraisers, etc., and his reply the SEC's response to his 71 (p.1312) Motion to Stay are both due tomorrow, December 13, 2022. (Ordered by Judge Brantley Starr on 12/12/2022) (chmb) (Entered: 12/12/2022) |
| 12/13/2022 | 88 (p.2600) | ORDER: The Court GRANTS the Receiver's 73 (p.1358) Motion to Supplement Order Appointing Receiver. (Ordered by Judge Brantley Starr on 12/13/2022) (chmb) (Entered: 12/13/2022) |
| 12/13/2022 | 89 (p.2611) | NOTICE of *Intended Sale of Personal Property* filed by Receiver (Koonce, Charlene) (Entered: 12/13/2022) |
| 12/13/2022 | 90 (p.2616) | REPLY filed by Timothy Barton re: 71 (p.1312) MOTION to Stay *Pending Appeal* (Edney, Michael) (Entered: 12/13/2022) |
| 12/13/2022 | 91 (p.2629) | RESPONSE AND OBJECTION filed by Timothy Barton re: 76 (p.2373) MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property (Edney, Michael) (Entered: 12/13/2022) |
| 12/13/2022 | 92 (p.2649) | Appendix in Support filed by Timothy Barton re 91 (p.2629) Response/Objection, *to Motion for Sale of Rock Creek Property [ECF No. 76], and Cross-Motion for Order Prohibiting Sale of Personal Property Located at Rock Creek Home* (Edney, Michael) (Entered: 12/13/2022) |
| 12/15/2022 | 93 (p.2654) | REPLY filed by Receiver re: 76 (p.2373) MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property (Koonce, Charlene) (Entered: 12/15/2022) |
| 12/15/2022 | 94 (p.2665) | RESPONSE filed by Receiver re: 69 (p.1237) MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* (Koonce, Charlene) (Entered: 12/15/2022) |
| 12/15/2022 | 95 (p.2673) | MOTION to Ratify Agreement with DLP Capital and Other DLP Entities filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Exhibit(s) A - Agreement, # 2 (p.51) Proposed Order) (Thomas, Cort) (Entered: 12/15/2022) |
| 12/16/2022 | 96 (p.2705) | MOTION Verified and Emergency Motion to Declare Lis Pendens Void filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Exhibit(s) A, # 2 (p.51) Proposed Order) (Koonce, Charlene) (Entered: 12/16/2022) |
| 12/16/2022 | 97 (p.2715) | RESPONSE filed by Timothy Barton re: 69 (p.1237) MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* (Edney, Michael) (Entered: 12/16/2022) |
| 12/16/2022 | 98 | |

| | | |
|---|---|---|
| | | ELECTRONIC ORDER: The Court ORDERS expedited briefing on 95 (p.2673) the Receiver's Motion to Ratify Agreement with DLP Capital and Other DLP Entities. Any response is due by the close of business on Tuesday, December 20, 2022. (Ordered by Judge Brantley Starr on 12/16/2022) (chmb) (Entered: 12/16/2022) |
| 12/16/2022 | 99 (p.2724) | ORDER: The Court GRANTS IN PART 76 (p.2373) the Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property. (Ordered by Judge Brantley Starr on 12/16/2022) (chmb) (Entered: 12/16/2022) |
| 12/16/2022 | | Hearing/Deadline Modification: Hearing set per 99 (p.2724) Order. Hearing set for 12/19/2022 10:00 AM before Judge Brantley Starr. (axm) (Entered: 12/19/2022) |
| 12/18/2022 | 100 (p.2727) | NOTICE of *Publication Regarding Sale of Rock Creek Property* re: 76 (p.2373) MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property filed by Receiver (Thomas, Cort) (Entered: 12/18/2022) |
| 12/19/2022 | 101 (p.2730) | Appendix in Support filed by Receiver re 100 (p.2727) Notice (Other), *of Publication Regarding Sale of Rock Creek Property* (Thomas, Cort) (Entered: 12/19/2022) |
| 12/19/2022 | 102 (p.2734) | RESPONSE AND OBJECTION filed by Timothy Barton re: 96 (p.2705) MOTION Verified and Emergency Motion to Declare Lis Pendens Void (Edney, Michael) (Entered: 12/19/2022) |
| 12/19/2022 | 103 | Minute Entry for proceedings held before Judge Brantley Starr: Hearing on approval of sale held on 12/19/2022. Statements heard from Ms. Koonce, Mr. Edney and Mr. Bernstein. Court to issue order with ruling. Court is adjourn.. Attorney Appearances: Plaintiff - Keefe Bernstein; Defense - Michael Edney, Ted Huffman, Receiver - Charlene Koonce, Cort Thomas (No exhibits)(Court Reporter Kelli Ann Willis.) (Frye, Kevin) (Entered: 12/19/2022) |
| 12/20/2022 | 104 (p.2740) | ORDER GRANTING MOTION TO APPROVE SALE: The Court GRANTS the Receiver's motion for sale of the Property [Doc. No. 76 (p.2373) ] and DENIES Barton's motion to prohibit the sale [Doc. No. 91 (p.2629) ]. The Court GRANTS the Receiver's motion to declare the lis pendens void and ORDERS Barton to pay, within three days of this Order, $1,200 to the Receiver for fees incurred in opposing the lis pendens. [Doc. No. 96 (p.2705) ]. During the hearing, defense counsel made an oral motion to stay the sale of the Property should the Court find that selling it is in the Receiverships best interest. For the reasons stated at the hearing, the Court DENIES that oral motion. (Ordered by Judge Brantley Starr on 12/20/2022) (ndt) (Entered: 12/20/2022) |
| 12/20/2022 | 105 (p.2743) | NOTICE of Attorney Appearance by Eliot Dana Shavin for Corinna Chandler and Daniel Alexander on behalf of David Dhiraj Ramolia. (Shavin, Eliot) (Entered: 12/20/2022) |
| 12/20/2022 | 106 (p.2745) | RESPONSE AND OBJECTION filed by Timothy Barton re: 95 (p.2673) MOTION to Ratify Agreement with DLP Capital and Other DLP Entities (Edney, Michael) (Entered: 12/20/2022) |
| 12/20/2022 | 107 (p.2754) | Appendix in Support filed by Timothy Barton re 106 (p.2745) Response/Objection *to the Receivers Verified Motion To Ratify Agreement With DLP Capital and Other DLP Entities* (Edney, Michael) (Entered: 12/20/2022) |

| | | |
|---|---|---|
| 12/21/2022 | 108 (p.2781) | NOTICE OF INTERLOCUTORY APPEAL as to 104 (p.2740) Order on Motion for Miscellaneous Relief,, to the Fifth Circuit by Timothy Barton. Filing fee $505, receipt number ATXNDC-13393416. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 12/21/2022) |
| 12/21/2022 | 109 (p.2783) | ORDER granting Receiver's 95 (p.2673) Motion to Ratify Agreement With DLP Capital and Other DLP Entities (Ordered by Judge Brantley Starr on 12/21/2022) (rekc) Modified date filed on 12/22/2022 (rekc). (Entered: 12/22/2022) |
| 12/22/2022 | 110 (p.2785) | MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property and Setting Hearing Regarding Approval of Sale of Frisco Gate Property filed by Receiver (Attachments: # 1 (p.21) Proposed Order) (Thomas, Cort) (Entered: 12/22/2022) |
| 12/22/2022 | 111 (p.2793) | Appendix in Support filed by Receiver re 110 (p.2785) MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property and Setting Hearing Regarding Approval of Sale of Frisco Gate Property (Thomas, Cort) (Entered: 12/22/2022) |
| 12/23/2022 | 112 (p.2948) | NOTICE OF INTERLOCUTORY APPEAL as to 109 (p.2783) Order on Motion for Miscellaneous Relief to the Fifth Circuit by Timothy Barton. Filing fee $505, receipt number ATXNDC-13396690. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 12/23/2022) |
| 12/23/2022 | 113 (p.2950) | NOTICE of Attorney Appearance by Daniel Rasoul Alexander on behalf of David Dhiraj Ramolia. (Filer confirms contact info in ECF is current.) (Alexander, Daniel) (Entered: 12/23/2022) |
| 12/27/2022 | 114 (p.2953) | MOTION to Stay re 109 (p.2783) Order on Motion for Miscellaneous Relief filed by Timothy Barton with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Edney, Michael) (Entered: 12/27/2022) |
| 12/29/2022 | 115 | ELECTRONIC ORDER: The Court ORDERS expedited briefing on 110 (p.2785) the Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property, and Setting Hearing Regarding Approval of Sale, and 114 (p.2953) Barton's Motion to Stay. As to 110 (p.2785) , the response is due January 9, 2023, with a reply due January 12, 2023. As to 114 (p.2953) , the response is due |

| | | |
|---|---|---|
| | | January 4, 2023, with a reply due January 9, 2023. (Ordered by Judge Brantley Starr on 12/29/2022) (chmb) (Entered: 12/29/2022) |
| 12/29/2022 | 116 (p.2964) | REPLY filed by HNGH Turtle Creek re: 94 (p.2665) Response/Objection (Nealy Cox, Erin) (Entered: 12/29/2022) |
| 12/29/2022 | 117 (p.2973) | REPLY filed by HNGH Turtle Creek re: 69 (p.1237) MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* (Nealy Cox, Erin) (Entered: 12/29/2022) |
| 01/04/2023 | 118 (p.2983) | Transcript Order Form: re 108 (p.2781) Notice of Appeal,,,, transcript requested by Timothy Barton for Hearing on approval of sale held 12/19/22 (Court Reporter: Kelli Ann Willis.) Payment method: Private funds - Requester has obtained the estimate from the reporter and has paid or will pay the cost as directed. Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Edney, Michael) (Entered: 01/04/2023) |
| 01/04/2023 | 119 (p.2985) | RESPONSE filed by Receiver re: 114 (p.2953) MOTION to Stay re 109 (p.2783) Order on Motion for Miscellaneous Relief (Koonce, Charlene) (Entered: 01/04/2023) |
| 01/04/2023 | 120 (p.3004) | Appendix in Support filed by Receiver re 119 (p.2985) Response/Objection (Koonce, Charlene) (Entered: 01/04/2023) |
| 01/06/2023 | 121 (p.3047) | Notice of Filing of Official Electronic Transcript of Sale Approval Proceedings held on 12-19-2022 before Judge Brantley Starr. Court Reporter/Transcriber Kelli Ann Willis, Telephone number 214-753-2654. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (72 pages) Redaction Request due 1/27/2023. Redacted Transcript Deadline set for 2/6/2023. Release of Transcript Restriction set for 4/6/2023. (kaw) (Main Document 121 replaced on 1/10/2023) (chmb). Modified on 1/10/2023 (chmb). (Entered: 01/06/2023) |
| 01/06/2023 | | USCA Case Number 22-11242 for 112 (p.2948) Notice of Appeal filed by Timothy Barton. (svc) (Entered: 01/06/2023) |
| 01/06/2023 | 122 (p.3019) | ORDER of USCA IT IS ORDERED that Appellant's opposed motion to stay the district court's order appointing a Receiver, pending appeal, is DENIED. IT IS FURTHER ORDERED that Appellant's opposed alternative motion to stay several components of that order and others that have become part of it, pending appeal, is DENIED as to 108 (p.2781) Notice of Appeal filed by Timothy Barton, 66 (p.1197) Notice of Appeal filed by Timothy Barton, 112 (p.2948) Notice of Appeal filed by Timothy Barton. (svc) (Entered: 01/09/2023) |
| 01/09/2023 | 123 (p.3020) | NOTICE of *Non-Opposition* re: 110 (p.2785) MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property and Setting Hearing Regarding Approval of Sale of Frisco Gate Property filed by Timothy Barton (Edney, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | | |

| | | |
|---|---|---|
| | 124 (p.3024) | REPLY filed by Timothy Barton re: 114 (p.2953) MOTION to Stay re 109 (p.2783) Order on Motion for Miscellaneous Relief (Edney, Michael) (Entered: 01/09/2023) |
| 01/10/2023 | 125 (p.3034) | Corrected REPLY filed by Timothy Barton re: 114 (p.2953) MOTION to Stay re 109 (p.2783) Order on Motion for Miscellaneous Relief (Edney, Michael) Modified text on 1/10/2023 per Attorney Michael Edney(sxf). (Entered: 01/10/2023) |
| 01/10/2023 | 126 (p.3044) | NOTICE of *REQUEST FOR NOTICE OF FILINGS* filed by Southern Star Capital, LLC (Buchholz, Robert) (Entered: 01/10/2023) |

# Tab 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| ***Plaintiff,*** | § | |
| **v.** | § | **No. 3:22-CV-2118-X** |
| **TIMOTHY LYNCH BARTON**<br>**CARNEGIE DEVELOPMENT, LLC**<br>**WALL007, LLC**<br>**WALL009, LLC**<br>**WALL010, LLC**<br>**WALL011, LLC**<br>**WALL012, LLC**<br>**WALL016, LLC**<br>**WALL017, LLC**<br>**WALL018, LLC**<br>**WALL019, LLC**<br>**HAOQIANG FU (a/k/a MICHAEL FU)**<br>**STEPHEN T. WALL** | § | |
| ***Defendants,*** | § | |
| **DJD LAND PARTNERS, LLC**<br>**LDG001, LLC** | § | |
| ***Relief Defendants.*** | § | |

**DEFENDANT'S NOTICE OF APPEAL**

PLEASE TAKE NOTICE that Defendant Timothy Lynch Barton, by counsel, hereby appeals to the United States Court of Appeals for the Fifth Circuit from the Court's Order entered on December 20, 2022 (ECF No. 104), which granted the Receiver's Motion for sale of the Rock Creek Property (ECF No. 76), granted the Receiver's Motion to Declare Lis Pendens Void (ECF No. 96), and denied Barton's oral motion to stay the sale of the property pending the existing appeal of several of this Court's orders.

Dated: December 21, 2022.

Respectfully submitted,

By: */s/ Michael J. Edney*

Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice*)
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

## CERTIFICATE OF SERVICE

On December 21, 2022 I filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to counsel of record for all parties.

*/s/ Michael J. Edney*
Michael J. Edney

# Tab 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>TIMOTHY BARTON,<br>CARNEGIE DEVELOPMENT, LLC,<br>WALL007, LLC,<br>WALL009, LLC,<br>WALL010, LLC,<br>WALL011, LLC,<br>WALL012, LLC,<br>WALL016, LLC,<br>WALL017, LLC,<br>WALL018, LLC,<br>WALL019, LLC,<br>HAOQIANG FU (a/k/a MICHAEL FU),<br>STEPHEN T. WALL,<br><br>*Defendants*,<br><br>DJD LAND PARTNERS, LLC, and<br>LDG001, LLC,<br><br>*Relief Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 3:22-CV-2118-X |

**ORDER GRANTING MOTION TO APPROVE SALE**

Before the Court is the Receiver's motion to approve the sale of property at 4109 Rock Creek Drive, Dallas, Texas 75402 (the "Property") [Doc. No. 76] and Defendant Timothy Barton's cross-motion to prohibit that sale [Doc. No. 91]. Also before the Court is the Receiver's Motion to Declare Lis Pendens Void. [Doc. No. 96].

At the conclusion of the hearing before the Court yesterday, and for the reasons stated at the hearing, the Court made the following findings. First, the proposed sale satisfies all statutory requirements: the Receiver published notice of the sale,[1] the proposed sale price exceeds two-thirds of the appraised value, and the Receiver received no competing offers.[2] Second, the proposed sale is in the best interest of the Receivership. And third, Barton's Notice of Lis Pendens on the Property is void and, as defense counsel acknowledged during the hearing, it would not have encumbered the sale even if it were not.

In light of these findings, the Court **GRANTS** the Receiver's motion for sale of the Property [Doc. No. 76] and **DENIES** Barton's motion to prohibit the sale [Doc. No. 91]. The Court **GRANTS** the Receiver's motion to declare the lis pendens void and **ORDERS** Barton to pay, within three days of this Order, $1,200 to the Receiver for fees incurred in opposing the lis pendens. [Doc. No. 96]. During the hearing, defense counsel made an oral motion to stay the sale of the Property should the Court find that selling it is in the Receivership's best interest. For the reasons stated at the hearing, the Court **DENIES** that oral motion.

Finally, as discussed at the hearing, the Court **ORDERS** the Receiver to remove Barton's personal items[3] from the Property before the Property is sold, and to place them in storage at the expense of the receivership estate. If storage expenses cause the personal items to rapidly deteriorate in value when compared to the cost of

---

[1] *See* Doc. No. 100.

[2] 28 U.S.C. § 2001(b).

[3] *See* Doc. No. 89 at 2 (detailing the items).

the storage, the Receiver may seek Court approval to sell the items, and Barton must notify the Court in response if he will pay the storage costs to avoid a sale.

**IT IS SO ORDERED,** this 20th day of December, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

# Tab 4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

CASE NO. 3:22-cv-2118-X

---------------------------------------x

SECURITIES & EXCHANGE COMMISSION,

Plaintiffs,

v.

THOMAS LYNCH BARTON, et al.,

Defendants.

---------------------------------------x

TRANSCRIPT OF THE HEARING

BEFORE THE HONORABLE BRANTLEY STARR

UNITED STATES DISTRICT JUDGE

Dallas, Texas

December 19, 2022

10:03 a.m.

A P P E A R A N C E S:

FOR THE PLAINTIFF:

SECURITIES & EXCHANGE COMMISSION
801 Cherry Street
Suite 1900
Fort Worth, Texas 76102
BY: KEEFE M. BERNSTEIN, ESQ.
bernsteink@sec.gov
(817) 900-2607

FOR THE DEFENDANT BARTON:

HUNTON ANDREWS KURTH, LLP
2200 Pennsylvania Avenue NW
Suite 905
Washington, DC 20037
BY: MICHAEL J. EDNEY, ESQ.
TED HUFFMAN, ESQ.
medney@HuntonAK.com
(202) 778-2204

FOR THE RECEIVER:

BROWN FOX, LLP
8111 Preston Road
Suite 300
Dallas, Texas 75225
BY: CHARLENE KOONCE, ESQ.
charlene@brownfoxlaw.com
(214) 327-5000

COURT REPORTER: MS. KELLI ANN WILLIS, RPR, CRR, CSR
United States Court Reporter
1100 Commerce Street
Room 1528
Dallas, Texas 75242
livenotecrr@gmail.com

Proceedings reported by mechanical stenography and transcript produced by computer.

* * * *

- P R O C E E D I N G S -

-o-

THE COURT SECURITY OFFICER: All rise.

THE COURT: Thank you.

You can be seated.

Okay. We are on the record in Case No. 3:22-cv-2118. That is SEC versus Barton, et al.

Let's do appearances first, for the SEC.

MR. BERNSTEIN: Your Honor, Keefe Bernstein here on behalf of the SEC.

THE COURT: Thank you. Thanks for speaking up since we don't have a microphone for you.

Okay. Who is here for Barton?

MR. EDNEY: Good morning, your Honor.

Michael Edney and Ted Huffman from the Hunton Andrews Kurth law firm for Mr. Barton.

THE COURT: All right. Thank you, Mr. Edney.

And who is here -- so I understand, do we anyone here for Wall?

No one here today for Wall.

Okay. How about for the Receiver?

MS. KOONCE: Good morning, your Honor.

Charlene Koonce on behalf of Cort Thomas,

the Receiver.

THE COURT: Okay. Thank you, Ms. Koonce.

All righty. So we are here on the pending motion for the sale of property. So what I need to do is talk through with Receiver's counsel if we've got any other competing offers. I see that you filed your notice yesterday of no further competing offers.

But tell me the update on that. Any new ones in, and then talk me through best interests, and why you think it is in the best interest of the estate.

MS. KOONCE: Thank you, Judge.

Would you prefer that I approach at the lecturn or stand here?

THE COURT: So you can go either place.

I will say for everybody who's speaking, if you are going to sit at counsel table, just stay seated because once you stand up, you are far away from the microphone.

So wherever you want to go is fine by me, sitting at counsel table or standing at the podium.

MS. KOONCE: I'm actually just more comfortable standing, if it's okay. So I'll --

THE COURT: Fine by me. Go for it.

MS. KOONCE: As you are aware, by your reference to the Receiver's notice, that we did publish notice of the sale and notice of the hearing, which is required by the statute that governs this sale. We did not receive any competing offers.

