No. 22-11226

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee*,

v.

TIMOTHY BARTON,
*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:22-cv-02118-X

**BRIEF OF APPELLEE**
**SECURITIES AND EXCHANGE COMMISSION**

MEGAN BARBERO
*General Counsel*

MICHAEL A. CONLEY
*Solicitor*

DOMINICK V. FREDA
*Assistant General Counsel*

EZEKIEL L. HILL
*Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.7724 (Hill)
hillez@sec.gov

# CERTIFICATE OF INTERESTED PERSONS

*Securities and Exchange Commission v. Timothy Barton*, No. 22-11226

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. 126 Villita LLC, receivership entity
2. 126 Villita Towers, LLC (Delaware), receivership entity
3. 2999 Acquisitions, LLC (Delaware), receivership entity
4. 2999 Middlebury, LLC (Delaware), receivership entity
5. 2999 Roxbury, LLC (Delaware), receivership entity
6. 2999TC Acquisitions MZ, LLC, receivership entity
7. 2999TC Acquisitions, LLC, receivership entity
8. 2999TC Founders, LLC (Delaware), receivership entity
9. 2999TC JMJ CMGR, LLC (Delaware), receivership entity
10. 2999TC JMJ Equity, LLC, receivership entity
11. 2999TC JMJ MGR, LLC (Delaware), receivership entity
12. 2999TC JMJ, LLC (Delaware), receivership entity
13. 2999TC JMJ, LLC (Texas), receivership entity
14. 2999TC LP, LLC (Delaware), receivership entity

15. 2999TC MM, LLC, receivership entity

16. 2999TC MZ, LLC (Delaware), receivership entity

17. 3820 Illinois, LLC, interested party

18. Aledo TX, LLC, receivership entity

19. Adam and Reese LLP, counsel for respondent Bank of America, N.A.

20. AVEG WW, LLC (Delaware), receivership entity

21. AVG West, LLC, receivership entity

22. Bank of America, N.A., respondent

23. Barbero, Megan, counsel for plaintiff-appellee Securities and Exchange Commission

24. Barton Texas Water District, LLC, receivership entity

25. Barton Water District, LLC (Delaware), receivership entity

26. Barton, Maximilien, interested party

27. Barton, Timothy, defendant-appellant

28. Baum, Nathan B., counsel for interested party Maximilien Barton and receivership entities Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, Titan Investments LLC, TC Hall, L.L.C., and Titan 2022 Investment, L.L.C.

29. BC Acquisitions, LLC (Delaware), receivership entity

30. BEE2019, LLC, receivership entity

31. Bernstein, Keefe M., counsel for plaintiff-appellee Securities and Exchange Commission

32. BM318 LLC, receivership entity

33. Broadview Holdings, LLC (Texas), receivership entity

34. Broadview Holdings Trust, receivership entity

35. Brown Fox PLLC, counsel for receiver Cortney C. Thomas

36. BSJ Trading, LLC, receivership entity

37. BUILD VIOLET, LLC, receivership entity

38. Carnegie Development, Inc., receivership entity

39. Carnegie Development, LLC, defendant and receivership entity

40. Chandler & Shavin PLLC, counsel for interested party Dhiraj Ramolia

41. Chandler Law PC, counsel for interested party Dhiraj Ramolia

42. Chandler, Corinna P., counsel for interested party Dhiraj Ramolia

43. Conley, Michael A., counsel for plaintiff-appellee Securities and Exchange Commission

44. Cooke, Chris, counsel for interested party Maximilien Barton and receivership entities Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, Titan Investments LLC, TC Hall, L.L.C., and Titan 2022 Investment, L.L.C.