As we stated in the motion to approve the sale, the motion to appoint the appraisers, there were negotiations on the contract that is before the Court. This was the highest offer received out of four offers.

As the Court is aware, this sale does comply and exceed what the statute requires. It is more than the two-thirds minimum. In fact, it is higher than the appraised value that was submitted.

As the Court requested, I would like to provide some information about why this is in the best interest of the estate.

As the Court is aware, from numerous filings, we have very limited cash and at the same time, we have competing requirements for the cash on hand. For instance, we need to pay insurance on this property and multiple other properties.

We have one property that is subject to HUD loans and those HUD loans require continuing

certifications from accountants. Those are very expensive. And if we don't pay those certifications, the HUD loan could go into default and it could then forfeit the interest, the receivership estate's interest in that property.

Those are just some of the competing obligations that we have for very limited cash.

I know there is a motion to stay the sale. There is a motion that is -- there's an objection to this sale that contends that this sale should not go forward now, that there could be the possibility of irreparable harm. And Judge, the sale has to go forward immediately.

This sale, this property, like every other receivership property that we have encountered so far is heavily encumbered. And it is not encumbered by a traditional loan. It's encumbered by a loan that's incurring interest at 9.9 percent. It's interest only. The lender claims that there is default interest accruing at 18 percent.

We also have to continue to pay taxes. We have to pay the utilities, so that the pipes don't freeze during this weather.

If we don't sell the property very quickly, that interest that is accruing and not

being paid, because we don't have access to pay it, will erode all equity in the property.

THE COURT: When are property taxes due? January 31st?

MS. KOONCE: I'm not confident that is correct but I think so.

THE COURT: Okay. Generally speaking, all property taxes are due January 31st.

MS. KOONCE: I believe that's correct.

THE COURT: Some people pay them the year of --

MS. KOONCE: Yes.

THE COURT: -- December 31st, so that they get the tax deduction for them but --

MS. KOONCE: That is correct. And there's a -- there's a higher assessment -- yes, if you pay late, it increases. That's absolutely true.

THE COURT: Understood.

Okay. So I understand from Barton's filings that Barton would like to rent the house.

Talk me through that scenario and why -- I know you have already talked me through, you need the cash in order to maintain the other properties. Talk me through why it's not --

MS. KOONCE: Right. That would have been

an excellent offer, possibly.

First of all, it was never made. It was suggested in a filing as an alternative as opposed to any communication in response to any conference. It was never offered.

Additionally, the monthly interest on this loan is about $11,000.

We did a little bit of research. The highest monthly rental for any property in the location is about $9,000.

So if Mr. Barton would like to offer and put in place today -- we've had a lot of delay in our communications -- but a contract in which he rents the property, pays all of the accruing mortgage expenses, the insurance, the property taxes, and he's going to warrant that he's not going to remove any more of the property from the premises.

We took possession of it on a day after we had received notice that he was moving art, not just personal belongings, but art and valuable items out of the house.

If that was something that could be put in place immediately, we would consider it. The offer was never made. It was an argument raised in a

motion. There was no conference, there was no request that that happen. So our contention, Judge, is that the time to consider that offer has long since passed.

In addition, as you have observed, paying the expenses to maintain the equity in this property would not help the receivership with our cash issues.

Now, I know the Court is aware, we've also filed a motion to ratify approval of a settlement with another entity. And that potentially could bring in sufficient assets to maintain some of these other properties for some limited period of time.

We didn't receive a conference as to what -- there was no response to our conference as to whether that is going to be opposed. We don't know if the Court is going to approve it. We don't know when that will happen, if it will happen at all.

But the receivership cannot maintain the other properties that we have an obligation to manage without cash. It is just not possible.

With respect to the contents -- I don't know if you want to take that up now.

THE COURT: Sure. I would like to hear

from you.

MS. KOONCE: So there is a motion, as you know, to sell the contents of the property as well. Mr. Barton has also objected to that proposal.

As you are aware from multiple filings and email communications between counsel, we offered to store and hold that -- those contents, at Mr. Barton's cost because, again, the receivership does not have the funds to pay to move those contents out and store them. And we got no response.

In addition, we have asked for confirmation that the furnishings in this property were actually purchased by Mr. Barton. We have received no response to that either.

The response has been, Mr. Barton lived in this property, it was owned by a single purpose entity, therefore, it is his.

Well, the receivership order says that all of the assets of all of these entities now are in the Court's possession and, therefore, the Receiver's possession.

We know, from looking at the bank records, that there was extensive commingling. The Receiver, also, in his investigation, learned that most of the contents of this property were purchased within the

last two years by receivership entities.

We have had absolutely no response to that, that, hey, we need some time to look at credit card statements, we need some time to gather information to demonstrate that these assets were actually purchased by Mr. Barton, none of that.

Instead, Judge, what we have is a continuing disregard for the Court's authority and the receivership order.

For instance, in filing a lis pendens that we discovered was filed the day we conferred on the motion to sell the property. It was filed on December 1st.

Now, the response to that was filed very early this morning was that the Court does not have the authority to declare that lis pendens void. I think that is absolutely incorrect, your Honor.

We relied on Property Code Section 12.008, not 12.007. It is a different procedure. I think the bankruptcy cases that we cited absolutely provide the Court authority.

The Duval case was an instance in which the debtor filed a lis pendens on property that he did not want to be transferred subject to a planned confirmation. The bankruptcy judge said, you cannot

accomplish a stay through a lis pendens which has already been denied in the litigation.

But if the Court is uncomfortable with that procedure, you have a much more simple and direct route as well.

Because the Defendant here has violated your receivership order, you can compel him to sign a release of lien, which we brought with us today. That's absolutely permissible, Judge, that you require the obedience and observance of your court order to allow the sale to proceed in the manner that is contemplated by the receivership order.

In short, the sale is in the best -- in the best interest of the receivership estate. It is absolutely essential to maintaining the value of the other properties that are in the Receiver's possession and control.

We have had no other competing offers. We have satisfied the statute. Everything that is necessary for the Court to consider the sale, I think, has been presented today. But we are, of course, happy to provide any additional information that you need.

THE COURT: Thank you, Ms. Koonce.

MS. KOONCE: Thank you.

THE COURT: All righty.

And let's hear from counsel for Barton, Mr. Edney.

MR. EDNEY: Thank you, your Honor.

Before the Court today is a request to authorize the sale of Mr. Barton's only home.

Since the Receiver kicked Mr. Barton out of his home on October 20th, he's been sleeping on his daughter's couch.

At this stage of the case, the Government has alleged violations of the securities laws but the Government has not produced the documents underlying those claims to us; the Government has not attempted to prove those allegations before a trier of fact.

At the same time, we are challenging the existence of this Receiver and certainly his authority to undertake liquidation.

This sale, your Honor, is permanent. It is a permanent action that would cause irreparable harm and be almost impossible to reverse.

The Court should deny this request to undertake the Receiver's action at this time.

Your Honor, respectfully, selling the -- selling Mr. Barton's home is beyond any legitimate

purpose for this Receiver at this point of the proceedings, prior to any proof, much less finding of liability on the underlying charges.

THE COURT: So receivers can't sell any property until there's a liability finding, in your view?

MR. EDNEY: No, no. I think a receiver could sell property under certain circumstances before there is a liability finding, but that is the extraordinary circumstance.

Then in the general course of events, a receiver is supposed to conserve and identify assets for use, if there is an ultimate finding of liability, or for return to the Defendant in the event that there is not a finding of liability. It is to conserve the status quo. And this sale would alter the statute quo in a way that is almost impossible to reverse, not conserve it.

There are cases that find an extraordinary need to sell certain forms of property to raise cash to keep operations going. But that showing hasn't been made here, your Honor.

And your Honor, I think it is important to note that the Receiver's first order of business, the day 2 action here was to kick Mr. Barton out of

his home.

It was listed for sale roughly two weeks earlier, and not after some kind of sober appraisal of the financial condition of these entities. And it's not a matter of last resort; it is a matter of first resort.

In our view, respectfully, the Receiver's focus needs to be on the management of the high value commercial real estate assets that are under the control of the business entities, the business entities.

And for cash needs, for some of those assets, Mr. Barton has facilitated offers for those assets from third parties and will consent to their sale pursuant to a well thought out process. And there is many examples of that in the record before the Court at this point.

And let me just mention just a few.

Right now, there is a -- there is a pending, before the receivership order sale, 54 lots at the Venus complex for $3 million that is designed to net $600,000 in net equity.

At the Frisco complex, there is a proposed sale of $9 million in property that would net $3 million in net equity.

With regard to the big apartment portfolio, these are the HUD-backed properties in Fort Worth and elsewhere, at three locations, offers have been raised for $110 million to sell those.

There is a dispute with the Receiver about how much in net equity that would raise, but -- but, in no case is that number less than 7 figures.  In fact, in the high 7 figures, into the 8 figures.

So focusing on the business operations of the legacy Barton entities themselves, the focusing on the commercial aspects, there are ways to raise cash that we would consent to, frankly, that are less drastic than selling something so personal to him as his house.

THE COURT:  Have you consented to them?

MR. EDNEY:  Your Honor, we have -- we have teed them up for the Receiver.  We have said that we would consent to them, if they went down the process of getting serious about it and lining it up.

And on that, we have received no meaningful response.  We have seen in some of the filings -- these have been in the course of arguments -- that, well, there is a complication here, there is a complication there.  But it has not received serious treatment.

And I think that those commercial avenues need to be explored before we go down such a low value proposition of selling this house and something that is so personal to Mr. Barton. And -- and --

THE COURT: Are those properties under 11 percent interest-only loans?

I mean, I get your point. But I'm trying to figure out, it seems to me that this home is in dire straits of because of how it was financed.

MR. EDNEY: But --

THE COURT: And I don't know if the commercial properties were under the same dire straits.

Can you talk me through that? I mean, you are telling me that they would be more profitable to sell.

But if there needs to be a quick sale, it is probably because of the dire nature of the financing of this. So what's the dire nature of the financing of those commercial properties?

MR. EDNEY: Well, I'm not sure that there is a dire nature of financing for those properties, but they would raise cash for the -- for the Receiver's operations.

When the Receiver came and proposed the sale, the purpose of the sale was to raise cash for the Receiver to keep going and doing its work, presumably to pay its fees, presumably to pay other ongoing expenses.

These commercial avenues provide a mechanism for doing that. I mean, frankly, we don't think the house should be in the receivership at all. You know, we have urged that upon this Court. We think under the -- under the Fifth Circuit's Janvey case, there needs to be some effort to trace assets related to these lender loans that are the subject to the SEC's complaints into the purchase of that house. That hasn't been done.

The only reason it is here is because it has been -- because it was held by a special purpose corporation. It had no other business than holding this house. Other net worth -- high net individuals do this.

And I would direct the Court to the SEC's opposition to our motion to stay this receivership or aspects of it.

And this can be found at Docket No. 83 in this case.

Judge, the whole first two pages of that

submission from the Securities & Exchange Commission focuses on the decision that the SEC made not to put Mr. Barton personally in the receivership. And that was an option the SEC believed that it could have, generally speaking, in cases of this nature to choose to put the Defendant himself, in his individual capacity in the receivership.

The SEC chose not to do that. Instead, it focused, you know, just on his business and commercial interests.

And your Honor, I would submit to you that this particular piece of property -- I mean, it is unique in this regard, the house and the property inside of it, his personal belongings, is not just business. It doesn't have to do with his real estate operation. It just happened to be held by a special purpose corporation that did nothing else than hold this property.

And unlike for the 26 companies that the SEC originally thought -- sought to put in the receivership, there was an effort, through the Carol Hahn declaration, which we have some issues with, but there was an effort in that declaration to trace the -- the funds from the -- from the lenders that are subject to the SEC action into those

corporations, right?

Under Janvey versus Adams, the 2009 Fifth Circuit case. And they said, look, some of the -- some of the funds that were received from the lenders from China, they went into those corporations and they were plowed into real estate projects, into this real estate -- commercial real estate development business.

But there was no effort to do so here with regard to this particular entity whose only purpose was to hold Mr. Barton's residence.

And frankly, your Honor, if this corporation were not inside the receivership, and we don't think it should be, the mortgage, no matter its terms, and I -- you know, listen, I get the fact that the interest rate is probably not the one that you are getting or I'm getting. You know, it's higher than that.

But that interest rate and the carry and the maintenance of this house would be Mr. Barton's problem. You know, he would either have to live up to it or the house would be foreclosed upon.

It wouldn't be the Receiver's problem, and I think this is an example why this shouldn't be in the receivership to begin with.

And that is for two reasons, your Honor. First, we haven't seen that tracing of assets into this.

Second, it was a uniquely personal exercise. I'm not going to come up to your Honor with regard to other corporate entities, other of the 155 entities that have now been placed in the receivership and say that that it is uniquely personal. It doesn't have to do with the commercial real estate development business that Mr. Barton was undertaking.

But this particular property, your Honor, this is -- this is very, very personal indeed. And it doesn't need to be in the receivership. It should be taken out of it. And should be made Mr. Barton's problem, not the Receiver's problem.

If that's the justification for selling this house, and it's a shifting justification, your Honor. That it is just too hard to deal with this place. It's not -- it is not worth the candle power. Then give it back to Mr. Barton and have him deal with the problem, right?

But instead, where this started was, we are going to pick out this one, this one to keep the lights on, to get our cash flow issues straight for

all the other business entities.

Your Honor, first of all, I don't think that is necessary given the other commercial properties that can be used for that purpose.

But second, your Honor, you know, it is -- it is an extremely personal invasion into Mr. Barton's property rights before he's been adjudicated to have been responsible for any wrongdoing of any kind.

Your Honor, in that regard -- in that regard, turning back to the -- to the -- to the alternatives to this, focusing where the SEC has claimed all wrong, the focus of this receivership should be on the commercial real estate development business.

There are those three other options that I talked about, you know, with regard to servicing the HUD loans, the cost of servicing those loans has been prefunded by independent lending and is on autopilot.

Now, you have not seen the sustained showing from the Receiver that this type of drastic action, taking a man's home before any adjudication of liability is necessary to prevent the loss of crucial assets that are needed to reimburse

potentially the alleged victims of these events. And we will contest that liability. We do not think that he is responsible for it.

But just assuming for sake of argument that he may be in the future, that showing of necessity has not been made.

On top of that, your Honor, we do have a pending appeal on this. And what the Receiver is asking for is liquidation authority that is not currently entailed by the Court's order under appeal.

It is an expansion of the Court's order. And under Fifth Circuit precedents, we don't think the Court has jurisdiction to take this extra step to expand the authority of the Receiver to sell this house.

Your Honor, on the personal property, I want to correct the record a little bit on this personal property issue.

We have had to drag out of the Receiver what he plans to do with this personal property. We want that personal property back. We have been willing to come by, on an hour's notice, with movers to take it out of the house. This is -- this is not receivership entity property. It is property that

happened to be in a man's house. And -- and you know, with regard to this exercise, without access to our business records, without access to the materials in his home, without access to the materials at his office, to go back and prove the financial provenance of every couch and chair, every dish and glass, every piece of clothing in that house is unreasonable.

Where else does one keep one's personal property than in the house in which he lives?

I mean, this is man is 60 years old. He's accumulated some stuff. Apparently, not a lot of it. It is proposed to be sold for $20,000. So -- so not too much.

But he's accumulated some stuff over his life and it is very harmful for that to just be taken away.

And the apparent basis for that, your Honor, is the Receiver's assertion that, well, listen, this -- this house that was owned by a corporation, we haven't traced any lender assets in it, but it was owned by a corporation, so the things in it belong to us.

I don't think there is any basis for that proposition in the Court's order. I don't think

there is any basis for that proposition in law. And whatever your Honor does with the house, I believe the Court should order the Receiver to make that personal property available to us for pickup and return to Mr. Barton's possession.

This $20,000 issue is not worth it, and is more in the manner of a personal attack than in the administration of receivership property.

THE COURT: All right.

Talk to me about their proposed alternative to where they would store it but at Barton's expense on the continued storage cost until a later adjudication can be made on tracing.

MR. EDNEY: Well, your Honor, I am personally not familiar with that proposal. But if it -- but if that is -- you know, I think the right thing to do at this point is to return the property to Barton. But absolutely, it should not be sold.

So if that is -- if that is the halfway house, that it is moved out and moved into a storage locker, where it can be kept safe, pending the resolution of the appeal, that that absolutely should be the alternative that the Court takes instead of approving the sale of this property for

$20,000 to a stranger.

THE COURT: Understood.

MR. EDNEY: Okay. Your Honor, the -- you know, the SEC-sought receivers are not unprecedented but this one, in our view, is extraordinary and contrary to precedent.

SEC-appointed receivers are for Ponzi schemes and emergencies of eminent asset flight. They are for the Stanfords and the Madoffs of the world.

And Mr. Barton is not alleged to have been running a Ponzi scheme. Is not, your Honor. I mean, there is -- there is a flake of that allegation in the SEC's papers, but it is not sustained, and there -- there is barely a sentence behind it.

And he's not dealing in portable assets, at risk of imminent flight to Switzerland, or some other far stretch of the earth.

He has run a prominent real estate development business in Dallas/Fort Worth for the last 30 years. And because of that, the assets of that business and their associated entities, they are stationary, they are stationary commercial real estate projects that aren't going anywhere and that

can have an eye kept on them.

Moreover, the value of those assets, according to the SEC's initial filing, exceeds $70 million, well more than the $26 million that the SEC is allegedly at issue with regard to these lenders.

The value of those assets, your Honor, however, depend entirely on managing them competently to their development maturity. And the way to destroy that value is to hand them over to a receiver that does not intend to manage them, does not intend to keep going as David Wallace would have, the SEC's requested Receiver, but instead -- but instead to liquidate them now in premature sales.

Now, this is incredibly harmful to Mr. Barton, but it's also particularly harmful to the unsecured lenders, the Chinese lenders, who are the subject of the SEC's claims.

In this case, the situation explains why the Fifth Circuit, in its 2012 Netsphere versus Baron decision, set down rules for when a prejudgment receiver could be ordered. Allegations of fraud are not enough. That is what the Fifth Circuit said.

Instead, the SEC must show that the receivership is necessary to prevent the flight of assets subject to the SEC's claims.

And again, there has been no evidence of a flight risk. And it is inconsistent with the nature of the assets that the SEC has long said they are subject here.

I mean, these are assets planted in the ground, recorded on public records and very difficult to sell without making, you know, a lot of -- a lot of ruckus with everyone else.

THE COURT: You can sell a company more quickly, though, right?

I mean, it was titled in the name of a sole purpose company. I'm sure it takes time to sell real property, but you sell a company that holds real property and that can be done in 24 hours or less.

MR. EDNEY: You can certainly try to do that, right. You can try to sell the company.

THE COURT: I have seen it done.

MR. EDNEY: Oh, I understand. I understand, your Honor.

But -- you know, again, when we -- look, what the Netsphere case says, right? Is it needs to

be necessary to prevent asset flight. So you can't just say, I think it is going to happen. There needs to be proof that is happening.

We didn't see that in the SEC's submission. And this is not a case that the SEC just dipped its toe into yesterday. They have been investigating Mr. Barton for two years.

And we will have many things to say about the SEC's substantive allegations when the time comes.

But there is no evidence in the record that this was some kind of emergency where -- where the assets were about to fly away. There is no showing of that in the record.

On top of that, your Honor, what Netsphere says -- and I think this is important, not just for the existence of the receivership, but how the receivership is administered, is there a less drastic, a less burdensome on the Defendant alternative to achieve the goals of conserving assets and making sure that they are around in the event of an eventual finding of liability.

And this is -- this is -- this is absolutely applicable to the SEC cases. And you need to look no further than -- than a decision

authored by the judge, who is peering over us today, Judge Fitzwater, the SEC versus Faulkner decision in 2018, where he applied these standards and made sure that they were satisfied.

With regard to that less burdensome alternative is the proposal that we put before your Honor in opposing the imposition of this receivership. And that is, a monitorship, under the SEC's selection of David Wallace, a man very experienced in running a real estate business, that would have achieved this end, it would have prohibited any sales of the corporations or the real estate that you are talking about, but it would have permitted the management of those projects so they could continue to create value.

And Mr. Barton certainly has an incentive to make sure that they're as valuable as possible, not only to pay back the unsecured lenders that are the subject of the SEC's case, but to make sure that they create as much value as possible to be left over for other investors in the project.