45. Curran, Thomas J., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

46. D4AT, LLC, receivership entity

47. D4AVEG, LLC, receivership entity

48. D4BM, LLC, receivership entity

49. D4BR, LLC (Texas), receivership entity

50. D4DS LLC, receivership entity

51. D4FR LLC, receivership entity

52. D4IN, LLC (Texas), receivership entity

53. D4KL LLC, receivership entity

54. D4MC, LLC (Texas), receivership entity

55. D4OP, LLC, receivership entity

56. D4OPM, LLC (Texas), receivership entity

57. D4SMC, LLC, receivership entity

58. D4WP, LLC, receivership entity

59. DeYoung, Kyle M., counsel for interested party HNGH Turtle Creek, LLC

60. Dallas Real Estate Investors, LLC, receivership entity

61. Dallas Real Estate Lenders, LLC (Delaware), receivership entity

62. Dallas Real Estate Management, LLC, receivership entity

63. Dingman, Michael C., counsel for defendant-appellant Timothy Barton

64. DJD Land Partners, LLC, relief defendant and receivership entity

65. Edney, Michael J., counsel for defendant-appellant Timothy Barton

66. Enoch Investments LLC, receivership entity

67. Etri, James E., counsel for plaintiff-appellee Securities and Exchange Commission

68. FHC Acquisition LLC, receivership entity

69. Five Star GM, LLC (Delaware), receivership entity

70. Five Star MM, LLC (Delaware), receivership entity

71. FIVE STAR MM, LLC (Texas), receivership entity

72. Five Star TC, LLC (Delaware), receivership entity

73. Freda, Dominick V., counsel for plaintiff-appellee Securities and Exchange Commission

74. Fu, Haoqiang, defendant

75. Fullington, Ian E., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

76. Gillespie Villas LLC, receivership entity

77. Glenwood (18340) Property, LLC (Delaware), receivership entity

78. Goldmark Hospitality LLC, receivership entity

79. Hale, Hon. Harlin, mediator

80. Heiskell, Michael P., counsel for defendant Stephen T. Wall

81. Hicks, Jr., George W., counsel for counsel for interested party HNGH Turtle Creek, LLC

82. Hill, Ezekiel L., counsel for plaintiff-appellee Securities and Exchange Commission

83. HNGH Turtle Creek, LLC, interested party

84. Holland & Knight LLP, counsel for defendant-appellant Timothy Barton

85. HR Sterling, LLC, receivership entity

86. Huffman, Edwin A., counsel for defendant-appellant Timothy Barton

87. Hunter, Renee M., counsel for intervenor United States of America

88. Hunton Andrews Kurth LLP, counsel for defendant-appellant Timothy Barton

89. Illuminate Dallas, LLC (Texas), receivership entity

90. JB Special Asset, LLC, receivership entity

91. JMJ Acquisitions LLC, receivership entity

92. JMJ Acquisitions Mgmt, LLC, receivership entity

93. JMJ Aviation, LLC (Texas), receivership entity

94. JMJ BLUES TX, LLC, receivership entity

95. JMJ Centre, LLC, receivership entity

96. JMJ Development Brasil, LTDA, receivership entity

97. JMJ Development Fund, receivership entity

98. JMJ Development Fund, Inc., receivership entity

99. JMJ Development LLC, receivership entity

100. JMJ Development, Inc., receivership entity

101. JMJ EB5 Fund GP, LLC (Delaware), receivership entity

102. JMJ EB5 Fund, LP (Delaware), receivership entity

103. JMJ Holdings US LLC, receivership entity

104. JMJ Holdings USA, Inc., receivership entity

105. JMJ Holdings, LLC, receivership entity

106. JMJ Home Building Inc. (Nevada), receivership entity

107. JMJ Hospitality General Trading FZE, receivership entity

108. JMJ Hospitality UAE, receivership entity

109. JMJ Hospitality, LLC, receivership entity

110. JMJ Investments Limited, receivership entity

111. JMJ Land Acquisition, Inc (Nevada), receivership entity

112. JMJ Land Development, Inc (Nevada), receivership entity

113. JMJ Land Venture, LLC, receivership entity

114. JMJ Mezzanine, Inc (Nevada), receivership entity

115. JMJ MF Development, LLC, receivership entity

116. JMJ Multifamily, Inc (Nevada), receivership entity

117. JMJ Offshore, LTD, receivership entity

118. JMJ Regional Center, LLC (Delaware), receivership entity

119. JMJ Residential, LLC, receivership entity

120. JMJ Valley Center, LLC, receivership entity

121. JMJ VC Management, LLC, receivership entity

122. JMJ148, LLC (Texas), receivership entity

123. JMJAV LLC, receivership entity

124. JMJAV, LLC, receivership entity

125. JMJD4, LLC (Delaware), receivership entity

126. JMJD4Allensville LLC, receivership entity

127. JMJDWG, LLC (Texas), receivership entity

128. JMJKH, LLC, receivership entity

129. JMR100 LLC, receivership entity

130. Johnson Vaughn & Heiskell, counsel for defendant Stephen T. Wall

131. Kane Russell Coleman & Logan PC, counsel for interested party HNGH Turtle Creek, LLC

132. Kane, John J., counsel for interested party HNGH Turtle Creek, LLC

133. Kearns, David T., counsel for interested party Maximilien Barton and receivership entities Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, Titan Investments LLC, TC Hall, L.L.C., and Titan 2022 Investment, L.L.C.

134. Kirkland & Ellis LLP, counsel for interested party HNGH Turtle Creek, LLC

135. Kleinsasser, Matthias, counsel for interested party Vertical Street Ventures, LLC

136. Koonce, Charlene C., counsel for receiver Cortney C. Thomas

137. Lajolla Construction Management LLC, receivership entity

138. LC Aledo TX, LLC, receivership entity

139. LDG001, LLC, relief defendant and receivership entity

140. Lesser, Joshua A., counsel for respondent Bank of America, N.A.

141. Lynco Ventures, LLC, receivership entity

142. Lynn Investments, LLC, receivership entity

143. Mansion Apartment Homes at Marine Creek, LLC, receivership entity

144. Mansions Apartment Homes at Marine Creek LLC, receivership entity

145. Marine Creek SP, LLC, receivership entity

146. MCFW, LLC, receivership entity

147. MCRS2019, LLC (Texas), receivership entity

148. MFO Venus Development, LLC, interested party

149. Middlebury Trust (Texas), receivership entity

150. MMCYN, LLC, receivership entity

151. MO 2999TC, LLC, receivership entity

152. Moeller, Evan A., counsel for respondent Bank of America, N.A.

153. Moss & Associates, LLC, interested party

154. MXBA LLC, receivership entity

155. MXBA Managed, LLC, receivership entity

156. MXBA Services, LLC, receivership entity

157. Myra Park 635, LLC, receivership entity

158. Nealy Cox, Erin, counsel for interested party HNGH Turtle Creek, LLC

159. Norman, Brian K., counsel for interested party Southern Properties Capital, Ltd.

160. Northstar 114, LLC (Delaware), receivership entity

161. Northstar PM, LLC (Delaware), receivership entity

162. Norton Rose Fulbright US LLP, counsel for interested party Maximilien Barton and receivership entities Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, Titan Investments LLC, TC Hall, L.L.C., and Titan 2022 Investment, L.L.C.

163. O'Connell, Sean B., counsel for defendant-appellant Timothy Barton

164. One Agent, LLC (Delaware), receivership entity

165. One Agent Texas, LLC (Texas), receivership entity

166. ONE FHC, LLC (Texas), receivership entity

167. One MFD4, LLC, receivership entity

168. One Pass Investments, LLC (Delaware), receivership entity

169. One RL Trust, receivership entity

170. ONE SF Residential, LLC, receivership entity

171. Orchard Farms Village LLC, receivership entity

172. Palisades-TC, LLC, interested party

173. Patton, Jonathan R., counsel for interested party Palisades-TC, LLC

174. Peckar & Abramson, counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

175. Porter, Javan, counsel for defendant-appellant Timothy Barton

176. Ramer, Samuel, counsel for interested party Maximilien Barton and receivership entities Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, Titan Investments LLC, TC Hall, L.L.C., and Titan 2022 Investment, L.L.C.