That -- that alternative navigates through the -- through the problems that are presented here. We don't have -- we don't have evidence of imminent asset flight.

We do have evidence that if we -- if we bring in somebody to run this business that cannot move these projects to development maturity value is going to be destroyed.

The solution is to put orders in place that prevents their sale, put a monitor in place that is sophisticated in terms of making sure that the projects move forward, that transactions that need to be done to move those projects forward are done, but those that present any risk of asset flight or loss to the assets are not done, and to continue to report to this Court and to the SEC about it.

That -- that alternative was presented in our papers, but I think recent events show how important that alternative is, how important it is for the lenders that are the subject of the SEC's complaint, how important it is under the Baron -- Netsphere versus Baron standards.

Because these projects can't just be sold right now. They are going to be left with a massive loss if they are; they're not ready yet.

That's what real estate projects are. They have a cycle. And for many of these that you are going to hear about over the next couple weeks

where they -- where the Receiver comes to you for permission to sell these properties, they are not ready to be sold. If they are sold now, they are going to be sold for pennies on the dollar.

But instead, we need a system where these things are managed to their maturity. And that's -- and that's very possible here. And look, I understand the real estate development business is complicated. I wouldn't be very good at it. But we need somebody in place who is good at it. And we need -- and we need a system where they can be managed and we are not just fire-selling for pennies on the dollar because that is not good for any of the entities that are involved here.

Also, your Honor, we have to be mindful of the situation we find ourselves in.

This is a situation where the Government chose to launch a parallel criminal prosecution on the same day as this SEC case. And this SEC case was always meant to achieve this receivership and be stayed and turn the criminal case into the main event.

In light of that, this is also not an emergency. The SEC has been investigating this for two years.

In light of that, we need to be mindful of whether the receivership and the steps the Receiver is taking are truly necessary or whether they involve an effort to increase the pressure on a criminal defendant by taking his property without any proof of wrongdoing -- before any proof of wrongdoing is made and by hampering his ability to defend himself, to forfeit is right, to put the United States to its burden of proof in the criminal case.

And with so many questions surrounding the propriety of this receivership, we believe that your Honor should not approve the irreversible permanent sale of Mr. Barton's only home.

And if your Honor is inclined to grant the Receiver's motion, we ask that your Honor stay it with immediate affect pending appeal to the Fifth Circuit.

Thank you, your Honor.

THE COURT: Thank you. I appreciate that, Mr. Edney.

Okay. Let me ask, then, SEC, does the SEC have anything to say at this point? I should probably give final word to Receiver's counsel.

You can say anything you want to; I just

didn't know if you want to talk today.

MR. BERNSTEIN: Your Honor, I don't think we have anything to add on the issue of the sale of the home. I think it's in our view --

THE COURT: I'm sorry. Do you mind hitting that mic just for us to hear what you do want to say.

MR. BERNSTEIN: The Receiver has put forth a compelling case for why the home needs to be sold. The Receiver has put forth competent evidence that they will be achieving fair value, and nothing that we saw in the papers or that was argued today led us to believe that there would be any reason to second guess the Receiver's judgment in this situation.

And that is our position on the sale of the home.

We obviously reserve our rights to make arguments and have been making arguments in the papers about all the different issues that Mr. Barton's counsel attempted to raise here at argument today about the receivership itself and the scope of the receivership. But I'm also happy to answer any questions the Court may have on those issues as well.

THE COURT: I really only have one

question for you today.

And that is, I know there were allegations made that because there is a prosecution going on, this may -- them acting on the home first may seem to be leverage on the prosecution.

I'm going to try to tell you a disclaimer and then ask you a question.

The disclaimer is, in cases like this, I usually don't pick the SEC's recommended receiver. And it's not because I think you are bad people. I think you are lovely people and your proposer picks would be lovely.

But I like separation when it comes to the receiver in cases where there is also a criminal prosecution, so that we can't have the type of collusion that he's suggesting might be occurring in this case.

So my question is this: Has the SEC been suggesting to the Receiver that they go after the home first to apply more pressure on Barton as a result of the criminal proceeding?

MR. BERNSTEIN: Absolutely not, your Honor.

THE COURT: Okay.

Have they suggested that to you -- that if

they go after the home first, that might help your case on the criminal side?

MR. BERNSTEIN: They have not.

THE COURT: Okay. Got it. That is my only question for you.

MR. BERNSTEIN: Thank you, your Honor.

THE COURT: You bet.

Okay. Final word. And I would like to hear your thoughts. I know their suggestion of David Wallace as the Court-appointed monitor will conserve resources for the receivership estate.

I know, in my mind, that is an argument more largely directed to future discussions rather than today's discussions.

We are not talking about a real estate project that is 80 percent developed with regard to this home.

But that is a key question in my mind.

And then the other question I would have is, talk to me about offers on other properties, like the Frisco property, how quickly you think they could bring cash in to the receivership that would keep the lights on at the other properties.

MS. KOONCE: So you do want me to address the monitorship? I want to be clear.

THE COURT: I would like to hear but not in full depth because I think it is largely a question for another day, if that makes sense.

MS. KOONCE: Yes.

THE COURT: But when the other day comes, you will be a hundred percent down the track you want to. And I know y'all are thinking of which track to take at this point.

So my question is largely one of this 30,000-foot discussion on the monitorship.

MS. KOONCE: Let me step back from that just for a second because I would like to address the contention that receiverships are only for Ponzi schemes and the suggestion here is that a receivership or a monitorship would simply hold assets until the end of the day following a judgment.

Your Honor, that's a post-judgment remedy, right? If you're not going to sell anything, we can't do anything, that is a post-judgment remedy.

If you want a receivership or a monitorship, you have to have assets to manage what you have. Whether or not those assets are necessary to continue paying for appraisals on a property or development to see it to fruition, you have to have

assets. And if that occurs in the context of a monitorship, the Receiver is still going to have -- needs cash. It is going to have to raise money somehow.

There is no cash here. So whether you had a monitorship or a receivership is irrelevant to that particular issue.

I have been involved in many monitorships. I've been a monitor for the FTC in cases. It is far more expensive than a receivership, to be perfectly honest. And if the goal here is to preserve assets for the victims of the fraud that is alleged by the SEC, then the goal here is to be expedient with the money that we have.

A monitorship requires extra layers of supervision and it is very difficult to supervise, for the Court to supervise, for the monitor to supervise.

It is very difficult for banks and third parties to comply with, because you have to look at every single thing that comes through as opposed to appointing one person who is the receiver, who is the Court's agent, who is complying with the Court's order. It is much more expedient.

So my suggestion with respect to a

monitorship is that you would be undermining the goal of the remedy that is here. Even if you wanted to have a monitorship, however, as I said, you have to have assets. You have to have cash in order to protect the value of what is at stake.

My understanding with many of these developments is that, for instance, the properties that should be sold quickly, but at the same time they are going to take years to develop -- that is what we just heard, right? The Receiver should be accomplishing these sales very quickly but we're not going to see the value until many, many years down the road. That is a contradiction, your Honor.

If we have to develop these properties by putting in roads or obtaining entitlements from the government, somebody has to supervise that process and we have to pay vendors and other people to accomplish that.

That has to happen in a monitorship or a receivership, either way. So the problem here is, the way these businesses were structured, at least from our perspective is, they are all highly leveraged. There is almost no cash.

Mr. Barton, himself, was struggling to pay for the development of these. We know that is true,

because when we stepped in, we stayed four foreclosures, four of them.

So if the issue here is preserving assets and you want to have a monitorship, are you going to still stay foreclosures so that we can preserve these other assets?

We have -- the problem here, your Honor, is a failure to be in touch with reality. These properties -- the property at issue here was on the market. There was a listing agreement signed that we found in the office when we came in.

So while it may be Mr. Barton's personal residence, and we are not unsympathetic to that issue, he was preparing to sell it when the receivership -- when the receiver order was entered.

I don't know what was behind that. I also am frankly shocked that Mr. Barton would come to the Court and make arguments that the SEC or the Receiver, for instance, has not been able to trace assets into this property.

While at the same time, he has failed and in fact refused to comply with the Court's order to provide bank records and accountings and information and indeed an inventory of the assets that he removed from that property. Items that could have

been sold that would have been less dear and personal to Mr. Barton.

Additionally, we know, just from the information that we saw in the Turtle Creek office, that Mr. Barton has treated these entities as his personal wallet, if you will.

We have assets that were listed on an accounting statement for JMJ Holdings, which reflected $12 million in art. $12 million in 2019. And yet Mr. Barton has given us an inventory of art worth, I think, $80,000 and said it was all his, purchased with his own money.

Where did that $12 million in art go, your Honor? We don't know. Because Defendant Barton will not comply with the Court's order.

For him to come to the Court today and complain that the Receiver or the SEC, for that matter, has been unable to trace assets into -- trace the investor funds into these assets is very disingenuous.

With respect to the personal belongings -- I don't know if you want to get into any of that. I can address those issues, but I know you wanted me to speak to the monitorship.

THE COURT: Yes. I think you already

have.

MS. KOONCE: Okay.

And what was the other issue that you wanted me to address specifically?

THE COURT: If sale of other properties, like the Frisco property, could be accomplished in time to generate cash for the receivership.

MS. KOONCE: Yes.

And thank you. I'm sorry I had to ask you to repeat the question.

Absolutely not. These are, as Mr. Barton has alluded, these are complex properties. Every single one of them is subject to extensive liens or competing claims in equity. Some of them, those competing claims, potentially extinguish any value held by the receivership estate.

But even if you assume that is not the case, if you just look at one property that is not subject to a competing claim of ownership, as opposed to a lien, it will take months. And we do have, I think, letters of intent on several of them. We have one that is potentially subject to a contract; Mr. Thomas could speak to that more clearly.

But even those contracts contemplate

months and months and months to get to a potential sale.

And as Mr. Barton also has stated, while he might agree to the sale of those properties, he's alluded that the Receiver has not given full attention or full effort to the sales that he would prefer that we -- that we focus on, and that is because what we have said in emails that are part of the Court's record, I think they were submitted with the Receiver's response to the motion to stay, the properties at issue there are subject to huge liens.

So while we would prefer to sell those properties as well, we would have been happy to proceed immediately to that.

It still would not have satisfied our immediate need for cash to preserve the other assets and, frankly, to sell those additional properties.

We can't sell them without paying for appraisals. We can't sell them without accommodating the requirements of the statute.

So our hands are tied. And Mr. Barton has tied them in the way that he has managed these properties, drained all the cash out of the bank accounts, at least the bank accounts we have been able to find to date. There may be more, we don't

know. He won't tell us.

With respect to Mr. Barton and his counsel's familiarity with our request or offer to store the contents of these properties, with all due respect, Mr. Edney is aware of that offer. It was sent to him in an email, very, very specific. We would be happy to do this. And that email is in the Court's record, in the appendix, in support of the Receiver's response to the motion to stay.

I highlighted that. It is in the docket. We sent, I think it was two weeks ago that we would be happy to do that. We got no response.

So respectfully, your Honor, we are stuck. The Court has appointed Mr. Thomas to oversee these properties, to manage them, and to preserve their value. We cannot preserve the value in the more larger properties, the properties that will take months to years to either bring to fruition or to sell.

We are not receiving cooperation from the Defendant. We are not receiving the materials that the Court ordered him to provide.

And yet, we are being told to sit and wait while these properties potentially dissipate in value and we are not able to accomplish the mandate

of the order.

THE COURT: Thank you.

Can I ask you one final, quick question?

Can you flush out your tracing argument a little more? Because I know he made a lot of that, in not following Janvey and having an exact tracing of the funds used to pay for this home, tracing back to the original alleged unlawful conduct.

MS. KOONCE: Yes, your Honor. So let me start also with the Janvey versus Adams. There's a million Janvey cases.

Janvey versus Adams, first of all, was not a tracing case. It was a -- an issue as to whether or not certain investors were properly named as relief defendants. And a relief defendant is completely different context than what is going on here.

But with respect to tracing, I think this is Mr. Barton's argument that the Court reconsider entry of the receivership order from its inception.

The Receiver, as you know, we didn't have anything to do with the SEC filing its case, didn't have anything to do with the Court's decision as to whether to appoint a receiver but the -- in seeking a receiver and filing that motion to appoint a

receiver, the SEC engaged in some tracing and what the evidence in support of that said was, to the best of their ability at that time to trace, they had discovered commingling, I think the Hahn declaration said from the very beginning of the investments.

And what the Receiver has discovered, obviously, we were able to go in and obtain additional information that the SEC did not have at the time it filed that motion, we have discovered additional commingling.

We filed, as you know, a massive appendix in support of the Receiver's motion to demonstrate that the additional entities that were operated by Mr. Barton were properly within the scope of the receivership order as entities controlled by him.

But in addition to that, we have seen extensive commingling, that one entity takes out a loan to purchase property for another entity and that same entity pays off another loan.

We have also seen evidence that we believe suggests -- and I'm not going to testify that it does or provide testimony -- but it suggests that there were some efforts here to put intercompany loans in place after this happened in order to

justify the banking transactions that we've seen.

Now, we have sent the receivership order out to dozens of banks, and we have received some banking records back.

We do not have access yet to all the QuickBooks accounts. Our understanding is there are 26, I think -- QuickBooks accounts. We tried to get access to that. It was denied. We were not given those credentials.

We still do not have credentials to the websites. We don't have credentials to the cloud data that would allow us to find information about what was happening with these assets. It's not been provided. Even though the receivership order compels it, we specifically asked for it over and over again.

And we have conferred about a motion to show cause and -- because of the violations of the receivership order.

If we had that information, it might have allowed us to provide more detail in terms of the potential commingling of investor assets that we have seen.

But what we have seen to date says, we haven't seen any evidence that any money was not

commingled; it was all commingled. We haven't seen any segregation of assets between specific entities. It just -- there is no evidence that that actually happened.

So it is not possible for us at this -- I think we are 60 days in, to tell the Court, absolutely, we saw money coming, you know, from one investor into this entity to purchase the house. We have seen no other explanation, however, for how these businesses were operated.

So we -- while I believe down the road is it possible that we may be able to provide that information? Very likely. I think it is probably going to be the SEC's burden.

But at this point, it is not possible for Mr. Thomas to perform the Court's mandate to protect these additional assets without cash. We just can't do it.

THE COURT: Understood. Thank you.

Okay. So what I need to do is make some findings and rulings now that I have heard the parties out.

What I'm going to do is talk first about the sale of the home, second about personal property, and then third about the stay.

On the sale of the home, here are my findings:

First, just mechanically from a numbers standpoint, I think the sale price being above the appraised value, obviously meets the two-thirds test in the law. So I think it meets the legal test for sufficiency, and I find that there are no competing offers that meet the threshold of being 10 percent higher than that offer.

Is it in the best interest of the receivership? I think it is, notwithstanding the personal connection of the home.

On the personal connection of the home, I do note the listing agreement that they found when -- when they took possession of the property.

I have had another situation like this where someone argued it was intrinsically personal to them. I went with them on that and then they put the home up for rent.

So I have been burned by that before and the listing agreement tells me that perhaps the personal nature of the home isn't as strong as it otherwise would be.

But here is my analysis on the rest of it.

First, it is an interest-only loan, right?

9 percent is the floor and then foreclosure rates go up from there.

Interest rates are still increasing. And then we had the Federal Reserve in Dallas say that residential properties could diminish in value by 20 percent, given the economic forecast that they are seeing. Could; doesn't mean it will. And so that is the backdrop I'm looking at this in. And I will take judicial notice of that because it is the kind of the thing I can take judicial notice of.

Property taxes are due January 31st. There is cash needed to keep the receivership going to maintain the other properties that are in the receivership estate.

The sale of other properties are not as efficient from a timeline standpoint as the sale of this property because they are not properties in development or have other encumbrances on them, like the other commercial properties would.

On commingling and tracing, it seems like commingling was the rule of the day for how Barton ran his different entities. And so I think I have seen enough to know that it was funds that were at issue in the SEC allegations that were used for the home.

And then seventh is, while this property isn't necessarily mobile and subject to offshore dissipation, I do think the asset value of the property is dissipating, right? When we look at the potential 20 percent drop in the value of all homes in the coming year, when we look at the interest-only nature of the loan, the property taxes that are due, this property is unlike the other properties, in that it is a quickly depreciating asset, given the current nature of its financing and property taxes that are coming due.

So I will say that the sale of the home is in the best interest of the receivership, and I will approve that sale for -- for completion on the 28th of the month.

I will get to the stay just in a moment.

Personal property.

I view personal property a little bit differently than I view the home itself.

I don't see the personal property as rapidly dissipating in value. And so I don't think I can sign off on the sale of it, because it is not under interest-only financing and property taxes due on it.

I will say that I'm fine moving it into

storage, right? I don't think you need to return it to Barton because I do still think the receivership has a valid claim to it and then we need to adjudicate that at the right point in this case.

I'm not going to order the storage be at Barton's expense yet, but I don't know the cost of the storage and y'all don't either yet. And so that is an issue that we need to keep thinking through.

If we are storing property that's worth $20,000 total and it is cost him $3,000 a month, we need to make a quick determination on that. And then I need Barton to be ready to decide if he wants to shoulder the cost of that. If that property is uniquely personal enough to him to where he would rather pay the storage costs until we can reach a determination, then that needs to be a decision he can make.

Which takes us to a stay. I know there's a request for me to stay my ruling if I grant the motion. I'm granting it, certainly in part, as it relates to the home, not as it relates to the personal property.

I'm going to deny that request. The reason being, I think time is of the essence on this. I think it is -- the closing date is on the

28th. And I think if we push off beyond that, I think we can see an increase in interest rates that's drives an increase in mortgage rates, that drives an increase in the student loan -- student loan -- this mortgage interest-only rate.

So students loans are all the rage of court challenges these days.

So I don't think it's -- I don't think I can grant the motion and also grant the stay. I think it's illogical for me to do that. I can't split the baby like that. I'll ruin the whole thing if I do that.

But I recognize the Fifth Circuit might disagree with me and stay this and shut it down. In which case, we will all abide by whatever they say. So I don't plan on going with your stay. I will deny that request.

Okay. That is all I'm prepared to rule on at this hearing.

Other questions or issues that --

MS. KOONCE: Yes. Your Honor, we have the issue of the lis pendens. That while Mr. Barton contends it is not -- we can still close the sale with lis pendens, our title company begs to differ. So we either need the Court to declare that void or

compel Mr. Barton to sign a release of lien. The release lis pendens. He will have to sign it in front of Notary, but I have a copy here. I can provide it to Mr. Barton's counsel, but we would request that you compel him to sign this by the close of the day and provide it to the Receiver.

THE COURT: Understood.

Okay. We have got the choose-your-own-adventure now.

What I will say is, I do think the lis pendens is void. The question is, will Barton sign it or do I need to declare it void?

Do you need to confer with your client on that basis? We can take a five-minute recess and you talk.

MR. EDNEY: I don't need to confer, your Honor. If you are going to declare it void, we would disagree with that decision, and -- but, you know, obviously, your Honor is set on that path.

So we think the lis pendens is perfectly valid. We are -- we have a pending proceeding before your Honor contesting the Receiver's authority to sell it. This issue is under appeal. It hasn't been resolved by the Fifth Circuit yet.

It won't block the sale. It is not a

lien. It is constructive notice to the buyer that in the event that this proceeding goes in the other direction, either here or in front of the Court of Appeals, that we are going to be coming back for this property.

So it is the buyer's choice. It is not a lien. It is not a legal impediment to sale and it was properly filed.

THE COURT: Understood.

Have you've gotten me a proposed order or can you get me one?

MS. KOONCE: I believe we submitted a proposed order on Friday. I'm happy to submit it again. We have to have something to give to the title company, so that they show it is clear.

THE COURT: Understood.

Okay. And then the last thing I will ask is, can the Receiver order a copy of this, just so I have my findings on the record.

It doesn't have to be expedited, a copy of the transcript of this proceeding.

And then we will find your proposed order from Friday. If we have any trouble locating it, we'll email all counsel and ask for you to reply all to that email.

All right. Anything further for this proceeding?

MR. EDNEY: Yes, your Honor.

Earlier in these proceedings we had a discussion.

THE COURT: Y'all can stay seated, just so I can hear you better.

MR. EDNEY: Okay. Sure. You bet.