177. Ramolia, Dhiraj, interested party

178. Reece, David B., counsel for plaintiff-appellee Securities and Exchange Commission

179. Residential MF Assets, LLC (Delaware), receivership entity

180. Ridgeview Addition, LLC (Texas), receivership entity

181. Riverwalk Invesco, LLC (Delaware), receivership entity

182. Riverwalk Opportunity Management, LLC (Delaware), receivership entity

183. Riverwalk OZFM, LLC (Delaware), receivership entity

184. Riverwalk OZFV, LLV (Delaware), receivership entity

185. Riverwalk QOZBJ, LLC (Delaware), receivership entity

186. Riverwalk QOZBM, LLC (Delaware), receivership entity

187. Riverwalk QOZBV, LLC (Delaware), receivership entity

188. Roper, Richard B., counsel for defendant-appellant Timothy Barton

189. Seagoville Farms, LLC, receivership entity

190. Securities and Exchange Commission, plaintiff-appellee

191. SF Rock Creek, LLC, receivership entity

192. Shamoun & Norman, LLP, counsel for interested party Southern Properties Capital, Ltd.

193. Shamoun, C. Gregory, counsel for interested party Southern Properties Capital, Ltd.

194. Shavin, Eliot Dana, counsel for interested party Dhiraj Ramolia

195. SK Carnegie, LLC, receivership entity

196. Southern Properties Capital, Ltd., interested party

197. Spector & Cox, PLLC, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

198. Spector, Howard Marc, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

199. Starr, Hon. Brantley, U.S. District Court Judge (N.D. Tex.)

200. STL Park, LLC (Delaware), receivership entity

201. Tamamoi, LLC, interested party

202. TC Hall, LLC, receivership entity

203. The MXBA Trust, receivership entity

204. The Timothy L. Barton Irrevocable Life Insurance Trust, receivership entity

205. Thomas, Cortney C., receiver

206. Tillotson, Jeffrey M., counsel for interested party Palisades-TC, LLC

207. Tillotson Johnson & Patton, counsel for interested party Palisades-TC, LLC

208. Titan 2022 Investment, LLC, receivership entity

209. Titan Investments LLC, receivership entity

210. TLB 2018 Trust, receivership entity

211. TLB 2019 Trust, receivership entity

212. TLB 2020 Trust, receivership entity

213. TRTX Properties LLC, receivership entity

214. TRWF LODGE, LLC, receivership entity

215. TRWF, LLC, receivership entity

216. United States of America, intervenor

217. Venus59 LLC, receivership entity

218. VenusBK195, LLC (Texas), receivership entity

219. VenusPark201, LLC (Delaware), receivership entity

220. Vertical Street Ventures, LLC, interested party

221. Villita Towers LLC, receivership entity

222. Wall, Stephen T., defendant

223. Wall007, LLC, defendant and receivership entity

224. Wall009, LLC, defendant and receivership entity

225. Wall010, LLC, defendant and receivership entity

226. Wall011, LLC, defendant and receivership entity

227. Wall012, LLC, defendant and receivership entity

228. Wall016, LLC, defendant and receivership entity

229. Wall017, LLC, defendant and receivership entity

230. Wall018, LLC, defendant and receivership entity

231. Wall019, LLC, defendant and receivership entity

232. Wielebinski, Joe, counsel for interested party Vertical Street Ventures, LLC

233. Winstead PC, counsel for interested party Vertical Street Ventures, LLC

234. WRL2019, LLC (Texas), receivership entity

The persons and entities described in the fourth sentence of Rule 28.2.1 having an interest in the outcome of this case also include (1) any additional entities that defendant-appellant Timothy Barton directly or indirectly controls, (2) investors in defendants and receivership entities Wall007, LLC; Wall009, LLC;

Wall010; Wall011, LLC; Wall012, LLC; Wall016; Wall017, LLC; Wall018, LLC; and/or Wall019, LLC, and (3) creditors of Barton-controlled entities.

/s/ *Ezekiel L. Hill*
Ezekiel L. Hill
*Attorney of Record for Appellee*
*Securities and Exchange Commission*

## STATEMENT REGARDING ORAL ARGUMENT

The Securities and Exchange Commission believes that oral argument is unnecessary for this Court's consideration of this appeal because the issues presented are controlled by settled law and adequately presented in the briefs and the record.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........ i

STATEMENT REGARDING ORAL ARGUMENT ........ xv

TABLE OF CONTENTS ........ xvi

TABLE OF AUTHORITIES ........ xviii

COUNTERSTATEMENT OF JURISDICTION ........ 1

COUNTERSTATEMENT OF THE ISSUES ........ 2

COUNTERSTATEMENT OF THE CASE ........ 3

A. The Complaint ........ 3

B. The Receivership ........ 4

C. The Sale Order ........ 5

STANDARD OF REVIEW ........ 9

SUMMARY OF ARGUMENT ........ 9

ARGUMENT ........ 11

I. This Court lacks jurisdiction over Barton's interlocutory appeal from the Sale Order. ........ 11

A. Section 1291 does not grant jurisdiction to appeal from the non-final Sale Order. ........ 11

B. The collateral order doctrine does not provide jurisdiction to review district court orders approving a receiver's sale of receivership property. ........ 13

1. The collateral order doctrine applies to classes of orders. ........ 14

2. Orders approving a receiver's sale of receivership property are potentially subject to appellate review apart from the collateral order doctrine. ....................................................15

3. Piecemeal appeals from orders approving a receiver's sale of receivership property would unnecessarily prolong proceedings and waste receivership assets. ..........................18

II. The district court acted within its discretion in approving the sale of the Property..........................................................................................20

A. The district court reasonably determined that the sale of the Property was in the receivership's best interest............................20

B. Barton's arguments are without merit..........................................22

CONCLUSION ..........................................................................................28

CERTIFICATE OF SERVICE AND FILING

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Citibank, N.A. v. Data Lease Fin. Corp.*,
645 F.2d 333 (5th Cir. 1981) ....................12

*Contimortgage Corp. v. Anglezis*,
173 F. App'x 458 (7th Cir. 2006) ....................12

*In re Deepwater Horizon*,
793 F.3d 479 (5th Cir. 2015) ....................19

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008)....................25

*First Nat. Bank of Cleveland, Ohio v. Shedd*,
121 U.S. 74 (1887)....................12

*Grace v. Vannoy*,
826 F.3d 813 (5th Cir. 2016) ....................14

*In re Am. Colonial Broad. Corp.*,
758 F.2d 794 (1st Cir. 1985)....................12

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ....................23

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC,*
285 F.2d 162 (9th Cir. 1960) .................... 12-13

*Martin v. Halliburton*,
618 F.3d 476 (5th Cir. 2010) ....................11

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009).................... *passim*

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) .................... 22, 25

*Netsphere, Inc. v. Baron*,
799 F.3d 327 (5th Cir. 2015) .......................................................... 11, 12, 13, 15

*SEC v. Barton*,
No. 22-11132 (5th Cir.)..........................................................................................5

*Sage v. Cent. R. Co. of Iowa*,
96 U.S. 712 (1877)...............................................................................................12

*SEC v. First Fin. Grp. of Texas*,
645 F.2d 429 (5th Cir. 1981) ................................................................................24

*SEC v. Forex Asset Mgmt. LLC*,
242 F.3d 325 (5th Cir. 2001) ................................................................................16

*SEC v. Safety Fin. Serv., Inc.*,
674 F.2d 368 (5th Cir. 1982) ................................................................................20

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) ..................................................................................9

*SEC v. Torchia*,
922 F.3d 1307 (11th Cir. 2019) ............................................................................16

*United States v. Antiques Ltd. P'ship*,
760 F.3d 668 (7th Cir. 2014) ................................................................................15

*United States v. Barton*,
No. 3:22-cr-00352-K (N.D. Tex.)..........................................................................4

**Other Authorities** **Page(s)**

Securities Act of 1933 (15 U.S.C. § 77a *et seq*.)