Your Honor, earlier in these proceedings, we had a discussion about alternatives to this receivership and the necessity to continue to manage these real estate projects to create value as opposed to liquidating them and the potential for doing that through a monitorship.

And just for a small digression, your Honor, the value in a monitorship here that leaves management in control of these projects, experienced management, driving the projects forward but while preventing sales and other dissipation is that these projects can come to their full fruition for investors and for the lenders that are subject of the SEC complaint.

As your Honor pointed out earlier in this hearing, there will come a point where the Receiver is 100 percent down the road of selling things

because it cannot manage them.

And I would like a hearing before your Honor, sooner rather than later, in the early part of next year, that discusses that fork in the road. Because, you know, I understand your Honor put in the receivership order on the 19th of October. We did not have a hearing then.

You know, this is a pretty focused issue now about -- about whether -- whether -- what the time horizon is on these projects and what is going to be required to maximize their value versus what is appearing to become a liquidation strategy at the receiver level.

And I would just ask your Honor to consider putting a hearing on the schedule to consider that issue.

THE COURT: Understood.

I have hearings on motions, and what I have heard from you is not enough to convince me yet. I would say file a motion with an accompanying request for a hearing, right?

The person in the best position right now to make that argument is Barton. And so make the argument, tell me how much cash it would take. They think it would take a lot more cash than you are

suggesting it would, right? But I need something more concrete and more convincing from you.

But I don't have hearings to have chit-chats. I have hearings on motions, but very specific and concrete, which is why I don't really like motions coming up in responses to replies, right? Don't embed a motion in a response to a reply. File a motion, right? And if I need to get an expedited response, I can get that.

But file your motion, if you want a hearing on it. And we can talk more fully through it. But in your motion, lay out how much cash you think it would take to accomplish the objectives of a monitorship and then we will see what their position is.

MR. EDNEY: Yes, your Honor. We are happy to do that.

We do have a fully briefed motion for stay of the receivership pending appeal that deals with broader issues but -- including this. But if it would help the Court, we would be more than happy to put a targeted motion on file to address this particular issue.

THE COURT: Understood. I will look forward to it.

Okay. Not having anything further, I will go into recess, and I will see y'all at the point we have a hearing on that motion.

MR. EDNEY: Thank you, your Honor.

THE COURT: Thank you.

THE COURT SECURITY OFFICER: All rise.

(Proceedings concluded at 11:03 a.m.)

C E R T I F I C A T E

I, Kelli Ann Willis, RPR, CRR, CSR certify that the foregoing is a transcript from the record of the proceedings in the foregoing entitled matter.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

This 30th day of December 2022.

s/ Kelli Ann Willis
Official Court Reporter
The Northern District of Texas
Dallas Division

**$**

**$11,000** 9:7
**$110** 17:4
**$12** 42:9,13
**$20,000** 25:13 26:6 27:1 53:10
**$26** 28:4
**$3** 16:21,25
**$3,000** 53:10
**$600,000** 16:22
**$70** 28:4
**$80,000** 42:11
**$9** 16:24
**$9,000** 9:10

**-**

**-o-** 4:2

**1**

**10** 50:8
**100** 57:25
**11** 18:7
**11:03** 60:7
**12.007** 12:19
**12.008** 12:18
**155** 22:7
**18** 7:20
**19th** 58:6
**1st** 12:13

**2**

**2** 15:25
**20** 51:6 52:5
**2009** 21:2
**2012** 28:21
**2018** 31:3
**2019** 42:9
**20th** 14:8
**24** 29:17
**26** 20:19 48:7
**28th** 52:14 54:1

**3**

**30** 27:22
**30,000-foot** 38:10
**31st** 8:4,8,13 51:11
**3:22-cv-2118** 4:7

**5**

**54** 16:20

**6**

**60** 25:11 49:6

**7**

**7** 17:7,8

**8**

**8** 17:8
**80** 37:16
**83** 19:23

**9**

**9** 51:1
**9.9** 7:18

**A**

**a.m.** 60:7
**abide** 54:15
**ability** 34:7 47:3
**absolutely** 8:17 12:2, 17,20 13:9,15 26:18,23 30:24 36:22 43:11 49:7
**access** 8:1 25:2,3,4 48:5,8
**accommodating** 44:20
**accompanying** 58:20
**accomplish** 13:1 40:18 45:25 59:13
**accomplished** 43:6
**accomplishing** 40:11
**accountants** 7:1
**accounting** 42:8
**accountings** 41:23
**accounts** 44:24 48:6,7
**accruing** 7:20,25 9:14
**accumulated** 25:12,15
**achieve** 30:20 33:20
**achieved** 31:11
**achieving** 35:11
**acting** 36:4
**action** 14:20,23 15:25 20:25 23:23
**Adams** 21:2 46:10,12
**add** 35:3
**addition** 10:5 11:11 47:17
**additional** 13:22 44:17 47:9,11,14 49:17
**Additionally** 9:6 42:3
**address** 37:24 38:12 42:23 43:4 59:22
**adjudicate** 53:4
**adjudicated** 23:8
**adjudication** 23:23 26:13
**administered** 30:18
**administration** 26:8
**affect** 34:17
**agent** 39:23
**agree** 44:4
**agreement** 41:10 50:14,21
**allegation** 27:14
**allegations** 14:14 28:23 30:9 36:2 51:24
**alleged** 14:11 24:1 27:11 39:12 46:8
**allegedly** 28:5
**allowed** 48:21
**alluded** 43:12 44:5
**alter** 15:17
**alternative** 9:3 26:11, 24 30:20 31:6,22 32:14, 16
**alternatives** 23:12 57:10
**analysis** 50:24
**Andrews** 4:17
**apartment** 17:1
**apparent** 25:18
**Apparently** 25:12
**appeal** 24:8,11 26:23 34:17 55:23 59:19
**Appeals** 56:4
**appearances** 4:8
**appearing** 58:12
**appendix** 45:8 47:12
**applicable** 30:24
**applied** 31:3
**apply** 36:20
**appoint** 6:8 46:24,25
**appointed** 45:14
**appointing** 39:22
**appraisal** 16:3
**appraisals** 38:24 44:19
**appraised** 6:15 50:5
**appraisers** 6:8
**approach** 5:14

**approval** 10:10
**approve** 6:7 10:17 34:13 52:14
**approving** 26:25
**argued** 35:12 50:17
**argument** 9:25 24:4 35:20 37:12 46:4,19 58:23,24
**arguments** 17:23 35:18 41:18
**art** 9:20,21 42:9,10,13
**aspects** 17:11 19:22
**assertion** 25:19
**assessment** 8:16
**asset** 27:8 30:1 31:25 32:10 52:3,10
**assets** 10:12 11:19 12:5 15:12 16:9,13,14 19:12 22:2 23:25 25:21 27:17,22 28:2,7 29:3,6, 8 30:13,21 32:11 38:16, 22,23 39:1,11 40:4 41:3,6,20,24 42:7,18,19 44:16 48:13,22 49:2,17
**assume** 43:17
**assuming** 24:4
**attack** 26:7
**attempted** 14:14 35:20
**attention** 44:6
**authored** 31:1
**authority** 12:8,16,21 14:18 24:9,15 55:23
**authorize** 14:6
**autopilot** 23:20
**avenues** 18:1 19:6
**aware** 6:1,12,19 10:9 11:5 45:5

**B**

**baby** 54:11
**back** 22:21 23:11 24:22 25:5 31:18 38:11 46:7 48:4 56:4
**backdrop** 51:8
**bad** 36:10
**bank** 11:22 41:23 44:23,24
**banking** 48:1,4
**bankruptcy** 12:20,25
**banks** 39:19 48:3
**barely** 27:15
**Baron** 28:22 32:18,19
**Barton** 4:7,14,17 8:20 9:11 11:4,13,15 12:6 14:2,7 15:25 16:13 17:10 18:4 20:3 22:10, 21 26:18 27:11 28:17 30:7 31:16 36:20 40:24 41:17 42:2,5,10,14 43:11 44:3,21 45:2 47:15 51:21 53:2,12 54:22 55:1,11 58:23
**Barton's** 8:19 11:8 14:6,25 21:11,20 22:16 23:7 26:5,12 34:14 35:20 41:12 46:19 53:6 55:4
**basis** 25:18,24 26:1 55:14
**begin** 21:25
**beginning** 47:5
**begs** 54:24
**behalf** 4:10,25
**believed** 20:4
**belong** 25:23
**belongings** 9:21 20:14 42:21
**Bernstein** 4:9,10 35:2, 8 36:22 37:3,6
**bet** 37:7 57:8
**big** 17:1
**bit** 9:8 24:18 52:18
**block** 55:25
**briefed** 59:18
**bring** 10:12 32:2 37:22 45:18
**broader** 59:20
**brought** 13:8
**burden** 34:9 49:14
**burdensome** 30:19 31:5
**burned** 50:20
**business** 15:24 16:10 17:9 19:17 20:9,15 21:8 22:10 23:1,15 25:3 27:21,23 31:10 32:2 33:8
**businesses** 40:21 49:10
**buyer** 56:1
**buyer's** 56:6

**C**

**candle** 22:20
**capacity** 20:7
**card** 12:4
**Carol** 20:21
**carry** 21:19
**case** 4:6 12:22 14:10 17:7 19:11,24 21:3 28:20 29:25 30:5 31:19 33:19,21 34:10 35:9 36:17 37:2 43:18 46:13, 22 53:4 54:15
**cases** 12:20 15:19 20:5 30:24 36:8,14 39:9 46:11
**cash** 6:20,21 7:7 8:23 10:7,22 15:20 16:12 17:12 18:24 19:2 22:25 37:22 39:3,5 40:4,23 43:7 44:16,23 49:17 51:12 58:24,25 59:12
**certifications** 7:1,3
**chair** 25:6
**challenges** 54:7
**challenging** 14:16
**charges** 15:3
**Charlene** 4:25
**China** 21:5
**Chinese** 28:18
**chit-chats** 59:4
**choice** 56:6
**choose** 20:6
**choose-your-own-adventure** 55:9
**chose** 20:8 33:18
**Circuit** 21:3 24:13 28:21,25 34:18 54:13 55:24
**Circuit's** 19:10
**circumstance** 15:10
**circumstances** 15:8
**cited** 12:20
**claim** 43:19 53:3
**claimed** 23:13
**claims** 7:19 14:13 28:19 29:3 43:14,15
**clear** 37:25 56:15
**client** 55:13
**close** 54:23 55:6
**closing** 53:25
**clothing** 25:7
**cloud** 48:11
**Code** 12:18
**collusion** 36:16
**comfortable** 5:24
**commercial** 16:9 17:11 18:1,13,21 19:6 20:10 21:7 22:9 23:3,14 27:24 51:19
**commingled** 49:1
**commingling** 11:23 47:4,11,18 48:22 51:20, 21
**Commission** 20:1
**communication** 9:4

**communications** 9:13 11:6
**companies** 20:19
**company** 29:12,15,16, 20 54:24 56:15
**compel** 13:7 55:1,5
**compelling** 35:9
**compels** 48:15
**competent** 35:10
**competently** 28:9
**competing** 5:6,7 6:5, 21 7:6 13:18 43:14,15, 19 50:7
**complain** 42:17
**complaint** 32:18 57:22
**complaints** 19:13
**completely** 46:16
**completion** 52:14
**complex** 16:21,23 43:12
**complicated** 33:9
**complication** 17:23,24
**comply** 6:13 39:20 41:22 42:15
**complying** 39:23
**concluded** 60:7
**concrete** 59:2,5
**condition** 16:4
**conduct** 46:8
**confer** 55:13,16
**conference** 9:4 10:1, 14,15
**conferred** 12:11 48:17
**confident** 8:5
**confirmation** 11:12 12:25
**connection** 50:12,13
**consent** 16:14 17:12, 18
**consented** 17:15
**conserve** 15:12,16,18 37:11
**conserving** 30:20
**constructive** 56:1
**contemplate** 43:25
**contemplated** 13:12
**contends** 7:10 54:23
**contention** 10:2 38:13
**contents** 10:23 11:3,7, 9,25 45:4
**contest** 24:2
**contesting** 55:22
**context** 39:1 46:16
**continue** 7:21 31:15 32:12 38:24 57:11
**continued** 26:12
**continuing** 6:25 12:8
**contract** 6:9 9:13 43:23
**contracts** 43:25
**contradiction** 40:13
**contrary** 27:6
**control** 13:17 16:10 57:17
**controlled** 47:16
**convince** 58:19
**convincing** 59:2
**cooperation** 45:20
**copy** 55:3 56:18,20
**corporate** 22:6
**corporation** 19:17 20:17 21:13 25:21,22
**corporations** 21:1,6 31:12
**correct** 8:6,9,15 24:18
**Cort** 4:25
**cost** 11:8 23:18 26:12 53:6,10,13
**costs** 53:15
**couch** 14:9 25:6
**counsel** 5:5,18,22 11:6 14:2 34:24 35:20 55:4 56:24
**counsel's** 45:3
**couple** 32:25
**court** 4:3,4,11,18 5:2, 16,25 6:10,12,16,19 8:3,7,10,13,18 10:9,17, 25 12:15,21 13:3,10,20, 24 14:1,5,22 15:4 16:17 17:15 18:6,12 19:9,20 24:14 26:3,9,24 27:2 29:12,21 32:12 34:20 35:5,23,25 36:24 37:4,7 38:1,5 39:17 41:18 42:16,25 43:5 45:14,22 46:2,19 49:6,19 54:7,25 55:7 56:3,9,16 57:6 58:17 59:21,24 60:5,6
**Court's** 11:20 12:8 24:10,12 25:25 39:23 41:22 42:15 44:9 45:8 46:23 49:16
**Court-appointed** 37:10
**create** 31:15,20 57:12
**credentials** 48:9,10,11
**credit** 12:3
**Creek** 42:4
**criminal** 33:18,21 34:5, 9 36:14,21 37:2
**crucial** 23:25
**current** 52:10
**cycle** 32:24

**D**

**Dallas** 51:4
**Dallas/fort** 27:21
**data** 48:12
**date** 44:25 48:24 53:25
**daughter's** 14:9
**David** 28:12 31:9 37:10
**day** 9:19 12:11 15:25 33:19 38:3,5,16 51:21 55:6
**days** 49:6 54:7
**deal** 22:19,22
**dealing** 27:17
**deals** 59:19
**dear** 42:1
**debtor** 12:23
**December** 8:13 12:13
**decide** 53:12
**decision** 20:2 28:22 30:25 31:2 46:23 53:16 55:18
**declaration** 20:22,23 47:5
**declare** 12:16 54:25 55:12,17
**deduction** 8:14
**default** 7:3,20
**defend** 34:8
**defendant** 13:6 15:14 20:6 30:19 34:5 42:14 45:21 46:15
**defendants** 46:15
**delay** 9:12
**demonstrate** 12:5 47:13
**denied** 13:2 48:8
**deny** 14:22 53:23 54:17
**depend** 28:8
**depreciating** 52:9
**depth** 38:2
**designed** 16:21
**destroy** 28:10
**destroyed** 32:4
**detail** 48:21
**determination** 53:11, 16
**develop** 40:9,14
**developed** 37:16

**development** 21:8 22:10 23:14 27:21 28:9 32:3 33:8 38:25 40:25 51:18

**developments** 40:7

**differ** 54:24

**differently** 52:19

**difficult** 29:10 39:16,19

**digression** 57:15

**diminish** 51:5

**dipped** 30:6

**dire** 18:10,13,19,20,23

**direct** 13:5 19:20

**directed** 37:13

**direction** 56:3

**disagree** 54:14 55:18

**disclaimer** 36:6,8

**discovered** 12:11 47:4,7,10

**discusses** 58:4

**discussion** 38:10 57:5, 10

**discussions** 37:13,14

**dish** 25:7

**disingenuous** 42:20

**dispute** 17:5

**disregard** 12:8

**dissipate** 45:24

**dissipating** 52:4,21

**dissipation** 52:3 57:19

**docket** 19:23 45:10

**documents** 14:12

**dollar** 33:4,13

**dozens** 48:3

**drag** 24:20

**drained** 44:23

**drastic** 17:13 23:22 30:19

**drives** 54:3,4

**driving** 57:18

**drop** 52:5

**due** 8:3,8 45:4 51:11 52:8,11,23

**Duval** 12:22

E

**earlier** 16:3 57:4,9,23

**early** 12:15 58:3

**earth** 27:19

**economic** 51:6

**Edney** 4:15,16,19 14:3, 4 15:7 17:16 18:11,22 26:14 27:3 29:19,22 34:21 45:5 55:16 57:3,8 59:16 60:4

**efficient** 51:16

**effort** 19:11 20:21,23 21:9 34:4 44:6

**efforts** 47:24

**email** 11:6 45:6,7 56:24,25

**emails** 44:8

**embed** 59:7

**emergencies** 27:8

**emergency** 30:12 33:24

**eminent** 27:8

**encountered** 7:15

**encumbered** 7:16,17

**encumbrances** 51:18

**end** 31:11 38:16

**engaged** 47:1

**entailed** 24:10

**entered** 41:15

**entities** 11:19 12:1 16:4,10,11 17:10 22:6,7 23:1 27:23 33:14 42:5 47:14,16 49:2 51:22

**entitlements** 40:15

**entity** 10:11 11:17 21:10 24:25 47:18,19, 20 49:8

**entry** 46:20

**equity** 8:2 10:6 16:22, 25 17:6 43:14

**erode** 8:2

**essence** 53:24

**essential** 13:15

**estate** 5:12 6:18 13:14 16:9 20:16 21:6,7,8 22:10 23:14 27:20,25 31:10,13 32:23 33:8 37:11,15 43:16 51:14 57:12

**estate's** 7:5

**et al** 4:7

**event** 15:15 30:22 33:22 56:2

**events** 15:11 24:1 32:15

**eventual** 30:22

**evidence** 29:4 30:11 31:24 32:1 35:10 47:2, 21 48:25 49:3

**exact** 46:6

**examples** 16:16

**exceed** 6:13

**exceeds** 28:3

**excellent** 9:1

**Exchange** 20:1

**exercise** 22:5 25:2

**existence** 14:17 30:17

**expand** 24:15

**expansion** 24:12

**expedient** 39:13,24

**expedited** 56:20 59:9

**expense** 26:12 53:6

**expenses** 9:15 10:6 19:5

**expensive** 7:2 39:10

**experienced** 31:10 57:17

**explains** 28:20

**explanation** 49:9

**explored** 18:2

**extensive** 11:23 43:13 47:18

**extinguish** 43:15

**extra** 24:14 39:15

**extraordinary** 15:10, 19 27:5

**extremely** 23:6

**eye** 28:1

F

**facilitated** 16:13

**fact** 6:14 14:15 17:8 21:15 41:22

**failed** 41:21

**failure** 41:8

**fair** 35:11

**familiar** 26:15

**familiarity** 45:3

**Faulkner** 31:2

**Federal** 51:4

**fees** 19:4

**figure** 18:9

**figures** 17:7,8

**file** 58:20 59:8,10,22

**filed** 5:7 10:10 12:11, 12,14,23 47:10,12 56:8

**filing** 9:3 12:10 28:3 46:22,25

**filings** 6:20 8:20 11:5 17:22

**final** 34:24 37:8 46:3

**financed** 18:10

**financial** 16:4 25:6

**financing** 18:20,21,23 52:10,23

**find** 15:19 33:16 44:25 48:12 50:7 56:22

**finding** 15:2,5,9,13,15 30:22

**findings** 49:21 50:2 56:19

**fine** 5:21,25 52:25

**fire-selling** 33:12

**firm** 4:17

**Fitzwater** 31:2

**five-minute** 55:14

**flake** 27:13

**flight** 27:8,18 29:2,5 30:1 31:25 32:11

**floor** 51:1

**flow** 22:25

**flush** 46:4

**fly** 30:13

**focus** 16:8 23:13 44:7

**focused** 20:9 58:8

**focuses** 20:2

**focusing** 17:9,10 23:12

**forecast** 51:6

**foreclosed** 21:22

**foreclosure** 51:1

**foreclosures** 41:2,5

**forfeit** 7:4 34:8

**fork** 58:4

**forms** 15:20

**Fort** 17:3

**forward** 7:11,13 32:8,9 57:18 59:25

**found** 19:23 41:11 50:14

**frankly** 17:12 19:7 21:12 41:17 44:17

**fraud** 28:24 39:12

**freeze** 7:23

**Friday** 56:13,23

**Frisco** 16:23 37:21 43:6

**front** 55:3 56:3

**fruition** 38:25 45:18 57:20

**FTC** 39:9

**full** 38:2 44:5,6 57:20

**fully** 59:11,18

**funds** 11:9 20:24 21:4 42:19 46:7 51:23

**furnishings** 11:12

**future** 24:5 37:13

G

**gather** 12:4

**general** 15:11

**generally** 8:7 20:5

**generate** 43:7

**give** 22:21 34:24 56:14

**glass** 25:7

**goal** 39:11,13 40:2

**goals** 30:20

**good** 4:15,24 33:9,10, 13

**government** 14:10,12, 13 33:17 40:16

**governs** 6:5

**grant** 34:15 53:19 54:9

**granting** 53:20

**ground** 29:9

**guess** 35:14

H

**Hahn** 20:22 47:4

**halfway** 26:20

**hampering** 34:7

**hand** 6:22 28:10

**hands** 44:21

**happen** 10:2,18 30:2 40:19

**happened** 20:16 25:1 47:25 49:4

**happening** 30:3 48:13

**happy** 13:22 35:22 44:13 45:7,12 56:13 59:16,21

**hard** 22:19

**harm** 7:12 14:21

**harmful** 25:16 28:16,17

**hear** 10:25 14:2 32:25 35:6 37:9 38:1 57:7

**heard** 40:10 49:21 58:19

**hearing** 6:4 54:19 57:24 58:2,7,15,21 59:11 60:3

**hearings** 58:18 59:3,4

**heavily** 7:16

**held** 19:16 20:16 43:16

**hey** 12:3

**high** 16:8 17:8 19:18

**higher** 6:15 8:16 21:18 50:9

**highest** 6:10 9:9

**highlighted** 45:10

**highly** 40:22

**hitting** 35:6

**hold** 11:7 20:18 21:11 38:15

**holding** 19:17

**Holdings** 42:8

**holds** 29:17

**home** 14:6,8,25 16:1 18:9 23:23 25:4 34:14 35:4,9,16 36:4,20 37:1, 17 46:7 49:24 50:1,12, 13,19,22 51:25 52:12, 19 53:21