Section 17(a), 17 U.S.C. § 77q(a) ........ 3
Section 20(b), 15 U.S.C. § 77t(b) ........ 1
Section 20(d), 15 U.S.C. § 77t(d) ........ 1
Section 22(a), 15 U.S.C. § 77v(a) ........ 1

Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq*.)

Section 10(b), 15 U.S.C. § 78j(b) ........ 3
Section 21(d), 15 U.S.C. § 78u(d) ........ 1
Section 21(e), 15 U.S.C. § 78u(e) ........ 1
Section 27, 15 U.S.C. § 78aa ........ 1

Rule 10b-5, 17 C.F.R. § 240.10b-5 ........ 3

28 U.S.C. § 1291 ........ 11

28 U.S.C. § 1292(a)(2) ........ 15

28 U.S.C. § 1331 ........ 1

Fed. R. App. P. 8 ........ 17

## **COUNTERSTATEMENT OF JURISDICTION**

The district court had jurisdiction over this Securities and Exchange Commission civil law enforcement action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933, 15 U.S.C. §§ 77t(b), 77t(d), 77v(a); Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(d), 78u(e), 78aa; and 28 U.S.C. § 1331.

On December 21, 2022, Appellant Timothy Barton filed a notice of appeal (ROA.2781) from the district court's December 20, 2022 order ("Sale Order") that "approve[d] the sale of property at 4109 Rock Creek Drive, Dallas, Texas 75402" ("Property") by the receiver ("Receiver"). ROA.2740.

Barton asserts (Br. 1-3) that this Court has jurisdiction over his interlocutory appeal from the Sale Order pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. But neither provides this Court with jurisdiction. *See infra* at 11-20.

## COUNTERSTATEMENT OF THE ISSUES

1. Whether this Court has jurisdiction over an interlocutory appeal from a district court order approving a receiver's sale of receivership property.

2. Whether the district court acted within its discretion in approving the sale of the Property by the Receiver.

# COUNTERSTATEMENT OF THE CASE

## A. The Complaint

On September 23, 2022, the Commission filed a complaint against Barton and others,[1] alleging that from 2017 to 2019 they defrauded more than 100 investors out of more than $26 million. ROA.21. Barton told investors that the money they invested would be used to purchase specified parcels of land that would be developed into residential lots. Barton promised investors that they would receive interest payments and that their principal would be repaid. But Barton did not purchase the properties or make the payments as promised. Instead, Barton misappropriated nearly all of the invested funds and used them to fund, among other things, his lifestyle and other real estate projects in which entities under his control held interests.

The complaint alleges that, through that conduct, Barton violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act of 1933, 17 U.S.C. § 77q(a), and seeks, among other things, an order enjoining Barton from

[1] The other defendants are Carnegie Development, LLC; Wall007, LLC; Wall009, LLC; Wall010, LLC; Wall011, LLC; Wall012, LLC; Wall016, LLC; Wall017, LLC; Wall018, LLC; Wall019, LLC; Haoqiang Fu; and Stephen T. Wall. The relief defendants are DJD Land Partners, LLC and LDG001, LLC.

further violating those provisions and requiring Barton to disgorge his ill-gotten gains and to pay a civil penalty. ROA.43, 44-45, 47-48.[2]

**B. The Receivership**

On September 26, 2022, the Commission moved the district court to appoint a receiver over all "Barton-controlled entities to determine the value of the property interests (and any other assets) [held by Barton-controlled entities] and to secure, preserve, and potentially monetize that value for the benefit of defrauded investors." ROA.115, 121-23. The Commission explained that misappropriated investor funds had been transferred to Barton-controlled entities and that commingled funds were used to fund, among other things, Barton's lifestyle (including paying more than $2.5 million in credit card bills and purchasing an airplane) and the purchase, financing, and development of real properties in which Barton-controlled entities held interests. ROA.120-21, 126, 127-38. The Commission further explained that "[t]he property interests could potentially result in a meaningful recovery for investors," but "there is a substantial risk to the value of the property interests if a steward is not put in place to protect them." ROA.121; *see also* ROA.138. In support of its motion, the Commission submitted

[2] Barton has also been criminally charged. *See United States v. Barton*, No. 3:22-cr-00352-K (N.D. Tex.).

evidence of Barton's securities fraud and his commingling, transferring, dissipating, and encumbering misappropriated investor funds and assets procured therewith using entities under his control. ROA.161.

On October 18, 2022, the district court granted the Commission's motion, finding that "based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the [r]eceivership [e]ntities," and appointing the Receiver for all Barton-controlled entities. ROA.601, 602-03. Two days later, Barton moved the district court to "modify" the receivership order, including removing the Property from the receivership estate. ROA.628. The district court denied Barton's motion. ROA.11 (ECF No. 33). Barton's appeal from the receivership order and the district court's refusal to modify it is currently pending in this Court. *SEC v. Barton*, No. 22-11132 (5th Cir.). Both the district court and this Court denied Barton's requests to stay the receivership pending that appeal. *See* ECF No. 132.

### C. The Sale Order

On December 2, 2022, the Receiver moved the district court for approval to sell the Property, which is owned by Barton-controlled receivership entity SF Rock Creek, LLC ("SF Rock Creek"). ROA.2373. In support of his motion, the Receiver explained that the sale "[was] necessary because, among other things, (1)

utility and insurance payments continue to deplete whatever value exists in the [Property], (2) loan and interest payments continue to accrue, further depleting any recovery from sale of the Property, (3) the administrative costs of the [r]eceivership incrementally increase with each managed property, and (4) current economic uncertainty makes it impossible to predict how difficult it will be to sell the Property in the coming months." ROA.2377; *see also* ROA.2387. The Receiver also pointed out that on October 17, 2022, Barton himself had entered into a listing agreement to sell the Property, which was still in effect at the time of the Receiver's appointment. ROA.2374-75, 2387. The Receiver also separately filed notice with the district court that in light of the proposed sale of the Property he intended to sell the Property's furnishings and to make the personal property located at the Property available for Barton to retrieve (and to donate or discard unretrieved personal property). ROA.2611.