**homes** 52:5

**honest** 39:11

**Honor** 4:9,15,24 12:17 14:4,19,24 15:22,23 17:16 20:11 21:12 22:1, 5,12,19 23:2,5,10 24:7, 17 25:19 26:2,14 27:3, 12 28:7 29:23 30:15 31:7 33:15 34:13,15,16, 19 35:2 36:23 37:6 38:18 40:13 41:7 42:14 45:13 46:9 54:21 55:17, 19,22 57:3,9,16,23 58:3,5,14 59:16 60:4

**horizon** 58:10

**hour's** 24:23

**hours** 29:17

**house** 8:20 9:22 17:14 18:3 19:8,14,18 20:13 21:20,22 22:18 24:16, 24 25:1,8,10,20 26:2,21 49:8

**HUD** 6:25 7:3 23:18

**HUD-BACKED** 17:2

**Huffman** 4:16

**huge** 44:11

**hundred** 38:6

**Hunton** 4:17

I

**identify** 15:12

**illogical** 54:10

**immediately** 7:13 9:24 44:14

**imminent** 27:18 31:24

**impediment** 56:7

**important** 15:23 30:16 32:16,18

**imposition** 31:7

**impossible** 14:21 15:18

**incentive** 31:16

**inception** 46:20

**inclined** 34:15

**including** 59:20

**inconsistent** 29:5
**incorrect** 12:17
**increase** 34:4 54:2,3,4
**increases** 8:17
**increasing** 51:3
**incredibly** 28:16
**incurring** 7:18
**independent** 23:19
**individual** 20:7
**individuals** 19:18
**information** 6:17 12:5 13:22 41:23 42:4 47:9 48:12,20 49:13
**initial** 28:3
**inside** 20:14 21:13
**instance** 6:22 12:10,22 40:7 41:19
**insurance** 6:22 9:15
**intend** 28:11,12
**intent** 43:21
**intercompany** 47:24
**interest** 5:11 6:18 7:4, 5,18,19,20,25 9:6 13:14 21:16,19 50:10 51:3 52:13 54:2
**interest-only** 18:7 50:25 52:7,23 54:5
**interests** 5:10 20:10
**intrinsically** 50:17
**invasion** 23:6
**inventory** 41:24 42:10
**investigating** 30:7 33:24
**investigation** 11:24
**investments** 47:6
**investor** 42:19 48:22 49:8
**investors** 31:21 46:14 57:21
**involve** 34:4
**involved** 33:14 39:8
**irrelevant** 39:6
**irreparable** 7:12 14:20
**irreversible** 34:13
**issue** 24:19 26:6 28:5 35:3 39:7 41:3,9,14 43:3 44:11 46:13 51:24 53:8 54:22 55:23 58:8, 16 59:23
**issues** 10:8 20:22 22:25 35:19,23 42:23 54:20 59:20
**items** 9:21 41:25

**J**

**January** 8:4,8 51:11
**Janvey** 19:11 21:2 46:6,10,11,12
**JMJ** 42:8
**judge** 5:13 7:12 10:2 12:7,25 13:9 19:25 31:1,2
**judgment** 35:14 38:17
**judicial** 51:9,10
**jurisdiction** 24:14
**justification** 22:17,18
**justify** 48:1

**K**

**Keefe** 4:9
**key** 37:18
**kick** 15:25
**kicked** 14:7
**kind** 16:3 23:9 30:12 51:10
**Koonce** 4:24,25 5:2,13, 23 6:1 8:5,9,12,15,25 11:2 13:24,25 37:24 38:4,11 43:2,8 46:9 54:21 56:12
**Kurth** 4:17

**L**

**largely** 37:13 38:2,9
**larger** 45:17
**late** 8:17
**launch** 33:18
**law** 4:17 26:1 50:6
**laws** 14:11
**lay** 59:12
**layers** 39:15
**learned** 11:24
**leaves** 57:16
**lecturn** 5:15
**led** 35:12
**left** 31:20 32:21
**legacy** 17:10
**legal** 50:6 56:7
**legitimate** 14:25
**lender** 7:19 19:12 25:21
**lenders** 20:24 21:5 28:6,18 31:18 32:17 57:21
**lending** 23:19
**letters** 43:21
**level** 58:13
**leverage** 36:5
**leveraged** 40:23
**liability** 15:3,5,9,14,15 23:24 24:2 30:22
**lien** 13:8 43:20 55:1 56:1,7
**liens** 43:13 44:11
**life** 25:16
**light** 33:23 34:1
**lights** 22:25 37:23
**limited** 6:20 7:7 10:13
**lining** 17:19
**liquidate** 28:14
**liquidating** 57:13
**liquidation** 14:18 24:9 58:12
**lis** 12:10,16,23 13:1 54:22,24 55:2,10,20
**listed** 16:2 42:7
**listen** 21:15 25:20
**listing** 41:10 50:14,21
**litigation** 13:2
**live** 21:21
**lived** 11:15
**lives** 25:10
**loan** 7:3,17 9:7 47:19, 20 50:25 52:7 54:4,5
**loans** 6:25 18:7 19:12 23:18 47:25 54:6
**locating** 56:23
**location** 9:10
**locations** 17:3
**locker** 26:22
**long** 10:3 29:6
**loss** 23:24 32:11,22
**lot** 9:12 25:12 29:10,11 46:5 58:25
**lots** 16:20
**lovely** 36:11,12
**low** 18:2

**M**

**made** 9:2,25 15:22 20:2 22:15 24:6 26:13 31:3 34:7 36:3 46:5
**Madoffs** 27:9
**main** 33:21
**maintain** 8:23 10:6,12, 20 51:13
**maintaining** 13:15
**maintenance** 21:20

**make** 26:3 31:17,19 35:17 41:18 49:20 53:11,17 58:23

**makes** 38:3

**making** 29:10 30:21 32:7 35:18

**man** 25:11 31:9

**man's** 23:23 25:1

**manage** 10:22 28:11 38:22 45:15 57:11 58:1

**managed** 33:6,12 44:22

**management** 16:8 31:14 57:17,18

**managing** 28:8

**mandate** 45:25 49:16

**manner** 13:11 26:7

**market** 41:10

**massive** 32:21 47:12

**materials** 25:4,5 45:21

**matter** 16:5 21:14 42:18

**maturity** 28:9 32:3 33:6

**maximize** 58:11

**meaningful** 17:21

**meant** 33:20

**mechanically** 50:3

**mechanism** 19:7

**meet** 50:8

**meets** 50:5,6

**mention** 16:18

**mic** 35:6

**Michael** 4:16

**microphone** 4:12 5:20

**million** 16:21,24,25 17:4 28:4 42:9,13 46:11

**mind** 35:5 37:12,18

**mindful** 33:15 34:1

**minimum** 6:14

**mobile** 52:2

**moment** 52:16

**money** 39:3,14 42:12 48:25 49:7

**monitor** 32:6 37:10 39:9,17

**monitorship** 31:8 37:25 38:10,15,22 39:2, 6,15 40:1,3,19 41:4 42:24 57:14,16 59:14

**monitorships** 39:8

**month** 52:15 53:10

**monthly** 9:6,9

**months** 43:20 44:1 45:18

**morning** 4:15,24 12:15

**mortgage** 9:15 21:14 54:3,5

**motion** 5:4 6:7,8 7:8,9 10:1,10 11:2 12:12 19:21 34:16 44:10 45:9 46:25 47:10,13 48:17 53:20 54:9 58:20 59:7, 8,10,12,18,22 60:3

**motions** 58:18 59:4,6

**move** 11:9 32:3,8,9

**moved** 26:21

**movers** 24:23

**moving** 9:20 52:25

**multiple** 6:23 11:5

**N**

**named** 46:14

**nature** 18:19,20,23 20:5 29:5 50:22 52:7,10

**navigates** 31:22

**necessarily** 52:2

**necessity** 24:6 57:11

**needed** 23:25 51:12

**negotiations** 6:9

**net** 16:22,24,25 17:6 19:18

**Netsphere** 28:21 29:25 30:15 32:19

**Notary** 55:3

**note** 15:24 50:14

**notice** 5:7 6:2,3 9:20 24:23 51:9,10 56:1

**notwithstanding** 50:11

**number** 17:7

**numbers** 50:3

**numerous** 6:19

**O**

**obedience** 13:10

**objected** 11:4

**objection** 7:9

**objectives** 59:13

**obligation** 10:21

**obligations** 7:7

**observance** 13:10

**observed** 10:5

**obtain** 47:8

**obtaining** 40:15

**occurring** 36:16

**occurs** 39:1

**October** 14:8 58:6

**offer** 6:10 9:1,11,24 10:3 45:3,5 50:9

**offered** 9:5 11:6

**offers** 5:6,8 6:6,11 13:18 16:13 17:3 37:20 50:8

**office** 25:5 41:11 42:4

**OFFICER** 4:3 60:6

**offshore** 52:2

**one's** 25:9

**ongoing** 19:5

**operated** 47:14 49:10

**operation** 20:16

**operations** 15:21 17:9 18:25

**opposed** 9:3 10:16 39:21 43:20 57:13

**opposing** 31:7

**opposition** 19:21

**option** 20:4

**options** 23:16

**order** 8:23 11:18 12:9 13:7,11,12 15:24 16:20 24:10,12 25:25 26:3 39:24 40:4 41:15,22 42:15 46:1,20 47:16,25 48:2,14,19 53:5 56:10, 13,18,22 58:6

**ordered** 28:23 45:22

**orders** 32:5

**original** 46:8

**originally** 20:20

**oversee** 45:14

**owned** 11:16 25:20,22

**ownership** 43:19

**P**

**pages** 19:25

**paid** 8:1

**papers** 27:14 32:15 35:12,19

**parallel** 33:18

**part** 44:8 53:20 58:3

**parties** 16:14 39:20 49:22

**passed** 10:4

**path** 55:19

**pay** 6:22 7:2,21,22 8:1, 10,16 11:9 19:4 31:18 40:17,24 46:7 53:15

**paying** 10:5 38:24 44:18

**pays** 9:14 47:20

**peering** 31:1

**pendens** 12:10,16,23 13:1 54:22,24 55:2,11, 20

**pending** 5:3 16:20 24:8 26:22 34:17 55:21 59:19

**pennies** 33:4,12

**people** 8:10 36:10,11 40:17

**percent** 7:18,20 18:7 37:16 38:6 50:8 51:1,6 52:5 57:25

**perfectly** 39:10 55:20

**perform** 49:16

**period** 10:13

**permanent** 14:19,20 34:13

**permissible** 13:9

**permission** 33:2

**permitted** 31:14

**person** 39:22 58:22

**personal** 9:21 17:13 18:4 20:14 22:4,9,13 23:6 24:17,19,21,22 25:9 26:4,7 41:12 42:2, 6,21 49:24 50:12,13,17, 22 52:17,18,20 53:14, 22

**personally** 20:3 26:15

**perspective** 40:22

**pick** 22:24 36:9

**picks** 36:11

**pickup** 26:4

**piece** 20:12 25:7

**pipes** 7:22

**place** 5:16 9:12,24 22:20 32:5,6 33:10 47:25

**plan** 54:16

**planned** 12:24

**plans** 24:21

**planted** 29:8

**plowed** 21:6

**podium** 5:22

**point** 15:1 16:17 18:8 26:17 34:23 38:8 49:15 53:4 57:24 60:2

**pointed** 57:23

**Ponzi** 27:7,12 38:13

**portable** 27:17

**portfolio** 17:2

**position** 35:15 58:22 59:15

**possession** 9:19 11:20,21 13:17 26:5 50:15

**possibility** 7:11

**possibly** 9:1

**post-judgment** 38:18, 20

**potential** 44:1 48:22 52:5 57:13

**potentially** 10:11 24:1 43:15,22 45:24

**power** 22:21

**precedent** 27:6

**precedents** 24:13

**prefer** 5:14 44:7,12

**prefunded** 23:19

**prejudgment** 28:23

**premature** 28:14

**premises** 9:18

**prepared** 54:18

**preparing** 41:14

**present** 32:10

**presented** 13:21 31:23 32:14

**preserve** 39:11 41:5 44:16 45:15,16

**preserving** 41:3

**pressure** 34:4 36:20

**pretty** 58:8

**prevent** 23:24 29:2 30:1

**preventing** 57:19

**prevents** 32:6

**price** 50:4

**prior** 15:2

**problem** 21:21,23 22:16,22 40:20 41:7

**problems** 31:23

**procedure** 12:19 13:4

**proceed** 13:11 44:14

**proceeding** 36:21 55:21 56:2,21 57:2

**proceedings** 15:2 57:4,9 60:7

**process** 16:15 17:18 40:16

**produced** 14:12

**profitable** 18:16

**prohibited** 31:12

**project** 31:21 37:16

**projects** 21:7 27:25 31:14 32:3,8,9,20,23 57:12,17,18,20 58:10

**prominent** 27:20

**proof** 15:2 30:3 34:6,9

**properly** 46:14 47:15 56:8

**properties** 6:23 8:23 10:13,21 13:16 17:2 18:6,13,21,23 23:4 33:2 37:20,23 40:7,14 41:9 43:5,12 44:4,11,13,17, 23 45:4,15,17,24 51:5, 13,15,17,19 52:9

**property** 5:4 6:23,24 7:5,14,15,24 8:2,3,8 9:9,14,15,17 10:6 11:3, 12,16,25 12:12,18,23 15:5,8,20 16:24 20:12, 13,18 22:12 23:7 24:17, 19,21,22,25 25:10 26:4, 8,18,25 29:16,17 34:5 37:21 38:24 41:9,20,25 43:6,18 47:19 49:25 50:15 51:11,17 52:1,4, 7,8,11,17,18,20,23 53:9,13,22 56:5

**proposal** 11:4 26:15 31:6

**proposed** 16:23 19:1 25:13 26:10 56:10,13, 22

**proposer** 36:11

**proposition** 18:3 25:25 26:1

**propriety** 34:12

**prosecution** 33:18 36:3,5,15

**protect** 40:5 49:16

**prove** 14:14 25:5

**provenance** 25:6

**provide** 6:17 12:21 13:22 19:6 41:23 45:22 47:23 48:21 49:12 55:4, 6

**provided** 48:14

**public** 29:9

**publish** 6:3

**purchase** 19:13 47:19 49:8

**purchased** 11:13,25 12:6 42:12

**purpose** 11:16 15:1 19:2,16 20:17 21:10 23:4 29:15

**pursuant** 16:15

**push** 54:1

**put** 9:12,23 20:2,6,20 31:6 32:5,6 34:8 35:8, 10 47:24 50:18 58:5 59:22

**putting** 40:15 58:15

Q

**question** 36:1,7,18 37:5,18,19 38:3,9 43:10 46:3 55:11

**questions** 34:11 35:23 54:20

**quick** 18:18 46:3 53:11

**Quickbooks** 48:6,7

**quickly** 7:25 29:13 37:21 40:8,11 52:9

**quo** 15:16,17

### R

**rage** 54:6

**raise** 15:20 17:6,11 18:24 19:2 35:20 39:3

**raised** 9:25 17:4

**ran** 51:22

**rapidly** 52:21

**rate** 21:16,19 54:5

**rates** 51:1,3 54:2,3

**ratify** 10:10

**reach** 53:15

**ready** 32:22 33:3 53:12

**real** 16:9 20:15 21:6,7 22:10 23:14 27:20,24 29:16,17 31:10,12 32:23 33:8 37:15 57:12

**reality** 41:8

**reason** 19:15 35:13 53:24

**reasons** 22:1

**receive** 6:5 10:14

**received** 6:10 9:20 11:14 17:20,25 21:4 48:3

**receiver** 4:23 5:1 11:23 14:7,17 15:1,7,12 17:5, 17 19:1,3 23:22 24:8, 15,20 26:3 28:11,13,23 33:1 34:2 35:8,10 36:9, 14,19 39:2,22 40:10 41:15,19 42:17 44:5 46:21,24,25 47:1,7 55:6 56:18 57:24 58:13

**Receiver's** 5:5 6:2 11:21 13:16 14:23 15:24 16:7 18:25 21:23 22:16 25:19 34:16,24 35:14 44:10 45:9 47:13 55:22

**receivers** 15:4 27:4,7

**receivership** 7:5,15 10:7,20 11:8,18 12:1,9 13:7,12,14 16:20 19:8, 21 20:3,7,21 21:13,25 22:8,14 23:13 24:25 26:8 29:2 30:17,18 31:8 33:20 34:2,12 35:21,22 37:11,22 38:15,21 39:6, 10 40:20 41:15 43:7,16 46:20 47:16 48:2,14,19 50:11 51:12,14 52:13 53:2 57:11 58:6 59:19

**receiverships** 38:13

**receiving** 45:20,21

**recent** 32:15

**recess** 55:14 60:2

**recognize** 54:13

**recommended** 36:9

**reconsider** 46:19

**record** 4:6 16:16 24:18 30:11,14 44:9 45:8 56:19

**recorded** 29:9

**records** 11:22 25:3 29:9 41:23 48:4

**reference** 6:2

**reflected** 42:9

**refused** 41:22

**regard** 17:1 20:13 21:10 22:6 23:10,11,17 25:2 28:5 31:5 37:16

**reimburse** 23:25

**related** 19:12

**relates** 53:21

**release** 13:8 55:1,2

**relied** 12:18

**relief** 46:15

**remedy** 38:18,20 40:2

**remove** 9:17

**removed** 41:25

**rent** 8:20 50:19

**rental** 9:9

**rents** 9:14

**repeat** 43:10

**replies** 59:6

**reply** 56:24 59:8

**report** 32:12

**request** 10:2 14:5,22 45:3 53:19,23 54:17 55:5 58:21

**requested** 6:16 28:13

**require** 6:25 13:10

**required** 6:4 58:11

**requirements** 6:21 44:20

**requires** 6:13 39:15

**research** 9:8

**reserve** 35:17 51:4

**residence** 21:11 41:13

**residential** 51:5

**resolution** 26:23

**resolved** 55:24

**resort** 16:5,6

**resources** 37:11

**respect** 10:23 39:25 42:21 45:2,5 46:18

**respectfully** 14:24 16:7 45:13

**response** 9:4 10:15 11:10,14,15 12:2,14 17:21 44:10 45:9,12 59:7,9

**responses** 59:6

**responsible** 23:8 24:3

**rest** 50:24

**result** 36:21

**return** 15:14 26:5,17 53:1

**reverse** 14:21 15:18

**rights** 23:7 35:17

**righty** 5:3 14:1

**rise** 4:3 60:6

**risk** 27:18 29:5 32:10

**road** 40:13 49:11 57:25 58:4

**roads** 40:15

**roughly** 16:2

**route** 13:5

**ruckus** 29:11

**ruin** 54:11

**rule** 51:21 54:18

**rules** 28:22

**ruling** 53:19

**rulings** 49:21

**run** 27:20 32:2

**running** 27:12 31:10

### S

**safe** 26:22

**sake** 24:4

**sale** 5:4 6:3,5,8,12 7:8, 10,12,14 13:11,13,20 14:6,19 15:16 16:2,15, 20,24 18:18 19:2 26:25 32:6 34:14 35:3,15 43:5 44:2,4 49:24 50:1,4 51:15,16 52:12,14,22 54:23 55:25 56:7