On December 13, 2022, Barton filed his opposition to the sale of the Property and also cross-moved for an order prohibiting the Receiver from selling the Property's furnishings. ROA.2629. On December 15, 2022, the Receiver filed his reply in support of the sale of the Property and response to Barton's cross-motion. ROA.2654.

On December 19, 2022, the district court held a hearing to consider the Property-related motions. ROA.17 (EFC No. 103). At the hearing, counsel for the

Receiver indicated that the Receiver would forgo the sale of the Property and instead rent it to Barton if Barton was willing to cover the carrying costs. ROA.3054:19-3055:4. Barton was not willing to do so.

At the hearing's conclusion, the district court found that the proposed sale was "in the best interest of the receivership." ROA.3098:12-13. The district court found that: (1) the $1.4 million sale price and the sale process satisfied the requirements of 28 U.S.C. § 2001; (2) Barton himself had listed the Property for sale the day before the district court appointed the Receiver; (3) the receivership needed cash to maintain its assets; (4) selling receivership properties other than the Property to meet that cash need would be less "efficient from a timeline standpoint" in light of development status and "encumbrances on them"; (5) allegedly misappropriated investor "funds … were used for the [Property]"; and (6) "unlike the other [Receivership] properties," the Property was "a quickly depreciating asset" in light of "the potential 20 percent drop in the value of all homes in the coming year," the fact that the Property was financed with a high-interest rate, interest-only loan, and "property taxes that are coming due." ROA.3096:1-3098:11. The district court determined, however, that the "personal property" located at the Property should not be sold because, unlike the Property itself, it was not "rapidly dissipating in value." ROA.3098:20-24 (observing that

the personal property "is not under interest-only financing and [there are not] property taxes due on it").

The district court issued the Sale Order the next day, authorizing the Receiver to sell the Property "for the reasons stated at the hearing" but ordering the Receiver "to remove Barton's personal items from the Property before the Property is sold, and to place them in storage at the expense of the receivership estate." ROA.2741 (footnote omitted). The Sale Order also denied Barton's oral motion to stay the sale pending appeal. ROA.2741.[3]

On December 21, 2022, Barton filed a notice of appeal from the Sale Order. ROA.2781.

The sale of the Property was scheduled to close on December 28, 2022 but has not yet occurred because Barton scuttled it through his interference. *See* ECF No. 133 at 13-15.

---

[3] The district court also granted the Receiver's motion to declare void a notice of lis pendens that Barton had filed on the Property on December 1, 2022, and ordered Barton to pay the Receiver $1,200 for fees incurred in opposing the lis pendens. ROA.2741.

## STANDARD OF REVIEW

"A district court's ... actions in supervising an equity receivership [are] reviewed for abuse of discretion." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 839 (5th Cir. 2019).

## SUMMARY OF ARGUMENT

1. This Court is without jurisdiction over Barton's appeal from the interlocutory Sale Order. Barton invokes 28 U.S.C. § 1291, but it provides jurisdiction only for appeals from final decisions, and the Sale Order is not a final decision. Rather, it is simply one of the many interlocutory orders issued by (and that will be issued by) the district court in the course of supervising the receivership.

Barton's reliance on the collateral order doctrine is similarly unavailing. The collateral order doctrine provides appellate jurisdiction for certain classes of interlocutory orders but it does not apply to the Sale Order because "[t]he justification for immediate appeal" of orders approving a receiver's sale of receivership property is not "sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009). Critically, a person aggrieved by such an order has several potential avenues of appellate review, including, for example, interlocutory review of the receiver's appointment pursuant to 28 U.S.C. § 1292(a)(2). Indeed, Barton

has already appealed from the district court order placing the Property under the Receiver's control. Moreover, stretching the collateral order doctrine to reach such orders threatens a flood of interlocutory appeals that would undermine the protection of receivership assets.

2. The district court acted within its discretion in approving the Property's sale. The district court found that, among other things, the receivership needed cash—right away—to maintain its assets, the Property was "a quickly depreciating asset," and other receivership properties would take longer to sell. The district court thus reasonably concluded that the sale was in the receivership's best interest.

Barton's arguments to the contrary are without merit. Barton claims that the Property lacks a sufficient nexus to allegedly misappropriated investor funds, but the property is owned by (and is the only asset of) a receivership entity. And Barton's extensive commingling of investor funds and his refusal to share accounting records only strengthens the district court's conclusion that allegedly misappropriated investor funds were used for the Property. Barton also claims that the prejudgment sale of the Property is improper and unjustified but the sale is an appropriate step to secure and preserve receivership value and the challenged district court factual findings underlying the Sale Order are well-supported by the record.

## ARGUMENT

### I. This Court lacks jurisdiction over Barton's interlocutory appeal from the Sale Order.

"As the appellant[], [Barton] bear[s] the burden of establishing [this Court's] appellate jurisdiction." *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010). Barton's reliance (Br. 1-3) on 28 U.S.C. § 1291 and the collateral order doctrine fails to establish that this Court has jurisdiction over his interlocutory appeal from the Sale Order.

#### A. Section 1291 does not grant jurisdiction to appeal from the non-final Sale Order.

Section 1291 provides jurisdiction for appeals from "final decisions." 28 U.S.C. § 1291. The Sale Order authorizes the Receiver to sell the Property to raise funds required to preserve and maintain receivership assets. ROA.2740. It is not a final decision. Final decisions are those that "end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Netsphere, Inc. v. Baron*, 799 F.3d 327, 331 (5th Cir. 2015) (cleaned up). Following the Sale Order, the "underlying ... dispute that formed the original basis for this litigation remains undecided" and "even within the context of the receivership," the Sale Order does

not "purport to enter a final judgment winding-up or terminating the receivership." *Id*.