**sales** 28:15 31:12 40:11 44:6 57:19

**satisfied** 13:19 31:4 44:15

**scenario** 8:21

**schedule** 58:15

**scheme** 27:12

**schemes** 27:8 38:14

**scope** 35:21 47:15

**seated** 4:5 5:19 57:6

**SEC** 4:7,8,10 20:2,4,8, 20,25 23:12 28:5 29:1,6 30:5,24 31:2 32:12 33:19,24 34:22 36:18 39:13 41:18 42:17 46:22 47:1,9 51:24 57:22

**SEC's** 19:13,20 27:14 28:3,13,19 29:3 30:4,9 31:9,19 32:17 36:9 49:14

**SEC-APPOINTED** 27:7

**SEC-SOUGHT** 27:4

**Section** 12:18

**securities** 14:11 20:1

**SECURITY** 4:3 60:6

**seeking** 46:24

**segregation** 49:2

**selection** 31:9

**sell** 7:24 11:3 12:12 15:4,8,20 17:4 18:17 24:15 29:10,12,16,20 33:2 38:19 41:14 44:12, 17,18,19 45:19 55:23

**selling** 14:24,25 17:13 18:3 22:17 57:25

**sense** 38:3

**sentence** 27:15

**separation** 36:13

**servicing** 23:17,18

**set** 28:22 55:19

**settlement** 10:10

**seventh** 52:1

**shifting** 22:18

**shocked** 41:17

**short** 13:13

**shoulder** 53:13

**show** 29:1 32:15 48:18 56:15

**showing** 15:21 23:22 24:5 30:14

**shut** 54:14

**side** 37:2

**sign** 13:7 52:22 55:1,2, 5,11

**signed** 41:10

**simple** 13:4

**simply** 38:15

**single** 11:16 39:21 43:13

**sit** 5:18 45:23

**sitting** 5:22

**situation** 28:20 33:16, 17 35:14 50:16

**sleeping** 14:8

**small** 57:15

**sober** 16:3

**sold** 25:13 26:19 32:20 33:3,4 35:9 40:8 42:1

**sole** 29:15

**solution** 32:5

**sooner** 58:3

**sophisticated** 32:7

**sought** 20:20

**speak** 42:24 43:23

**speaking** 4:12 5:17 8:7 20:5

**special** 19:16 20:17

**specific** 45:6 49:2 59:5

**specifically** 43:4 48:15

**split** 54:11

**stage** 14:10

**stake** 40:5

**stand** 5:15,19

**standards** 31:3 32:19

**standing** 5:22,24

**standpoint** 50:4 51:16

**Stanfords** 27:9

**start** 46:10

**started** 22:23

**stated** 6:7 44:3

**statement** 42:8

**statements** 12:4

**States** 34:9

**stationary** 27:24

**status** 15:16

**statute** 6:4,13 13:19 15:17 44:20

**stay** 5:18 7:8 13:1 19:21 34:16 41:5 44:10 45:9 49:25 52:16 53:18, 19 54:9,14,16 57:6 59:18

**stayed** 33:21 41:1

**step** 24:14 38:11

**stepped** 41:1

**steps** 34:2

**storage** 26:12,21 53:1, 5,7,15

**store** 11:7,10 26:11 45:4

**storing** 53:9

**straight** 22:25

**straits** 18:10,14

**stranger** 27:1

**strategy** 58:12

**stretch** 27:19

**strong** 50:22

**structured** 40:21

**struggling** 40:24

**stuck** 45:13

**student** 54:4

**students** 54:6

**stuff** 25:12,15

**subject** 6:24 12:24 19:13 20:25 28:19 29:3, 7 31:19 32:17 43:13,19, 22 44:11 52:2 57:21

**submission** 20:1 30:5

**submit** 20:11 56:13

**submitted** 6:15 44:9 56:12

**substantive** 30:9

**sufficiency** 50:7

**sufficient** 10:12

**suggested** 9:3 36:25

**suggesting** 36:16,19 59:1

**suggestion** 37:9 38:14 39:25

**suggests** 47:22,23

**supervise** 39:16,17,18 40:16

**supervision** 39:16

**support** 45:8 47:2,13

**supposed** 15:12

**surrounding** 34:11

**sustained** 23:21 27:15

**Switzerland** 27:18

**system** 33:5,11

**table** 5:18,22

**takes** 26:24 29:15 47:18 53:18

**taking** 23:23 34:3,5

**talk** 5:5,10 8:21,24 18:15 26:10 35:1 37:20 49:23 55:15 59:11

**talked** 8:22 23:17

**talking** 31:13 37:15

**targeted** 59:22

**tax** 8:14

**taxes** 7:21 8:3,8 9:16 51:11 52:7,11,23

**Ted** 4:16

**teed** 17:17

**telling** 18:16

**tells** 50:21
**terms** 21:15 32:7 48:21
**test** 50:5,6
**testify** 47:22
**testimony** 47:23
**thing** 26:17 39:21 51:10 54:11 56:17
**things** 25:22 30:8 33:6 57:25
**thinking** 38:7 53:8
**Thomas** 4:25 43:23 45:14 49:16
**thought** 16:15 20:20
**thoughts** 37:9
**threshold** 50:8
**tied** 44:21,22
**time** 6:21 10:3,13 12:3, 4 14:16,23 29:15 30:9 40:8 41:21 43:7 47:3,10 53:24 58:10
**timeline** 51:16
**title** 54:24 56:15
**titled** 29:14
**today** 4:22 9:12 13:8,21 14:5 31:1 35:1,12,21 36:1 42:16
**today's** 37:14
**toe** 30:6
**told** 45:23
**top** 24:7 30:15
**total** 53:10
**touch** 41:8
**trace** 19:11 20:23 41:19 42:18,19 47:3
**traced** 25:21
**tracing** 22:2 26:13 46:4,6,7,13,18 47:1 51:20
**track** 38:6,8
**traditional** 7:17
**transactions** 32:8 48:1
**transcript** 56:21
**transferred** 12:24
**treated** 42:5
**treatment** 17:25
**trier** 14:15
**trouble** 56:23
**true** 8:17 40:25
**turn** 33:21
**turning** 23:11
**Turtle** 42:4
**two-thirds** 6:14 50:5
**type** 23:22 36:15

**ultimate** 15:13
**unable** 42:18
**uncomfortable** 13:3
**underlying** 14:13 15:3
**undermining** 40:1
**understand** 4:20 8:19 29:22,23 33:8 58:5
**understanding** 40:6 48:6
**Understood** 8:18 27:2 49:19 55:7 56:9,16 58:17 59:24
**undertake** 14:18,23
**undertaking** 22:11
**unique** 20:13
**uniquely** 22:4,8 53:14
**United** 34:9
**unlawful** 46:8
**unlike** 20:19 52:8
**unprecedented** 27:4
**unreasonable** 25:8
**unsecured** 28:18 31:18
**unsympathetic** 41:13
**update** 5:9
**urged** 19:9
**utilities** 7:22

V

**valid** 53:3 55:21
**valuable** 9:21 31:17
**vendors** 40:17
**Venus** 16:21
**versus** 4:7 21:2 28:21 31:2 32:19 46:10,12 58:11
**victims** 24:1 39:12
**view** 15:6 16:7 27:5 35:4 52:18,19
**violated** 13:6
**violations** 14:11 48:18
**void** 12:16 54:25 55:11, 12,17

W

**wait** 45:23
**Wall** 4:21,22
**Wallace** 28:12 31:9 37:10
**wallet** 42:6
**wanted** 40:2 42:23 43:4
**warrant** 9:16
**ways** 17:11
**weather** 7:23
**websites** 48:11
**weeks** 16:2 32:25 45:11
**word** 34:24 37:8
**work** 19:3
**world** 27:10
**worth** 17:3 19:18 22:20 26:6 27:21 42:11 53:9
**wrong** 23:13
**wrongdoing** 23:9 34:6, 7

Y

**y'all** 38:7 53:7 57:6 60:2
**year** 8:10 52:6 58:4
**years** 12:1 25:11 27:22 30:7 33:25 40:9,12 45:18
**yesterday** 5:7 30:6

# Tab 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | |
| *Defendants,* | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| *Relief Defendants.* | § | |

**RECEIVER'S MOTION FOR APPOINTMENT OF APPRAISERS, APPROVAL OF APPRAISALS OF ROCK CREEK PROPERTY, AND SETTING HEARING REGARDING APPROVAL OF SALE OF ROCK CREEK PROPERTY**

Cort Thomas, as the court appointed Receiver, respectfully moves the Court as follows:

## SUMMARY

In compliance with the Court's Order Appointing Receiver (the "Receivership Order") and 28 U.S.C. § 2001, the Receiver requests appointment of three appraisers, approval of the appraisals, and a hearing regarding approval of the sale of certain property.

## FACTUAL SUMMARY

1. On October 18, 2022, the Court entered an Order Appointing Receiver (the "Receivership Order") by which Cortney C. Thomas was appointed as Receiver for certain entities (the "Receivership Entities"). The Court directed the Receiver to take possession and control of all Receivership Property and Receivership Records. *Receivership Order* ¶¶ 6, 16, 17.

2. On November 16, 2022, the Court entered the Order Governing the Administration of the Receivership ("Administrative Order") which also established procedures in conformity 28 U.S.C. § 2001[1] for sales of real property.

3. In a Supplemental Order, the Court concluded that SF Rock Creek, LLC is a "Receivership Entity." [Dkt. 62].

4. Pursuant to the Receivership Order and in accordance with the Administrative Order, the Receiver listed 4107 Rock Creek Drive, Dallas, Texas 75204 (the "Property") for sale through Dan Rhodes of The Rhodes Group at Compass. (In the initial days of his appointment, the Receiver discovered that Defendant Barton, through SF Rock Creek, had also entered a listing

[1] "(a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs. Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts. (b) After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale. 28 U.S.C.A. § 2001.

agreement on October 17, 2022 related to the Property). *See* Declaration of Cort Thomas ("Thomas Dec.") included in the Appendix at pp. 1-3.

**A. SALE OF ROCK CREEK PROPERTY**

5. On November 16, 2022, subject to the Court's approval, the Receiver entered into a contract to sell the Property, "AS IS" for One Million Four Hundred Thousand Dollars ($1,400,000), to JNJ Group, LLC. A true and correct copy of the real estate contract is attached as Exhibit A (the "Contract"). *App.* pp. 5-22. JNJ Group, LLC is not related to, nor controlled by any of the parties to this lawsuit, and is not related to, nor controlled by the Receiver, or any of his agents, employees, or attorneys.[2] *Thomas Dec.* ¶ 3; *App.* p. 1.

6. Subject to the Court's approval, the closing is scheduled for December 28, 2022. Although the closing date may be extended by mutual agreement, if the buyer does not consent to extend the sale, the Buyer is entitled to terminate the Contract and receive a full refund of his $15,000 earnest money deposit. *Thomas Dec.,* ¶ 5; *App.* pp. 1; 17; 22.

7. The Receiver seeks permission from this Court to sell the Property pursuant to the Contract, and in accordance with the Administration Order and 28 U.S.C. § 2001.

8. In accordance with this Court's Orders and 28 U.S.C. § 2001 the Receiver obtained three independent appraisals of the Property. True and correct copies of the three appraisals are included in the Appendix as Exhibits B-1, B-2, and B-3. *App.* pp. 23-43; 44-70; and 71-94. The Receiver requests that the Court appoint the appraisers for the purpose of providing the attached appraisals and accept these three appraisals in satisfaction of the requirements of 28 U.S.C. § 2001(b).

---

[2] While the entity purchasing the Property has a trade name similar to Receivership Entity JMJ Development, the Receiver has confirmed that the entities are not related. *Thomas Dec.,* ¶

9. The three appraisals value the Property at $1,385,000,[3] $1,385,000,[4] and $1,410,000,[5] respectively, resulting in an average appraised value of $1,393,333. Thus, the contracted sales price, $1,400,000, not only exceeds two-thirds of the average appraised value of the Property as required by 28 U.S.C. § 2001(b), but in fact exceeds the average appraised value. Accordingly, the Receiver contends the sale of the Property pursuant to the Contract at the sales price of $1,400,000 is in the best interest of the receivership and exceeds two-thirds of the average appraised value.

10. In connection with a different motion, Defendant Timothy Barton submitted a redacted appraisal from June 2022 performed by Garvin Appraisals LLC, which used a cost approach to value the property at $2,061,228. The Receiver believes that the sale of the Property pursuant to the Contract at the sales price of $1,400,000 is nevertheless in the best interest of the Receivership because (1) Barton's appraisal does not use the correct valuation methodology;[6] (2) despite the Property being on the market for several weeks and receiving multiple offers, the negotiated sales price of $1,400,000 was the highest offer received, indicating that market conditions are consistent with the Receiver's appraisers' valuations of the Property; (3) even if Barton's appraisal of $2,061,228 were accurate, and the Receiver was able to obtain two additional independent appraisals that applied a correct methodology and arrived at the same value, a sale for $1,400,000 would still be authorized under 28 U.S.C. § 2001 because the price exceeds the 2/3 minimum ($1,374,152); and (4) if the value of the Property is as high as Barton contends, pursuant

---

[3] The appraisal was issued by Matthew Waldron and is dated as of November 29, 2022. *App.* pp. 23-43.

[4] The appraisal was issued by Bryan S. Hagen and is dated as of November 17, 2022. *App.* pp. 44-70.

[5] The appraisal was issued by Mark V. Milliorn and is dated as of November 18, 2022. *App.* pp. 71-94.

[6] As reflected in each of the three appraisals submitted with this Motion, real estate appraisals for residential properties usually value properties based on a sales comparison or market approach, not a cost approach.

to 28 U.S.C. § 2001, another bona-fide independent buyer can purchase the property by submitting a bona fide offer exceeding $1,540,000. *Thomas Dec.,* ¶¶ 11; *App.* pp. 2.

11. Finally, while Barton has insisted that the Receiver should not sell the Property at this time, the sale is necessary because, among other things, (1) utility and insurance payments continue to deplete whatever value exists in the home, (2) loan and interest payments continue to accrue, further depleting any recovery from sale of the Property, (3) the administrative costs of the Receivership incrementally increase with each managed property, and (4) current economic uncertainty makes it impossible to predict how difficult it will be to sell the Property in the coming months. *Thomas Dec.,* ¶¶ 12; *App.* p. 3.

**B. NOTICE OF SALE AND REQUIRED HEARING**

12. The governing statute, 28 U.S.C. § 2001, also requires that the Court conduct a hearing to consider the proposed sale. And, at least ten days before the hearing, the statute requires publication of the terms of the proposed sale so that bona fide interested purchasers can submit competing bids of not less than 10% more than the Contract price. Any competing offers should be accompanied by proof of funds for a cash sale, or confirmation of approved financing to allow an immediate closing on the same "AS IS" basis provided in the Contract.

13. The Receiver accordingly requests that the Court schedule a hearing before December 28, 2022 to consider the sale. The Receiver will publish notice of the hearing at least ten (10) days prior to the hearing as required by 28 U.S.C. § 2001(b) and provide notice of the hearing through the receivership website.

14. The Receiver requests that any bona fide offers for purchase of the Property which exceed by ten percent (10%) the Contract sales price of $1,400,000 be served on the Receiver and filed with the Court not later than two days before the hearing scheduled to consider the sale.

## CONCLUSION AND PRAYER

As set forth above, the Receiver requests that the Court (1) appoint the three appraisers identified above and in the appraisals included in the Appendix, (2) approve and accept the appraisals provided by each appraiser; (3) set this matter for hearing to consider approval of the sale on the terms provided by the Contract or as offered in any bona fide competing offer received after the date of this Motion; and, (4) provided no timely bona fide offers exceeding the Contract price by 10% are received two days before the date of the hearing, enter an order authorizing the Receiver to sell the Property pursuant to the terms of the Contract. The Receiver also requests such other and further relief to which he is justly entitled.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on December 1, 2022, the Receiver conferred with counsel for all parties regarding the relief requested in this Motion. The SEC and Defendant Fu are unopposed to the relief requested herein. As of the date and time of filing, Defendant Barton had not responded to the conference on this Motion, but the Receiver presumes he is opposed. Defendant Wall also did not respond to the conference.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

# Tab 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| ***Plaintiff,*** | § § | |
| **v.** | § | **No. 3:22-CV-2118-X** |
| **TIMOTHY LYNCH BARTON<br>CARNEGIE DEVELOPMENT, LLC<br>WALL007, LLC<br>WALL009, LLC<br>WALL010, LLC<br>WALL011, LLC<br>WALL012, LLC<br>WALL016, LLC<br>WALL017, LLC<br>WALL018, LLC<br>WALL019, LLC<br>HAOQIANG FU (a/k/a MICHAEL FU)<br>STEPHEN T. WALL** | § § § § § § § § § § § § § § § | |
| ***Defendants,*** | § § | |
| **DJD LAND PARTNERS, LLC<br>LDG001, LLC** | § § § | |
| ***Relief Defendants.*** | § | |

**DEFENDANT BARTON'S RESPONSE TO MOTION FOR SALE OF ROCK CREEK PROPERTY [ECF NO. 76], AND CROSS-MOTION FOR ORDER PROHIBITING SALE OF PERSONAL PROPERTY LOCATED AT ROCK CREEK HOME**

Michael J. Edney
Michael Dingman
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037

Ted A. Huffman
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202

Richard Roper
Javan Porter
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. ARGUMENT & AUTHORITIES ........ 3
  A. The Receiver Lacks Proper Legal Authority to Sell Mr. Barton's Family Home ........ 3
  B. Selling Mr. Barton's Personal Residence Is Unnecessary ........ 7
  C. The Receiver's efforts to sell the property are not done at a fair price ........ 8
III. CROSS-MOTION FOR ORDER PROHIBITING SALE OF PERSONAL PROPERTY LOCATED AT 4107 ROCK CREEK DRIVE ........ 13
IV. CONCLUSION & PRAYER ........ 15

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Coastal Corp. v. Tex. E. Corp.*,
869 F.2d 817 (5th Cir. 1989) ....................5, 6

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982)....................6

*Hinkley v. Envoy Air, Inc.*,
968 F.3d 544 (5th Cir. 2020) ....................5

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ....................6

*L.A. Trust Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) ....................8

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) ....................6

*Opulent Life Church v. City of Holly Springs*,
697 F.3d 279 (5th Cir. 2012) ....................5

*SEC v. Am. Bd. of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987)....................4

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992)....................4

*SEC v. Faulkner*,
No. 3:16-CV-1735-D, 2018 WL 4362729 (N.D. Tex. Sept. 12, 2018)
(Fitzwater, J.) ....................7

*SEC v. Hallam*,
42 F.4th 316 (5th Cir. 2022) ....................5

*Trenolone v. Cook Expl. Co.*,
166 S.W.3d 495 (Tex. App. 2005)....................13

*Wages & White Lions Invs., LLC v. FDA*,
16 F.4th 1130 (5th Cir. 2021) ....................5

**Statutes**

28 U.S.C. § 2001....................15

Tex. Prop. Code § 72.101 ....................13

Defendant Timothy L. Barton files this Response in opposition to the Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property [ECF No. 76] ("Motion"),[1] and Cross-Motion for Order Prohibiting Sale of Personal Property Located at Rock Creek Home ("Cross-Motion"), as follows.