The authority on which Barton relies (Br. 1-2) does not undermine this conclusion. Barton principally relies on cases that address sale orders in the foreclosure context, which this Court has recognized are "in all respects … final order[s] for purposes of appeal." *Citibank, N.A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981) (holding that "an order in a foreclosure proceeding that directs the immediate sale of specified property" can be appealed under 28 U.S.C. § 1291); *see also Sage v. Cent. R. Co. of Iowa*, 96 U.S. 712, 712 (1877) (addressing order finality in the foreclosure context); *First Nat. Bank of Cleveland, Ohio v. Shedd*, 121 U.S. 74, 85 (1887) (same); *Contimortgage Corp. v. Anglezis*, 173 F. App'x 458, 462-64 (7th Cir. 2006) (same). Barton also relies on inapposite cases (1) concluding that an order authorizing sale negotiations in a bankruptcy proceeding is not final*, In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801-03 (1st Cir. 1985), and (2) finding that Section 1291 permits jurisdiction for an appeal following trial and entry of judgment, *Los Angeles Tr. Deed & Mortg. Exch. v.*

*SEC,* 285 F.2d 162, 165 (9th Cir. 1960). None of those cases establishes that the Sale Order is an appealable final decision.

### B. The collateral order doctrine does not provide jurisdiction to review district court orders approving a receiver's sale of receivership property.

The collateral order doctrine does not help Barton because "[t]he justification for immediate appeal" of orders approving a receiver's sale of receivership property is not "sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk*, 558 U.S. at 107. The collateral order doctrine "is best understood not as an exception to the final decision rule laid down by Congress in 28 U.S.C. § 1291, but as a practical construction of it." *Netsphere*, 799 F.3d at 334 (cleaned up). "To fall within [the] collateral order doctrine, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Id.* at 334-35 (cleaned up).

The Sale Order, "which [does] not contemplate revision or modification," is arguably conclusive as to the sale of the Property, though it may not be "unlikely that the district court will revisit the order" given that Barton scuttled the sale's closing through his interference. *Id.* at 335 (cleaned up); *see supra* at 8. But even if deemed conclusive, the Sale Order does not fall within a class of orders subject

to the collateral order doctrine for the simple reason that, as a defendant to this enforcement action, Barton has (and has availed himself of) existing statutory channels for review, which undercuts any rationale for extending the collateral order doctrine to reach the Sale Order.

**1. The collateral order doctrine applies to classes of orders.**

Whether the Sale Order falls within the collateral order doctrine is not an "individualized jurisdictional inquiry." *Mohawk*, 558 U.S. at 107 (cleaned up). That is because the collateral order doctrine is a "blunt, categorical instrument." *Id.* at 112 (cleaned up). The "focus is on the entire category to which [the] claim belongs" and "[a]s long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis" for applying the doctrine. *Id*. at 107 (cleaned up). Thus "[t]he crucial question ... is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Id.* at 108; *see also Grace v. Vannoy*, 826 F.3d 813, 816 (5th Cir. 2016) (" [W]hether a question is unreviewable for purposes of the collateral-order doctrine depends on a value judgment about what is lost unless the party is permitted to immediately appeal.").

**2. Orders approving a receiver's sale of receivership property are potentially subject to appellate review apart from the collateral order doctrine.**

Weighing against creating a new class of immediately appealable orders is the fact that a person aggrieved by an order approving a receiver's sale of receivership property "[has] several potential avenues of review apart from collateral order appeal." *Mohawk*, 558 U.S. at 110.

Most critically, Congress has directly spoken as to the types of receivership orders that are subject to interlocutory appeal. Specifically, 28 U.S.C. § 1292(a)(2) provides for appellate jurisdiction from "[i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." 28 U.S.C. § 1292(a)(2). The statute thus contemplates that an aggrieved person (like Barton) may bring an interlocutory appeal from the underlying order *appointing* the receiver, as Barton has done. But as this Court explained in *Netsphere*, orders like the Sale Order are not immediately appealable under Section 1292(a)(2) because that provision is best understood as providing interlocutory review of orders *refusing* to "direct[] sales or other disposals of property," but does not allow for review of orders *approving* such actions. 799 F.3d at 331-33; *see also, e.g., United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 672 (7th Cir. 2014) (holding

that allowing for interlocutory appeal of sale orders “would strain the statutory language and make anything the receiver did appealable immediately”).

The availability of interlocutory review of the receivership order thus distinguishes Barton’s appeal from *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325 (5th Cir. 2001) (Br. 2-3). There, this Court held that the collateral order doctrine permitted jurisdiction for a non-party’s appeal of an order approving a receiver’s distribution plan because otherwise the non-party’s rights would be conclusively determined without any chance of review. 242 F.3d at 330-31; *see also, e.g., SEC v. Torchia*, 922 F.3d 1307, 1315 (11th Cir. 2019) (concluding that “[a] district court’s order approving the receiver’s distribution plan is appealable as a collateral order”). A non-party might not have any reason to object to a receiver’s appointment and, as in *Forex*, may be aggrieved only by the adoption of a distribution plan to which the non-party objects. The same cannot be said for Barton, who is a defendant in this action and, as such, has appealed from the district court’s order appointing the Receiver (*i.e.*, the order that placed the Property under the Receiver’s control), and had the opportunity to make a sufficient showing to stay the effectiveness of that order pending appeal. *See supra* at 5. And whereas in *Forex* the appealed order provided for the receiver’s distribution of receivership assets to defrauded investors, here the proceeds of the

sale will not be distributed but rather used to preserve and maintain receivership assets.

In addition, an aggrieved person like Barton has additional avenues for potential review to correct serious errors without resorting to the collateral order doctrine. Such a person could "ask the district court to certify, and the court of appeals to accept, an interlocutory appeal [of a sale order] pursuant to 28 U.S.C. § 1292(b)" or "petition the court of appeals for a writ of mandamus." *Mohawk*, 558 U.S. at 110-11. "While [those two] discretionary review mechanisms do not provide relief in every case," the Supreme Court has observed, "they serve as useful safety valves for promptly correcting serious errors." *Id.* at 111 (cleaned up). Upon a proper showing, an aggrieved person could also obtain a stay during the pendency of these potential avenues of appeal. *See* Fed. R. App. P. 8.