## I. INTRODUCTION

The receiver has one legitimate purpose: to identify and to preserve the assets of the corporate, business-related entities under receivership. ECF No. 29 at 2. In the SEC's recent opposition to the stay of the receivership, the Commission placed great emphasis on the fact that it did not seek to put Mr. Barton into receivership in his personal capacity. ECF No. at 2, 8.

But, to date, the Receiver's efforts have been focused on property very personal to Mr. Barton. In doing so, the Receiver repeatedly has attempted to leverage one line in the Court's Receivership Order that grants the Receiver authority over all corporations under Mr. Barton's ownership or control. The Receiver has used this line in the order to justify seizing Mr. Barton's personal home because, as with many other high-income individuals, the home was held in the name of special purpose limited liability corporation. That corporation *had no other purpose than to hold title to his personal residence*. The Receiver removed Mr. Barton from his home on Day Two of his tenure, and now seeks to sell it out from under him. And, in a separate motion, the Receiver now attempts to sell all of Mr. Barton's personal belongings that remain onsite. *See* Notice of Intended Sale of Personal Property [ECF No. 89]. The Receiver's alleged justification is that those items happened to be stored in the place where Mr. Barton lives.

[1] For the second time in this action, the Receiver's counsel did not confer with Mr. Barton's lead counsel before filing the instant motion.

It should be made clear that the Receiver is not seeking to sell some second home in a vacation locale. Mr. Barton has none. This was Mr. Barton's sole place to live, and after the Receiver launching him from his home, he has slept on a couch in his daughter's apartment.

What a distraction from anything relevant to this case! The Receiver should be taking steps to understand a complex real estate development business with tens of millions of assets under management and the potential to make tens of millions more. But the Receiver has fixated on squeezing pennies from Mr. Barton's personal residence. One has to ask what this sale has to do with marshaling and preserving assets.

Liquidation of Mr. Barton's home before any judgment finding liability is contrary to applicable law. Even when a receiver is properly appointed, its purpose is to preserve assets prior to judgment, for potential compensation of alleged victims if the Government proves its case and obtains liability or for return to the Defendant in the event the Government does not. A prejudgment receiver's role is not to punish, it is to maintain the status quo. But the liquidation of Mr. Barton's home would irretrievably upend the status quo. It would be a bell that cannot be unrung and entirely improper at this stage of the proceedings.

In addition, the Receiver's professed reasons for seeking a sale of this property will not advance any material objective of the receivership estate. This is certainly not an effort to raise money for any allegedly wronged lenders. Rather than list the Barton home for sale at market price, the Receiver attempts to sell the home for hundreds of thousands of dollars less. In taking this fire-sale approach, the Receiver contends the residence will generate, at best, "between $100,000 and $200,000," prior to the Receiver charging his own legal fees, expert costs, and other expenses against the recovery. Receiver's Initial Status Report [ECF No. 67] at 15-16. The sale of Mr. Barton's home is thus unnecessary and unjust, and the Court should deny the

Receiver's motion in order to redirect the Receiver toward projects that will meaningfully serve the purpose of the receivership.

Mr. Barton cross-moves to prevent the Receiver from attempting to sell personal property still located at the residence. The Receiver has prevented Mr. Barton and his family from recovering many of their possessions from the home and intends to sell these belongings to the new home buyer. Neither the Receiver's real estate motion nor the current real estate sale contract details this plan. Nor does the Court's Order Appointing Receiver authorize the Receiver to possess and sell these personal items. To ensure that this property is not sold, as the Receiver threatens to do, Mr. Barton moves for an Order requiring the Receiver to return all personal property that is present in his home.

## II. ARGUMENT & AUTHORITIES

### A. The Receiver Lacks Proper Legal Authority to Sell Mr. Barton's Family Home

At a fundamental level, the Court should deny the Receiver's Motion to sell the Barton family home because the Receiver lacks legal authority over the property, much less a right to sell it.

A receiver's only legitimate purpose is to identify and secure assets and to preserve those assets, so that they may be used to compensate any alleged victims *if and only if the Defendant is later found liable for securities fraud.* The sale of Mr. Barton's home is not aimed at this sole legitimate end. Instead, it is a measure designed to punish Mr. Barton, now, before the Government has taken even the first steps to prove its allegations, much less the Defendant been given an opportunity to respond to this proof. Consider the possibility that the SEC does not prevail in establishing liability. Will Mr. Barton be given back his house, his furniture, his personal effects accumulated over a lifetime? No.

For this reason, liquidation of a defendant's assets prior to judgment is typically not proper. *See, e.g.*, *SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) (finding liquidation neither "necessary to protect [the defendant's] investors" nor "appropriate prior to the entry of final judgment"). Liquidation is especially inappropriate when the receiver is still ascertaining the true state of affairs of the property under his remit. *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436-37 (2d Cir. 1987) (criticizing receivers that attempt to liquidate "effect the liquidation of defendants in actions brought under the securities law" and addressing receiver's purpose of preserving assets and ascertaining affairs).

The Court should reject any suggestion by the Receiver that the sale of Mr. Barton's personal home is somehow vital to keeping the entire receivership estate going. This sale was Plan A, not some kind of last resort. The house was seized on the Receiver's second day on the job and listed for sale less than two weeks later. The net proceeds from the sale will barely pay the Receiver's legal bills for seeking this remedy. And, in the meantime, the Receiver is bypassing commercial real estate sales—investments without the same personal importance to Mr. Barton—that would generate millions. That is not the type of extraordinary circumstance that might warrant an exception to the general rule against prejudgment liquidation. This move is a disturbance of the status quo, not a preservation of it. It is an assumption of an adverse outcome in this matter, inconsistent with due process and any conception of the Government's ultimate burden of proof.

The Receiver also incorrectly contends that his "underlying purpose" is to *disgorge* property and assets from Mr. Barton, before any finding of liability. *See* ECF No. 73 at 14 n.11. Disgorgement is no business of a pre-judgment receiver; it is a post-judgment remedy to potentially follow only after the Commission proving its claims and establishing liability. And

equitable judgment may not even be a permitted remedy at all—whether pre- or post-judgment—as the Fifth Circuit recently questioned the Commission's authority to seek equitable disgorgement following Congress's 2021 amendments to the Securities Exchange Act. *See SEC v. Hallam*, 42 F.4th 316, 343 (5th Cir. 2022).

In any event, the Court lacks jurisdiction to order the sale of the house because its receivership orders are currently on appeal to the Fifth Circuit. ECF No. 66. The orders under appeal include the Court's orders establishing the receivership, extending the receivership to the special purpose entity that owns the property, and refusing to exempt that personal residence related entity from the receivership. *Id*. Whether Mr. Barton's home is rightful property of the receivership estate is, therefore, a question before the Fifth Circuit on appeal. That means this Court is divested of jurisdiction to do anything more than "maintain[] the status quo," and it may not take any action that "can divest the court of appeals from jurisdiction while the issue is before" that court. *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989). Approving the sale of Mr. Barton's home will do exactly that. Once sold, Mr. Barton would have no recourse, even if the Fifth Circuit later determined that his home should not have been in the Receiver's power, because the Receivership Order grants blanket immunity to the Receiver, ECF No. 29 at 21, and the government "enjoy[s] sovereign immunity." *Wages & White Lions Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that the loss of an interest in real property constitutes irreparable harm). If the Court were to nonetheless approve the sale of Mr. Barton's house, he would no longer "retain a legally cognizable interest in the outcome of" whether the Rock Creek property was validly encumbered by the receivership, which would deprive the Fifth Circuit of jurisdiction to decide the issue on appeal. *See Hinkley v. Envoy Air, Inc.*, 968 F.3d 544,

548 (5th Cir. 2020). Because granting the Receiver's motion would deprive the Fifth Circuit of jurisdiction to consider the orders on appeal, this Court lacks jurisdiction to approve the instant motion. It must instead "maintain[] the status quo," in which the Rock Creek property remains unsold. *Coastal Corp.*, 869 F.2d at 820. In addition, although further orders approving the sale of real property are contemplated by the court's pre-existing orders, the order sought by a receiver would clearly be an additional order on "those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The Court is deprived of jurisdiction to enter such an order until the appeal is resolved.

In the same appeal, Mr. Barton seeks to overturn the Court's implicit determinations from prior orders that any entity directly or indirectly related to Mr. Barton can be thrown into receivership. Although Mr. Barton has previously raised this point of law, the importance of this legal matter continues to taint the issues raised in the Receiver's present Motion and now threatens to take on permanence by selling the Defendant's personal home, an event that cannot be unwound later when the Fifth Circuit enforces its prior precedents. As addressed previously, the Fifth Circuit has made clear that "equity does not allow a receivership to be imposed over property that [is] not the subject of the underlying dispute." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012). For a receivership to be expanded to include non-party assets, the movant must show that the non-party (1) received ill-gotten funds, and (2) has no legitimate claim to the funds. *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009); *see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 310 (5th Cir. 2012) ("The receivership ordered in this case encompassed all of Baron's personal property [and] business entities owned or controlled by Baron, including Novo Point, LLC and Quantec, LLC . . . . We conclude the district court could not impose a receivership over Baron's personal property and the assets held by Novo Point and Quantec.");

*SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *5 (N.D. Tex. Sept. 12, 2018) (Fitzwater, J.) (permitting non-defendant entities to be included in an SEC receivership only when shown to be both controlled by the defendant and in possession of funds traceable to alleged fraud). Neither the SEC nor the Receiver has made a showing that Mr. Barton's home was funded with any Wall lender funds, so neither the company owning the home nor the home itself should be included in the receivership estate, and the Receiver should be divested of control to sell that property.

For these reasons, the Court should deny the Receiver's Motion in its entirety.

**B. Selling Mr. Barton's Personal Residence Is Unnecessary**

The Receiver also has not advanced a legitimate reason for liquidating Mr. Barton's residence. Notwithstanding that Mr. Barton's house has no connection to the subject matter of this lawsuit (or any Wall lender funds), the sale of the house will not materially advance any need of the receivership estate. As the Receiver contends, the sale of the home at its current price will only net "between $100,000 and $200,000" after paying off property liens, taxes, closing costs, and broker commissions. *See* Receiver's Initial Status Report [ECF No. 67] at 15-16. The actual proceeds of the sale would be even less, as the Receiver also intends to charge his legal fees, appraisal costs, and other expenses against the recovery on the sale, ultimately leaving the net benefits of the transaction at near net zero.

While the Receiver contends that creditor claims, administrative expenses, or "current economic uncertainty" justify a rapid sale of the home, those concerns are unmeritorious. As an initial matter, the Court has stayed all creditor claims against the estate and its property. *See, e.g.,* Receivership Order [ECF No. 29] ¶¶ 15, 32, 34-35. Further, any complaints by the Receiver regarding his ability to maintain Mr. Barton's home are issues of his own doing. A better alternative to selling Mr. Barton's house—one that would alleviate the Receiver's

complaints about cash flow and market uncertainty, *see* Mot. at 5—would be converting the property into an income-generating asset for the estate, such as seeking permission to rent the house back. Doing so would address the Receiver's liquidity concerns while also avoiding any waste from a below-market sale or injustice from a sale that the Fifth Circuit later determines on appeal to be wrongful. However, far from seeking to manage and monetize the asset without selling it, the Receiver has removed the home's resident (Mr. Barton) and made no attempt to find a different tenant.

Further, this property is Mr. Barton's sole personal residence, not a business endeavor linked to his real estate businesses. Its ownership by a special-purpose corporation is a recent development, *see* App. 004 (showing 2022 taxes assessed against Timothy Barton in his personal capacity for the Rock Creek property), done for personal reasons. It does not change the inherently non-business nature of the property. The Receiver's efforts to dispose of Mr. Barton's residence for non-material gain ultimately do not advance a legitimate objective of the receivership estate and will do little more than continue to penalize Mr. Barton through an unnecessarily disposal of his family home. *See L.A. Trust Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (criticizing "additional penalty" that would be effected by proposed liquidation). The Court should deny the Receiver's Motion on these grounds to avoid such a result.

### C. The Receiver's efforts to sell the property are not done at a fair price

Even if the Receiver had good cause to sell Mr. Barton's house, he should be ordered to do so at market price, rather than through a fire sale. Yet, in the current Motion, the Receiver proposes to effect a sale transaction that would dispose of the approximately 3,840 square foot home for $1.4 million, or **$365 per square foot**. Mot. at 3 (listing sale price); Compass, 4107 Rock Creek Drive, Dallas, TX 75204, https://www.compass.com/listing/4107-rock-creek-drive-

dallas-tx-75204/1176276111269130409/ (last visited Dec. 11, 2022) (listing square footage). That price per square foot is significantly lower than current listings and recent sales in the surrounding area. A sampling of nearby comparable properties is illustrative:

- 4111 Rock Creek Dr., the home *next door* to Mr. Barton's home, with 4,601 square feet, is currently listed at $2.995 million, or **$651 per square foot**, which is $286 per square foot greater than the Receiver's attempted sale price for Mr. Barton's house.[2]
- 15 Turtle Creek Bend, a nearby home with 3,900 square feet, was sold earlier this year with a listing price of $1.975 million, or **$506 per square foot**, which is $141 per square foot greater than the Receiver's attempted sale price for Mr. Barton's house.[3]
- 3832 Turtle Creek Dr., another nearby home with 3,948 square feet, is listed at $2.699 million, or **$684 per square foot**, which is $319 per square foot greater than the Receiver's attempted sale price for Mr. Barton's house.[4]

The Receiver's contracted price for the property is, therefore, much lower, in price-per-square-foot terms, than comparable properties. Moreover, the sale price is more than $600,000 shy of the $2.061 million appraisal of the property that Mr. Barton obtained in June 2022. *See* App. to Response in Opposition to Motion to Supplement Order Appointing Receiver [ECF No. 58] at 7. And this prior appraisal was rendered using a conservative estimation of the home's square footage, meaning the prior appraised value was actually understated. Had the Receiver

[2] Ebby Halliday, 4111 Rock Creek Dr, Dallas, TX 75204 https://www.ebby.com/ListingDetails/4111-Rock-Creek-Drive-Dallas-TX-75204/20085701 (last visited Dec. 11, 2022).

[3] Zillow, 15 Turtle Creek Bend, Dallas, TX 75204 https://www.zillow.com/homedetails/15-Turtle-Creek-Bnd-Dallas-TX-75204/26692855_zpid/ (last visited Dec. 8, 2022).

[4] Briggs Freeman, 3832 Turtle Creek Dr, Dallas, TX 75219, https://www.briggsfreeman.com/listing/20110818/3832-turtle-creek-drive-dallas-tx-75219/ (last visited Dec. 11, 2022).

nonetheless used the prior appraisal to price the Rock Creek property for sale, the asking price would have been approximately $536 per square foot, which is still lower than the house next door—$651 per square foot.

The Receiver's effort to sell the Barton residence for less than market value is not meaningfully supported by the documentation submitted with the Receiver's Motion. Although the Receiver submits three supposedly independent appraisal reports, the contents of these reports undermine their valuation conclusions. Among other things, the reports contain factual inaccuracies about Mr. Barton's residence. This includes each appraiser making differing assertions regarding the square footage of the property or other inaccurate descriptions of the property's features. The reports misstate basic facts such as the number of rooms in the house (sometimes 9, sometimes 11 depending on which report), inconsistent descriptions of the condition or quality of the home (sometimes good or updated, but other times just average); and even differing assertions about the types of A/C systems or other features of the residence. In one of the appraisals, the report actually states two different square footage calculations for the same house, claiming in one instance that the house is 4,057 square feet but later that the house is only 3,681 square feet. *Compare* Receiver's App. [ECF No. 77] at 26, *with id.* at 27.

Notably, each of the appraisal reports attempts to render an estimation regarding the value of each property using a sales comparison approach, but their analyses are flawed. The sales comparison approach is performed by comparing market value data from other properties in the same vicinity to the target house—here, Mr. Barton's Rock Creek Drive property. However, in performing the sales comparison methodology, each of the appraisers relies on comparable properties that do not directly compare. For example, in certain parts, the appraisers attempt to compare Mr. Barton's single-family home to different forms of residential property,

such as townhomes. In other instances, the appraisers cite to home values in different neighborhood areas near the Tollway in an effort to support conclusions about the value of Mr. Barton's home that is located between Turtle Creek and US-75. *See, e.g.,* Receiver's App. [ECF No. 77] at 40 (showing that at least two of the comparable properties are in a much different neighborhood area than the Rock Creek Drive residence). Even worse, every single one of the appraisal reports attempts to use outdated sales data—even sales data from 2021—as a basis to value Mr. Barton's home as of the November 2022 contract date. *See, e.g.,* Receiver's App. [ECF No. 77] at 26, 47, 75 (citing to 2021 residential sales data). This is an incredible error in methodology, as Dallas home prices have risen significantly in the past year. *See* Is the Dallas Housing Market Slowing Down?, Norada Real Estate Investments, https://www.norada realestate.com/blog/dallas-real-estate-market/#:~:text=According%20to%20Zillow%2C%20the %20typical,Sept%202022%20to%20Sept%202023 (Nov. 10, 2022) ("According to Zillow, the typical home value for the Dallas-Forth Worth-Arlington area rose by a whopping 20.4% in the past 12 months . . . ."); Here are the 50 Dallas-Fort Worth Neighborhoods where home values are the highest, WFAA, https://www.wfaa.com/article/money/business/dallas-fort-worth-neighborhoods-where-home-values-are-the-highest/287-5b672914-83b7-44c7-bcd2-5b20658e3f de (Oct. 6, 2022) ("Typical home values in Highland Park and University Park have each risen 24% in the past year . . . .").

The appraisal reports also fail to make necessary adjustments in their calculations of home value based on material differences between the nearby comparison properties and the Rock Creek Drive property. Often, the reports attempt to identify reasons for reducing their valuations of Mr. Barton's residence, for example, claiming that the comparison properties are superior to his residence. In many other instances, the appraisal reports fail or refuse to recognize

that significant aspects of Mr. Barton's house make it superior to the comparison properties. In one glaring example, one appraiser makes ***no adjustment whatsoever*** to account for one comparable property lot being described as ***less than 25% the size*** of Rock Creek Drive property. *See* Receiver's App. [ECF No. 77] at 74. In another instance, the appraiser makes no adjustment to account for one of the comparable properties being 57 years older than the Rock Creek property. These are material defects in the appraisers' analyses and render the appraisers' conclusions about property values unreliable.

Finally, the Receiver attempts to sell Mr. Barton's house "as is" without providing any of the required disclosures and statutory warranties that would normally add significant value to the property sale. *See* ECF No. 77 at 18. Thus, in addition to concerns with the listing price, there are significant concerns with the facts and circumstances leading up to the Receiver's sale offer and ultimate contract for sale. Additional time and discovery would be needed to resolve these issues and to ensure that the home is sold on more appropriate terms. At this time, however, the identified concerns raise significant questions that should stop the sale on the terms and price on which it is proposed by the Receiver.

It is no answer that the Receiver has not received any higher offers due to the listing. Receiver's Mot. [ECF No. 76] at 4. It is apparent to any buyer doing the slightest bit of research that this house is subject to an ongoing legal dispute and that the Receiver's authority to engage in prejudgment liquidation is tenuous at best. The prospect of investing time and resources in an offer that should not and very likely will not go through, including the appellate process, is no doubt going to drag on the price that the Receiver can command in these circumstances.

## III. CROSS-MOTION FOR ORDER PROHIBITING SALE OF PERSONAL PROPERTY LOCATED AT 4107 ROCK CREEK DRIVE

Defendant Barton separately moves for a Court order prohibiting the sale of the personal property currently located in the residence at 4107 Rock Creek Drive. Mr. Barton and his family were summarily removed from the property mere days after the receivership began. Since that time, the Receiver has prevented Mr. Barton and his children (Victoria and Max) from recovering the remainder of their personal belongings from the house. These items have included, inter alia, sentimental items, dishes, towels, furniture, bedsheets, and other family belongings. Indeed, in a recent filing from just today, the Receiver expressly disclosed his efforts to sell many of these very items. *See* Notice of Intended Sale of Personal Property [ECF No. 89]. Mr. Barton thus moves for relief to make clear that the Receiver has no authority or legal basis to sell this property.