Moreover, even if appellate review by means other than the collateral order doctrine were unavailable for some sale orders, that some "imperfectly reparable" individual harm may result "does not justify making all such orders immediately appealable" under the collateral order doctrine. *Mohawk*, 558 U.S. at 112 (cleaned up). Notably in this case, however, Barton could have entirely avoided the supposed harm even without appellate review. The Receiver was willing to allow Barton to stay in the Property if he agreed to pay the Property's carrying costs. *See supra* at 6-7. Barton was unwilling to do so and has instead taken the untenable

position that the receivership estate must bear those costs but cannot sell the Property to staunch the bleeding. That position is all the more objectionable given that, as the district court found, Barton himself listed the Property for sale just before the Receiver was appointed. ROA.3096:21-23 ("[T]he listing agreement tells me that perhaps the personal nature of the [Property] isn't as strong as it otherwise would be.").

#### 3. Piecemeal appeals from orders approving a receiver's sale of receivership property would unnecessarily prolong proceedings and waste receivership assets.

Permitting interlocutory appeal of orders approving a receiver's sale of receivership property would disregard the Supreme Court's "admonition" that "the class of collaterally appealable orders must remain narrow and selective in its membership." *Mohawk*, 558 U.S. at 113 (cleaned up). In general, "[p]ermitting piecemeal, prejudgment appeals ... undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Id.* at 106 (cleaned up).

That concern is particularly acute with respect to orders approving a receiver's sale of receivership property because stretching the collateral order doctrine to reach such orders threatens a flood of interlocutory appeals in receivership cases. Such a result would severely undermine the rationale for appointing a receiver in Commission enforcement actions in the first place—to

protect receivership assets from waste and dissipation for the potential benefit of securities-fraud victims. Thus, for this class of orders, "[t]he limited benefits of such unrestricted access to the appellate court are outweighed by the attendant systemic disruption and institutional cost." *In re Deepwater Horizon*, 793 F.3d 479, 489 (5th Cir. 2015).

For receivership-related interlocutory orders, moreover, Congress has already specified a limited class that are eligible for interlocutory appeal—and that class of orders does not include those approving a receiver's sale of receivership property. By granting an immediate right to appeal from an order appointing a receiver but not from most subsequent orders issued in the course of the receivership, Congress struck a balance between protecting a defendant's interest in not having assets subjected to an unwarranted receivership and the interests of the harmed investors and the district court in not having the receivership's assets drained by numerous interlocutory appeals. And as the Supreme Court emphasized in *Mohawk*, Congress has "designat[ed] rulemaking, not expansion by court decision, as the preferred means for determining whether and when prejudgment orders should be immediately appealable." 558 U.S. at 113 (cleaned up) (discussing congressional authorizations for the Supreme Court to adopt rules to define final decisions for purposes of Section 1291 and to expand the universe of appealable interlocutory orders under Section 1292). Barton provides no reason

to disregard the Supreme Court's admonition against unwarranted and significant judicial expansion of the collateral order doctrine's reach.

## II. The district court acted within its discretion in approving the sale of the Property.

### A. The district court reasonably determined that the sale of the Property was in the receivership's best interest.

As this Court has long recognized, "in the securities context," "a federal court supervising an equity receivership" has "broad powers and wide discretion to determine the appropriate relief." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372-73 (5th Cir. 1982) (cleaned up). Here, the district court's determination that the sale of the Property was "in the best interest of the receivership," ROA.3098:13, is supported by the district court's factual findings, which in turn are supported by the record.

1. The district court found, and Barton does not dispute, that the sale price and the sale process satisfied the requirements of 28 U.S.C. § 2001. *See supra* at 7. Indeed, the $1.4 million sale price exceeds the average of the independent appraisals obtained by the Receiver and reflects the highest offer received for the Property. ROA.2376.

2. The district court found, and Barton does not dispute, that Barton himself listed the Property for sale just before the Receiver's appointment. *See supra* at 7.

3. The district court found, and Barton does not dispute, that the receivership needs cash to maintain its assets. *See supra* at 7. Indeed, when the Receiver was appointed, he found less than $75,000 in receivership entity bank accounts. ROA.1195.

4. The district court found that selling other receivership properties to meet the receivership's immediate cash needs would be less "efficient from a timeline standpoint" in light of development status and "encumbrances on them." ROA.3097:16-18.

5. The district court found that because, among other things, "it seems like commingling was the rule of the day for how Barton ran his different entities," "I have seen enough to know that it was funds that were at issue in the SEC allegations that were used for the [Property]." ROA.3097:20-25. Indeed, counsel for the Receiver told the district court that the Receiver's work to date had revealed "[no] evidence that any money was *not* commingled." ROA.3094:24-3095:4 (emphasis added).

6. The district court found that, "unlike the other [Receivership] properties," the Property was "a quickly depreciating asset" in light of "the potential 20 percent drop in the value of all homes in the coming year," the fact that the Property was financed with a 9.9% interest-only loan that was accruing interest at an 18% default rate, and "property taxes that [we]re coming due." ROA.3098:1-11. And,

as Barton's counsel conceded before the district court, the other receivership properties were not subject to the same "dire," equity-destroying financing. ROA.3064:18-25.

### B. Barton's arguments are without merit.

1. Barton incorrectly argues (Br. 17) that the district court erred in approving the sale of the Property because it is "not the subject of the underlying dispute." The Property is undisputedly an asset of receivership entity SF Rock Creek, and when "a receiver [is] appointed to prevent [a] corporation from dissipating corporate assets and to pay defrauded investors" in a securities fraud case, "the corporate assets are the underlying subject matter of the dispute." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012). And Barton's challenge (Br. 17-22) to the inclusion of SF Rock Creek in the receivership is beyond the scope of this appeal.[4] Indeed, Barton has separately appealed the inclusion of SF Rock Creek in the receivership as well as the district court's denial of his motion to modify the receivership to exclude the Property. *See supra* at 5.

In any event, Barton's challenge to the inclusion of SF Rock Creek—which was undisputedly under his control—fails. Barton relies (Br. 18) on this Court's

---

[4] The same is true for Barton's challenge to the Receiver's supposed "seiz[ure]" (Br. 17) of the Property, as the Receiver's control over the Property is based on the receivership order, not the Sale Order.

statement in *Janvey v. Adams*, 588 F.3d 831 (5th Cir. 2009), that "[a] relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." *Id.* at 834. *Janvey* addressed whether a receiver had properly named certain persons as "relief defendants"—not the proper scope of a receivership. *Id.* at 833-34. SF Rock Creek is not a relief defendant. *See* ROA.25.

2. Barton also contends (Br. 20) that the record lacked any "evidence suggesting that [allegedly misappropriated investor funds] somehow … funded the purchase of [the Property]." But Barton concedes (Br. 9) that "SF Rock Creek had no business operations and served no other purpose than to hold title to [the Property]." And the district court reasonably concluded that allegedly misappropriated investor "funds … were used for the [Property]." ROA.3097.