Most important, the Order Appointing Receiver does not place Mr. Barton or his personal belongings into receivership. *See* Order Appointing Receiver [ECF No. 29] at 2–3 (placing only entities into receivership). The Order only authorizes the Receiver to take possession of "personal property [belonging to] the Receivership Entities." *Id*. at 9. Thus, any of Mr. Barton's personal property—to say nothing of the property belongings of Max, Victoria, or others—is off-limits and cannot legally be sold.[5] Nor is there any reason for the Receiver to contend that these

[5] To the extent the Receiver may argue that Mr. Barton has abandoned his personal property, that argument is frivolous. Affirmative abandonment requires "the relinquishment of the possession of a thing by the owner with the intention of terminating his ownership, but without vesting it in any one else." *Trenolone v. Cook Expl. Co.*, 166 S.W.3d 495, 500–01 (Tex. App. 2005) (citation omitted). Mr. Barton and his family were removed pursuant to a *court order*, and have been impeded in their efforts to obtain their personal property from the residence. But, in the meantime, they have continued to assert their ownership of the personal property remaining within the house. There has been no affirmative act of abandonment. Nor can the property be presumed abandoned, as none of the various requirements for such a presumption have been met. Tex. Prop. Code § 72.101 (detailing those requirements).

personal belongings are somehow property of a corporate receivership entity. The Receiver's only conceivable basis for this assertion is that they happened to be located in Mr. Barton's residence. Even though his residence is owned by a special purpose corporation of which he is sole beneficiary, that provides no grounds to argue that the personal property therein is the corporation's. The corporation's sole purpose is to hold the real property constituting Mr. Barton's sole residence. Where else would Mr. Barton put his personal belongings? A family's personal belongings, towels, dishes, bedsheets, and other sentimental belongings accumulated over the course of a lifetime are inherently non-corporate property. People simply keep their personal possessions in their home.

If the Court were nonetheless to accept the Receiver's tenuous position that the Bartons' personal belongings are property of the receivership entities, the result would be the certain wrongful and punitive sale of these items with no meaningful benefit to the estate. A Court order should prevent such an outcome from occurring.

It should be made clear that the Receiver cannot backend a personal property sale into his present motion practice for the sale of the residence. At a minimum, the contract documents attached to the Motion do not contemplate the sale of any personal assets. The contract itself defines the property to be sold as "[t]he land, improvements and accessories." Sale Contract (Receiver's App. at 6). This term does not mention or contemplate the inclusion of the Bartons' individual property, but rather typical real property fixtures, improvements, and accessories such as kitchen stoves, fire detectors, chandeliers, security systems, and window shades. *See* Sale Contract (Receiver's App. at 6). Notably absent from the contract documents is a Non-Realty

Items Addendum,[6] which is the industry-standard form that the Receiver would need to add to the residential sale contract to include personal property with the sale of the residence.

Critically, the current residential sale contract cannot include personal property and still comply with 28 U.S.C. § 2001. This is because none of the Receiver's appraisal reports submitted to the Court in accordance with that statute place a value on the personal property in the home. *See also* Waldron Appraisal (Receiver's App. at 32) ("No personal property was considered . . . ."); Hagen Appraisal (Receiver's App. at 53) ("No personal property was considered."); Milliorn Appraisal (Receiver's App. at 88) ("Personal property has been excluded . . . ."). If for some reason the Receiver has given the new buyer the impression outside of the contract documents that the Bartons' personal property is part of the residential sale, there is a defect in the sale documents and appraisal materials presented to the Court. At a minimum, the purported $1,400,000 contract price is not actually the sale price for the home, but instead captures thousands of dollars in additional property that has not been addressed. And new valuations of this additional property need to be rendered and submitted to the Court before a more comprehensive sale could move forward and be approved.

## IV. CONCLUSION & PRAYER

For the foregoing reasons, Defendant Timothy Barton respectfully requests that the Court deny the Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property [ECF

---

[6] That addendum is, as intended by the Texas Real Estate Commission and by way of common practice, attached to any contract for the sale of property "if the parties need to add additional items of personal property that are to stay with the property that are not already listed in paragraph 2B or 2C of the purchase contract." *See* Tex. Real Est. Commission, *Non-Realty Items Addendum*, https://www.trec.texas.gov/forms/non-realty-items-addendum.

No. 76], grant his Cross-Motion to Prohibit Sale of Personal Property Located at Rock Creek Home, and grant such other and further relief that may be merited.

Dated: December 13, 2022

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to N.D. Tex.)*
medney@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice)*
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
Javan Porter
State Bar No. 24116912
javan.porter@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

**CERTIFICATE OF SERVICE**

On December 13, 2022 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney

# Tab 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | |
| *Defendants,* | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| *Relief Defendants.* | § | |

**RECEIVER'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT OF APPRAISERS, APPROVAL OF APPRAISALS OF ROCK CREEK PROPERTY, ETC. AND RESPONSE TO MOTION TO PROHIBIT SALE OF PERSONAL ITEMS**

Cort Thomas, as Receiver, files this Reply in Support of his Motion for Appointment of Appraisers, etc. (the "Motion") [Dkt. 76], addressing arguments raised in the Response to the Motion (the "Response") [Dkt. 91] and in support, respectfully shows the Court as follows:

**SUMMARY**

In a continued effort to regurgitate arguments that have already been rejected or refuted, Barton's Response ignores evidence, prior briefing, and this Court's Orders, but provides no

evidence or justification for rejecting the sale at issue. To minimize the continuing burden on the estate created by responding to extraneous and incorrect arguments, this Reply addresses only those arguments (1) that have not already been adequately addressed; and (2) which are necessary to the Court's resolution of the pending motion.

**A. The Court Possesses Continuing Jurisdiction to Oversee and Administer the Receivership**

Barton contends the Receiver "lacks *appropriate* authority" to sell the Rock Creek Property and by extension, that the Court lacks authority to authorize the sale. *Response* pp. 3-4. His arguments ignore the authorities cited by the Receiver on pages 8-9 of the Response to Barton's Motion to Stay ("Response to Motion for Stay") [Dkt. 84], and misconstrue the authorities on which Barton relies. *Response* p. 4. *Compare SEC v. Am. Bd. Of Trade, Inc.*, 830 F.2d 431, 436-37 (2d Cir. 1987) (criticizing receiver's liquidation because of the Second Circuit's well-publicized strong preference for bankruptcy proceedings); *SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) (concluding liquidation of an entire company was premature, but without any discussion of distressed assets in a receivership estate strapped for cash necessary to maintain the value of other assets); *with FTC v. Consumer Defense, LLC*, No. 2:18-CV-30 JCM (PAL), 2019 WL 266287, at *4 (D. Nev. Jan. 18, 2019) (authorizing receiver's sale before entry of final judgment where "the properties [under receivership] are likely to incur further obligations, such as common assessments and property taxes, that will unnecessarily diminish the value of the estate"); *SEC v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1036 (C.D. Cal. 2001) (similar).

Similarly, in seeking to obtain the automatic stay Rule 62(c) expressly denies[1] and which this Court has likewise not granted despite Barton' pending Motion for Stay [Dkt. 71] Barton contends this Court is divested of jurisdiction to manage the Receivership Estate while he appeals the Receivership Order. *Response* p. 5. In support of his argument, Barton cites *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989) and includes a partial and misleading quote from that case. The full quote amplifies that case's application to interlocutory appeals of *injunctions*:

> Having reviewed the existing case law throughout the circuits and paying proper respect to Rule 62(c),we are persuaded that the powers of the district court *over an injunction* pending appeal should be limited to maintaining the status quo and ought not to extend to the point that the district court can divest the court of appeals from jurisdiction while the issue is before us on appeal.

*Id.* (emphasis added).

A receivership order, however, is not an injunction nor is it intended solely to maintain the status quo. Instead, it mandates the Receiver's ongoing activity in administering the estate and by extension requires the Court's on-going supervision. *See Receivership Order* ¶¶ 6, 13, 18, 28, 31, 37-45, 56-58. Nor are orders appointing receivers and injunctions treated similarly for purposes of interlocutory appeal. As recently observed by the Eleventh Circuit, the difference between 28 U.S.C. §§ 1292(a)(2) and 1292(a)(1) reveals the different treatment each receives and thus by necessity, also informs the reach of the resulting jurisdictional divestiture based on the appeal of either type of order:

> "That provision [1292(a)(1)] more broadly confers jurisdiction over orders 'granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.' 28 U.S.C. § 1292(a)(1). It thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or 'dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review

[1] "**Stay of an Injunction, Receivership, or Patent Accounting Order.** Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken: **(1)** an interlocutory or final judgment in an action for an injunction or receivership; . . ." FED. R. CIV. P. 62.

> of interim receivership-related orders, it could have included similar language in § 1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022).

A district court's expansive judicial discretion in overseeing a receivership also informs the different treatment afforded interlocutory appeals of injunctions as compared with receivership orders. *See Netsphere, Inc. v. Baron*, 799 F.3d 327 (5th Cir. 2015) ("We have also refused to find jurisdiction over other orders issued in the course of a receivership . . . . So have our sister circuits."); *see also United States v. Solco I, LLC*, 962 F.3d 1244, 1250 (10th Cir. 2020) ("Congress, however, did not intend § 1292(a)(2) to burden the appellate courts with ongoing supervision of every action a receiver might be ordered to take.") (internal quotation and alteration omitted); *SEC v. Enterprise Trust Co.*, 559 F.3d 649, 652 (7th Cir. 2009) (discussing district court's broad judicial discretion to manage a complex receivership and determine the appropriate path to take in addressing and resolving claims against the assets of the estate, in accordance with due process and judicial economy).[2]

In contrast, if this Court were automatically divested of jurisdiction to enter orders administering the Receivership, Rule 62(c) would have no meaning and litigants would automatically evade the carefully circumscribed interlocutory appellate review of only (1) orders appointing receivers, (2) refusing to wind up a receivership, and (3) refusing to take steps to accomplish the purpose of winding up a receivership, by staying *every* order necessary to

[2] Indeed, at least one district court concluded it possessed jurisdiction to sell receivership assets, even residences into which defendants and their non-defendant relatives injected "sentimental value" despite ownership held by entities, during the pendency of an appeal. *United States v. Bradley*, 513 F. Supp. 2d 1371, 1380 (S.D. Ga. 2007), *objections overruled*, No. 405CR059, 2007 WL 1703232 (S.D. Ga. June 11, 2007) (denying stay of sale of non-exempt real property during appeal of final judgment, despite "injection of sentimentality" by defendant's wife, who was not convicted of any crime, into the residence owned by corporate entity).

administer a receivership during an appeal of the Receivership Order. *See Solco, I, LLC,* 962 F.3d at 1250. Common sense and statutory interpretation demand a contrary conclusion.

Despite the interlocutory appeal,[3] this Court possesses continuing jurisdiction to administer the receivership estate and to thus to enter orders in furtherance of that necessary activity, including approval of sales. *See SEC v. Lauer*, No. 03-80612-CIV, 2015 WL 11005004, at *2 (S.D. Fla. Nov. 25, 2015) ("A notice of appeal [involving asset freeze, venue, disgorgement and other matters] does not, however, divest the district court of jurisdiction over other aspects of the case, such as administration of the Receivership estate, a matter that is not related to or does not affect the issues on appeal."); *see also, e.g., SEC v. Ahmed*, 2020 WL 5951484 * 2, No. 3:15CV675 (D. Conn. Oct. 8, 2020) (declining to stay motion to approve award of receiver's fees pending appeal of receivership order).

**B. Selling the Rock Creek Property, Immediately, Is in the Best Interest of the Estate and Preserves the Equity that Currently Exists in the Property**

Despite Barton's protests to the contrary, selling the Rock Creek Property sooner rather than later serves the best interest of the estate. As the Court is surely aware (and can judicially notice) during 2022, and particularly the summer and fall of 2022, interest rates have risen.[4] That trend, and perhaps other issues as well, have slowed sales and the climbing value of real estate in North Texas and elsewhere.[5] This shrinking market is only compounded by the growing lien on the Rock Creek Property that will eventually eat any equity in the property (the interest-only loan

---

[3] Again, no appellate jurisdiction exists over any order save the Order Appointing Receiver. *See Complete Bus. Sols. Group, Inc.*, 44 F.4th at 1332 (concluding no jurisdiction existed over interlocutory appeal of order expanding scope of receivership to include additional entities).

[4] https://time.com/nextadvisor/banking/fed-meeting-interest-rate-hike-december-14-2022/#:~:text=The%20Federal%20Reserve%20just%20raised,consecutive%20rate%20hike%20for%202022.

[5] *See* https://www.wfaa.com/article/money/business/dfw-home-sales-down-14-price-growth-slowing/287-e47ee01e-fadf-4c2a-b43c-d91de91d1eea.

on the property has an interest rate of approximately 10%, which the lender claims is now 18% because of non-payment of interest prior to the Receivership, which non-payment has continued because of the limited amount of cash on hand). Further draining receivership assets are payments of insurance, utilities, and other expenses related to the Rock Creek Property. Barton ignores these facts. He also ignores his refusal to provide information necessary for the Receiver to identify and sell other assets, and the fact that *he had listed the property for sale immediately before the Receiver's appointment. Response to Motion for Stay,* Dkt. 84, pp. 7-9.

Similarly, Barton's contention that a net recovery of $100,000 to $200,000 "will not materially advance" the needs of the receivership estate or is akin to "squeezing pennies" is misguided. For one, as outlined extensively in prior briefing, upon appointment and continuing to this day, the Receiver has faced a dearth of cash that forced him to selectively pay utility, insurance, and other payments on the various properties within the Receivership. While the Receiver hopes to secure additional funds in the near future (e.g., a forthcoming motion to ratify a $750,000 agreement), past and continuing bills as well as the other ongoing costs of administering the Receivership Estate necessitate the Receiver's exploration of all potential sources of capital. The fact that a residential property is simpler and quicker to sell than commercial properties is not indicative of bias, rather it demonstrates the Receiver's continued efforts to most expeditiously bring cash into the estate.

Barton's efforts to minimize the net result of this sale may also rest on his false assertion that just a few of the heavily encumbered assets in the estate will suffice to reimburse defrauded investors and dozens of creditors, including those who hold multi-million dollar judgments against him and receivership entities. *See Response to Motion for Stay*, Dkt. 84, pp. 5-6. On the contrary, the net recovery from the sale of the Rock Creek Property will allow the estate to pay for continuing

expenses necessary to maintain and administer other properties whose value cannot be preserved absent cash and the Receiver's efforts. *Appendix in Support of Motion*, Dkt. 77, ¶ 12.

Finally, while Barton now contends the Receiver should have sought permission to rent the property to Barton, he provides no evidence that (1) Barton made a bona fide offer to rent the property or would have agreed to such a proposal; (2) Barton would not have continued moving art and other assets out of the property while occupying it; (3) that the source of funds to pay such rent would not have come from the substantial transfers out of the Receivership Entities' bank accounts in the months leading up to the Receivership; or (4) that *monthly* rent in an amount far less than the $100,000-$200,000 Barton derides as minimal would meet the $11,750 in monthly interest payments due under the loan, let alone alleviate the need for cash sufficient to pay the estate's continuing and significant obligations.

The sale of the Rock Creek Property, immediately and on the terms submitted with the Motion, is in the best interest of the Receivership Estate.

**C. The Sales Price Of $1.4 Million Is Reasonable And Statutorily Sufficient**

Barton's attacks upon the legitimacy of the three independent appraisals secured by the Receiver are similarly unavailing. *See Response* pp. 8-12. First, 28 U.S.C.§ 2001 merely mandates that the Court "shall appoint three disinterested persons to appraise" the Rock Creek Property. Barton makes no attempt to attack the independence of these appraisers, nor does he seek to attack their qualifications. The three appraisers are qualified, respected members of their profession, and the Court should accept their appraisals accordingly.

Second, while Barton goes to great lengths to question certain portions of the appraisals, he offers no competing, current appraisal(s) of his own. Instead, he references an appraisal dated June 1, 2022 that the Receiver has already pointed out employees a cost or replacement approach, rather than a market or sales comparison approach. *See* Motion ¶ 10 & n.6. However, even if the

Court were to determine this other appraisal and its valuation methodology were appropriate, the sales price of $1.4 million still exceeds the two-thirds threshold of Barton's own appraisal, and the sale would still be confirmable under 28 U.S.C. § 2001.

Third, Barton wholly ignores the fact that the Receiver engaged in standard marketing process with a well-known local broker and, while he received multiple offers during the time the property was on the market, the sales price of $1.4 million was the high bid. In other words, the market itself has confirmed the legitimacy and accuracy of the Receiver's own appraisers.

Fourth, rather than secure his own current appraisal(s) based upon comparable sales, Barton instead cites to the list price of three properties he believes are better comparables to the Rock Creek Property. Besides the fact that Barton and his lawyers make no attempt to demonstrate how they are qualified to opine as an appraiser, their arguments ignore, among other things, that (a) they are looking at list prices, not sales prices; (b) that the two properties currently listed for sale have been on the market for five and six months, respectively; (c) that all comparate sales were from the last twelve months and are not "outdated;" and (d) that a simple review of the photos from each property compared to those of the Rock Creek Property show a large disparity in the quality and attractiveness of the properties.

In short, while Barton contends that the Receiver is selling the Rock Creek Property "for less than market value," the Receiver is in fact selling the property for more than its average appraised value and at a price supported by the offers received from prospective buyers. The Court should approve the sale.

**D. Disposition Of Personal Property Is Necessary the Before the December 28 Closing**

On December 13, 2022, as required by 28 U.S.C. § 2004 and the Order Governing Administrative Procedures, ("Administrative Order") Dkt. 63, the Receiver filed a Notice of Intended Sale of Personal Property, regarding sale of the Furnishings of the Rock Creek Property.

Dkt. 89. Barton's Response includes a cross-motion to stay the sale of the furnishings in the Rock Creek Property (the "Furnishings"), which the Court should treat as an objection contemplated by the Administrative Order. Dkt. 63, ¶ A.4.c.

As expressly stated in the Notice and contrary to Barton's assertions, the contract for sale of the real estate does not encompass sale of the Furnishings. Dkt. 89, p. 2 ("The Furnishings and Personal Items are not included in the Rock Creek Property sale and must be removed or sold prior to closing the sale."). Nor does the sale of the Furnishings encompass certain "personal items" such as clothing, books, and mattresses. *Id.* The Declaration submitted in support of the Response to Motion For Stay, (the "Declaration") Dkt. 85, also demonstrates the Receiver's uncontroverted discovery that the majority of the contents were purchased within the last two years *by a Receivership Entity.* Dkt. 85, pp. 6-7.

As discussed in the Notice and the Declaration, the Receiver has offered multiple times and in multiple ways to preserve the Furnishings and the Personal Items for Barton and his adult children. Dkt. 85, pp. 6-7. But Barton offers absolutely no response to those proposals, including any evidence or indeed any argument, that Barton or his adult children rather than a Receivership Entity purchased these items, instead asking the Court to presume that these are his "personal belongings" because they are located in a property Barton treated as his personal residence but which was owned by a Receivership Entity. *Response*, p. 13.

While the sale of the Furnishings will net only $20,000—a significant amount when considering the amount of cash in the Receivership's bank accounts today—the items must be removed from the property before the December 28, 2022 closing on the real estate. The proposed sale accomplishes removal in the most efficient manner while also benefiting the estate. The Court should overrule the objection and motion to stay sale of the Furnishings.

## CONCLUSION

Barton's Response provides no basis for rejection of a sale that will provide desperately needed cash for the continuing maintenance and management of other Receivership Properties. The Court possesses jurisdiction to approve the sale, the cash-poor condition of the Receivership Estate informs the timing of the sale, rather than any alleged personal attack or improper scheme, and the sales price is reasonable and well-within the statutorily required 2/3 of the average appraised value of the property. The Court should appoint the three appraisers whose appraisals were submitted with the Motion, approve the appraisals, and following the statutorily mandated hearing, approve the sale of the Rock Creek Property.

Finally, Barton's complaints about sale of the Furnishings have no merit, particularly given Barton's failure and refusal to provide *any* evidence, indeed even argument, that he rather than a Receivership Entity purchased the Furnishings, and, his refusal to even discuss an agreement regarding temporary storage of the Furnishings. The Court should deny Barton's motion to stay the sale of the Furnishings and confirm that sale as well.

Respectfully submitted,

By: */s/ Charlene C. Koonce*

Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.