That conclusion is supported by the record, which demonstrates both the commingling of funds among Barton-controlled entities and Barton's refusal—in violation of the receivership order—to provide the Receiver with access to receivership entity accounting records. *See* ROA.3094. At the hearing, the Receiver's counsel explained that the Receiver had not seen "any segregation of assets between specific entities": "[We] haven't seen any evidence that any money was not commingled; it was all commingled." ROA.3094:24-3095:2. The

Receiver's counsel stated that it was "not possible … to tell the Court, absolutely, we saw money coming ... from one investor into this entity to purchase the house" but noted that the Receiver "[had] seen no other explanation ... for how these businesses operated." ROA.3095:5-10; *see also* ROA.3057:23-2058:1 ("The Receiver, in his investigation, learned that most of the contents of [the] [P]roperty were purchased within the last two years by receivership entities."). Barton, on the other hand, submitted no evidence controverting this conclusion.

3. Barton also asserts (Br. 16, 22-24) that the district court approved the sale without "sufficient findings to demonstrate that selling [the Property], before any judgment of liability, was necessary to serve any legitimate purpose of a Government-sought receivership," and thus the district court must have been animated by a desire to "punish" him. Nothing in the Sale Order (or any other district court order) supports that baseless assertion. As this Court has observed, a receivership is "particularly necessary" where "the corporate assets will [otherwise] be subject to diversion and waste to the detriment of those who were induced to invest." *SEC v. First Fin. Grp. of Texas*, 645 F.2d 429, 438 (5th Cir. 1981). Consistent with that rationale, the district court approved the sale because it concluded that it was in the best interest of the receivership given the Property's dwindling equity and the receivership's dearth of cash.

4. Barton similarly argues (Br. 24-25) that that the Sale Order is in error because the prejudgment sale of receivership assets "permanently alters the status quo rather than preserves it." As Barton's counsel conceded below, a receiver can sell receivership property prior to a finding of liability. ROA.3061:7-10 ("I think a receiver could sell property under certain circumstances before there is a liability finding, but that is the extraordinary circumstance."). Indeed, a prohibition against prejudgment sale would impede a receiver from taking necessary steps to secure and preserve receivership value that might otherwise be lost. And, in any event, the authority on which Barton relies (Br. 24) is inapposite, as it addresses the propriety of receiver liquidations employed as an alternative to bankruptcy, not as a tool to preserve receivership value. *See, e.g.*, *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) ("[B]ecause receivership should not be used as an alternative to bankruptcy, we have disapproved of district courts using receivership as a means to process claim forms and set priorities among various classes of creditors.").

5. Barton also mistakenly contends (Br. 25) that to approve the sale of the Property the district court was required to find that "there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere*, 703 F.3d at 305. But *Netsphere* is inapposite—it addresses appointment of a receiver "to control a vexatious litigant" and distinguished such a

receivership from Commission enforcement actions where "a receiver may be appointed to prevent [a] corporation from dissipating corporate assets and to pay defrauded investors." *Id.* at 306. Moreover, the supposed requirements cited by Barton don't map onto a district court's consideration of the sale of receivership property by an already-appointed receiver.

6. Barton's contention (Br. 26) that the net proceeds of the Property sale are "irrelevant" given the size of the receivership estate ignores that, as the Receiver explained, "the net recovery from the sale of the ... Property will allow the estate to pay for continuing expenses necessary to maintain and administer other properties whose value cannot be preserved absent cash and the Receiver's efforts." ROA.2659-60. For the receivership estate, every dollar counts because "the Receiver … face[s] a dearth of cash that forced him to selectively pay utility, insurance, and other payments on the various properties within the [r]eceivership," "neccessitat[ing] the Receiver's exploration of all potential sources of capital." ROA.2659. Moreover, the benefits of the sale are not limited to its net proceeds. Until a sale occurs, "utility and insurance payments continue to deplete the limited equity that exists in the [Property and] loan and interest payments continue to accrue, further depleting any recovery from sale of the Property." ROA.2387.

7. Barton's similar insistence (Br. 26) that the receivership's cash needs should be satisfied by the sale of "business-related commercial assets" (emphasis

omitted) rather than the Property is likewise misplaced. That other transactions could potentially raise funds for the receivership estate does not undermine the district court's conclusion that the sale of the Property was in the receivership's best interest. Moreover, as the district court reasonably concluded, such sales would be "not as efficient from a timeline standpoint" in light of development status and "encumbrances on them." ROA.3097; *see also* ROA.2659 (the Receiver explaining that "a residential property is simpler and quicker to sell than commercial properties"). And as Barton's counsel conceded, the receivership's commercial properties are not subject to the same "dire … financing." ROA.3064:22-25.

Barton asserts (Br. 28-29) that the district court's "concerns" about the carrying costs of the Property are "no justification for selling it" because "[i]t is assumed that when the Government chooses to seize assets prior to a finding of liability, it will bear the costs of maintaining them as they are until a final judgment." Barton's suggestion that the government, rather than the receivership estate, should bear the carrying costs of the Property—costs that Barton concedes "[he] would be paying" absent the receivership (Br. 29)—is unpersuasive. With the receivership in place, the Property's carrying costs are the receivership's responsibility and properly a "concern" for the district court to consider in deciding whether the Property's sale is in the best interest of the receivership.

## **CONCLUSION**

This appeal should be dismissed for lack of jurisdiction, or, in the alternative, the Sale Order should be affirmed.

Respectfully submitted,

MEGAN BARBERO
*General Counsel*

MICHAEL A. CONLEY
*Solicitor*

DOMINICK V. FREDA
*Assistant General Counsel*

*/s/ Ezekiel L. Hill*
EZEKIEL L. HILL
*Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.7724 (Hill)
hillez@sec.gov

March 29, 2023

# **CERTIFICATE OF SERVICE AND FILING**

I certify that on March 29, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit through the Court's CM/ECF system. Service on counsel of record will be accomplished through the Court's CM/ECF system.

I further certify that this electronic filing is an exact copy of the paper document, that any privacy redactions have been made, and that this electronic filing was scanned for, and found to be free of, viruses.

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill

Dated: March 29, 2023

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,770 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I further certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style, 14-point typeface.

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill

Dated: March 29, 2023