**No. 22-11226**

# In the United States Court of Appeals for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff – Appellee,*

v.

TIMOTHY BARTON,

*Defendant – Appellant.*

From the United States District Court
for the Northern District of Texas
Honorable Brantley Starr, U.S. District Judge
Cause No. 3:22-cv-2118-X

## RECEIVER'S MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

Brown Fox PLLC
Charlene C. Koonce
State Bar No. 11672850
Timothy B. Wells
State Bar No. 24131941
8111 Preston Road, Suite 300
Dallas, TX 75225
T: (214) 327-5000
F: (214) 327-5001
charlene@brownfoxlaw.com
tim@brownfoxlaw.com

*Counsel for Receiver Cortney C. Thomas*

In this interlocutory appeal, Cortney C. Thomas, the Court-appointed Receiver ("Receiver"), seeks leave to file as *Amicus Curiae* the attached proposed Response and Opposition to Appellant's Brief, and in support, respectfully shows the Court as follows:

## SUMMARY

Although the SEC initiated the lawsuit from which the appeal arises, the discrete order on appeal was issued in response to a motion filed by the Court-appointed Receiver. The SEC did not participate in the briefing on the motion that resulted in the order on appeal, nor did it argue the motion to the district court. Nonetheless, this Court previously denied the Receiver's motion for designation as the Appellee or real party in interest (although it granted leave for the Receiver to file a motion to dismiss the appeal). Ultimately, the Receiver would prefer not to spend Receivership Estate funds defending a jurisdiction-less appeal, but to the extent appeals occurs, the Receiver has grave concerns about denial of the right to defend the Receivership Estate and provide a voice for the defrauded investors. Further, the Receiver has spent months deciphering the tangled web of Receivership Entities and associated transactions and has the most current and accurate information regarding the Receivership Estate and its assets.

## FACTUAL SUMMARY

1. On December 22, 2022, Appellant filed a Notice of Appeal seeking to overturn an order approving the sale of property located at 4107 Rock Creek Drive, Dallas, TX (the "Rock Creek Property" and the "Order"). The Order was issued in response to the Receiver's Motion. ROA.2373–2379; 2740–2742.

2. Following Barton's appeal of the Order, on January 20, 2023, the Receiver filed a Motion to be Recognized as the Appellee, Party in Interest, Intervenor, or Motion for Leave to File as an Amicus, since the Receiver is the only party to file the initial motion at issue.

3. On January 25, 2023, this Court granted the Receiver's Motion for Leave to file as an Amicus Curiae and the Court accepted the Receivers' Motion to Dismiss as an Amicus Curiae Brief. The Court denied the Receiver's request to be named as an Appellee, Party in Interest, or Intervenor.

4. While the SEC has addressed the merits of Barton's appeal, the Receiver should also be heard regarding an appeal of an order issued at the Receiver's request.

5. Moreover, the Receiver possesses the most up-to-date and specific information regarding the status of the Rock Creek Property, information that is also relevant to certain arguments raised by Appellant. The Receiver can direct the Court to that additional information, filed in the district court after the record was prepared

for this interlocutory appeal. For instance, the Receiver has discovered that a significant portion of the funds used to purchase the Rock Creek Property came from several Receivership Entities into which the SEC traced investor funds, contrary to the Appellant's assertion in his Brief. *Brief* p. 15.

6. Because designation as the Appellee has already been denied, the Receiver seeks leave to file the attached proposed amicus brief.

Respectfully submitted,

By: */s/ Charlene C. Koonce*

Charlene C. Koonce
State Bar No. 11672850
Timothy B. Wells
State Bar No. 24131941
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Phone: (214) 327-5000
Fax: (214) 327-5001
Email: charlene@brownfoxlaw.com
Email: tim@brownfoxlaw.com

*Counsel For Receiver Cortney C. Thomas*

**CERTIFICATE OF COMPLIANCE**

1. I certify that this Motion complies with the type-volume limit of FED. R. APP. P. 21(d) because, excluding the words that need not be counted, it contains 498 words.

2. This Motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## CERTIFICATE UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I certify that (1) required privacy redactions have been made (see Local Rule 25.2.13); (2) the electronic submission is an exact copy of the paper document (*see* Local Rule 25.2.1); and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

**. 22-11226**

In the

# United States Court of Appeals

for the

# Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff – Appellee,*
v.
TIMOTHY BARTON,
*Defendant – Appellant.*

From the United States District Court
for the Northern District of Texas
Honorable Brantley Starr, U.S. District Judge
Cause No. 3:22-cv-2118-X

**RECEIVER'S AMICUS BRIEF**

Brown Fox PLLC
Charlene C. Koonce
State Bar No.11672850
Timothy B. Wells
State Bar No. 24131941
8111 Preston Road, Suite 300
Dallas, TX 75225
T: (214) 327-5000
F: (214) 327-5001
charlene@brownfoxlaw.com

*Counsel for Receiver Cortney C. Thomas*

# TABLE OF CONTENTS

I. INTEREST OF AMICUS CURIAE....................3

II. BACKGROUND....................3

III. ARGUMENT....................7

A. Barton's Interlocutory Appeals Injure The Receivership Estate....................7

B. Barton's Tracing Arguments Are Misguided....................9

1. Tracing is Not Required....................9

2. To Date, Barton Has Rendered Tracing Impossible....................11

3. Despite Barton's Efforts to Conceal Records, the Receiver has Traced Investor Funds into the Rock Creek Property....................12

C. The Receiver's Absence as an Appellee Potentially Prejudices the Receivership Estate and the Defrauded Investors....................13

# TABLE OF AUTHORITIES

**Cases**

*Helt v. Sethi Petroleum, L.L.C.*,
No. 20-40240, 2022 WL 127977 (5th Cir. Jan. 13, 2022)....................................14

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009)..........................................................................10

*Long Beach Mortg. Co. v. White*,
No. 95 C 4068, 1995 WL 470234 (N.D. Ill. Aug. 7, 1995) ..................................11

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012)..........................................................................10

*SEC v. Camarco*,
No. 19-1486, 2021 WL 5985058 (10th Cir. Dec. 16, 2021)..................................9

*SEC v. Faulkner*,
No. 3:16-CV-1735-D, 2018 WL 4362729 (N.D. Tex. Sept. 12, 2018)...............11

*SEC v. Res. Dev. Intern.*,
291 Fed. Appx. 660 (5th Cir. 2008)................................................................14

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019)......................................................................7, 14

*United States v. Antiques Ltd. P'ship*,
760 F.3d 668 (7th Cir. 2014)............................................................................7

# I. INTEREST OF AMICUS CURIAE

Amicus Curiae Cortney C. Thomas is the court-appointed Receiver ("Receiver") in this case. The appeal originated from a motion filed by the Receiver, not the SEC, seeking approval for the sale of realty in furtherance of the Receiver's duties and obligations. The Receiver, rather than the SEC (which is designated as the Appellee) is most familiar with the property and the justification for its sale. The Receiver previously filed a motion seeking designation as an appellee, real party in interest, or intervenor, but the motion was denied, and the Receiver was permitted only to file a motion to dismiss as an amicus. Accordingly, the Receiver seeks leave to file this amicus brief responding to Appellant's Brief, and in support, respectfully shows the Court as follows:

# II. BACKGROUND

The SEC filed suit against Appellant Barton for securities fraud. ROA.21. Through its investigation, the SEC discovered "Barton had been commingling, transferring, dissipating, and encumbering investor funds and assets purchased with investor funds," while at the same time using investor funds to "pay personal expenses of Barton and his family, including exorbitant credit card bills, rent, and to buy a plane." ROA.120–21, 126. To preserve the limited assets available to repay the investors whose funds Barton misappropriated, the SEC filed a Motion for

Appointment of Receiver ("Motion to Appoint"). ROA.115.[1]

On October 18, 2022, the District Court entered the Order Appointing Receiver ("Receivership Order"). ROA.601. The factual basis for the Receivership Order was Barton's misappropriation of investor funds, which the SEC's evidence demonstrated he misused to, "among other things, purchase properties in the name of other entities he controlled, pay undisclosed fees and commissions, pay expenses associated with unrelated real estate development projects, and fund his lifestyle." ROA.120; ROA.174–79.

The Receivership Order authorized the Receiver to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend, compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." ROA.605 (Receivership Order ¶¶ 6(H), 6(J)). In accordance with additional orders and governing statutes such as 28 U.S.C. §§ 2001 and 2004, the Receivership Order also authorized the Receiver to sell real property owned by the Receivership Entities. ROA.618 (Receivership Order ¶ 39).

---

[1] Barton was also indicted on seven counts of wire fraud, one count of conspiracy to commit wire fraud, and one count of securities fraud due to his alleged misuse of over $26 million acquired from investors. *See United States v. Timothy Barton*, Case No. 3:22-cr-00352-K, in the United States District Court for the Northern District of Texas.

The Rock Creek Property is a house located at 4107 Rock Creek Drive, Dallas, Texas 75204 (the "Rock Creek Property,") owned by SF Rock Creek, LLC,[2] which the Receiver has contracted to sell for $1.4 Million. ROA.2374–75. In the initial days of his appointment, the Receiver discovered that on October 17, 2022 Barton, through SF Rock Creek, had also entered a listing agreement, engaging a real estate broker to sell the Rock Creek Property. ROA.2375, ROA.2385-2387.

On December 2, 2022, in accordance with 28 U.S.C. § 2001, the Receivership Order, and a subsequent Order Governing Administration of Receivership Estate, (ROA.1185)[3] the Receiver filed a Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property ("Motion to Approve Sale"), by which he sought the Court's approval to sell the Rock Creek Property. ROA.2373.

Following an objection filed by Barton (ROA.2629), the Receiver's Notice of Publication regarding the sale (ROA.2727, ROA.2730) and the Receiver's Reply in

---

[2] As an entity controlled by Barton, SF Rock Creek, LLC is a Receivership entity. (ROA.604; 700–05; 715–17; 727–31; 738; 1179–84; 1358–1405; 2373–78; 2600–10; 2654–63; 2740–42).

[3] "Sale of Real Property, if any, shall be made pursuant to 28 U.S.C. § 2001 with further motions and notices filed and published as required by that statute. If multiple offers are received from disinterested purchasers for any one property, the Court hereby concludes that the Receiver may, in his discretion, utilize any one or more of such offers as one or more of the "appraisals" required by § 2001(b). Similarly, the Receiver may in his discretion utilize informal "opinions of value" received from respected brokers in the respective industries related to the subject property, as one or more of the "appraisals" required by § 2001(b)." ROA.1193 (Order Governing Administration of Receivership Estate ¶ (D)(2)).

Support of the Motion (ROA.2654), the District Court granted the Motion to Approve Sale, in part, by appointing the appraisers and accepting the appraisals submitted with the Motion to Approve Sale. ROA. 2724. On December 19, 2022, as required by 28 U.S.C. § 2001, the District Court conducted a hearing to consider the sale. Following the hearing, on December 20, 2022, the District Court entered an order approving the sale (ROA.2740) (the "Rock Creek Order").

On December 22, 2022, Appellant filed a Notice of Appeal seeking to overturn the Rock Creek Order. ROA.2781. The case was docketed reflecting the SEC as the Appellee.[4]

Because the Motion to Approve Sale was filed and urged only by the Receiver, on January 20, 2023, the Receiver filed a Motion to be Recognized as Appellee, Party in Interest, Intervenor, or Motion for Leave to File as an Amicus ("Motion to be Recognized").[5] App. Dkt. 29.[6]

On January 25, 2023, this Court denied the Receiver's Motion to be Recognized, in part, granting the Motion to the extent the Receiver was permitted to file a Motion to Dismiss, as amicus curiae brief. App. Dkt. 34-1. In his Motion to

[4] The Receiver was excluded from the appellate docket, either based on how this Court docketed the appeal, or from the way the appeal was filed.

[5] Barton opposed the Receiver's request that the clerk alter the docket and opposed the Receiver's motion.

[6] Cites to "App. Dkt." refer to the appeal docket, while bracketed docket cites [Dkt.__] refer to the district court docket.

Dismiss, the Receiver challenged this Court's interlocutory jurisdiction for this appeal, based on 28 U.S.C. § 1292(a)(2).

## III. ARGUMENT

### A. Barton's Interlocutory Appeals Injure The Receivership Estate

This appeal involves Barton's interlocutory challenge to the Rock Creek Order. It is not, however, the only interlocutory appeal Barton has initiated.[7] Presumably, unless precluded from doing so by this Court, Barton will continue challenging future interlocutory orders authorizing or approving the Receiver's sales, settlements, or administrative work, issued in the ordinary course of this receivership. Allowing piecemeal appeals of every order entered by the district court hinders the primary purpose of the equitable receivership: "marshaling [] the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entities." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019); *see also United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 671 (7th Cir. 2014) (concluding no appellate jurisdiction existed for order approving receiver's property sales, because "that would both strain the statutory language and make anything the receiver did appealable immediately, which could flood the courts of appeals with interlocutory appeals.").

[7] *See* Appeal No. 22-11242.

This meritless and jurisdiction-less appeal has nonetheless interrupted the sale of the Rock Creek Property, while the equity in that Property continues to erode. Even though the District Court denied Barton's motion to stay the sale, the title company assisting in the sale has been unwilling to issue a title policy until the appeal is concluded. [Dkt. 139, p.10].

The appeal is not, however, the sole cause of a delayed closing for the Rock Creek Property. Shortly before the December 19 hearing to approve the sale, the Receiver learned that in early December 2022, Barton had filed a lis pendens on the Rock Creek Property. The Receiver was forced to file an Emergency Motion to Declare Lis Pendens Void (ROA.2705) which the District Court granted. ROA.2741. Just a few hours after the December 19 hearing, unsolicited and without permission from the Court or the Receiver, Barton notified the purchaser of past foundation and flooding issues Barton claimed to have experienced at the Rock Creek Property. [Dkt. 134, ¶ 28; Dkt 139, p.10]. Although Barton's communication caused the purchaser to request an extension of the closing date, he is now ready to close—once the title company will issue a title policy.

Regardless of the cause, the delayed sale necessitates payment of taxes, insurance, and other expenses, and allows the equity in the Property to continue to erode. More specifically, the Rock Creek Property continues to accrue interest at $285.60 per day (utilizing the contract rate of 9.95% rather than the default rate of

18%, as negotiated with the lender based on a now passed closing date). [Dkt. 134, ¶ 29]. The lender had also agreed to reduce a pre-payment penalty if the sale had closed before the end of 2022. To prevent further dilution of equity in the Rock Creek Property and mitigate the continuing expenses, the Court should dismiss the appeal and affirm the Rock Creek Order.

## B. Barton's Tracing Arguments Are Misguided

In his Brief, Barton contends the Receiver and SEC are required to show that funds traceable to the alleged fraud flowed into the Rock Creek Property and that no such tracing can be shown. Both are assertions are incorrect.

### 1. Tracing is Not Required

As the Tenth Circuit explained "imposing [a] strict tracing requirement . . . would not further the goals of disgorgement because a savvy embezzler could quickly spend the money on luxury vacations, secrete ill-gotten funds away in a location or foreign bank account not detectable by authorities, or *so commingle tainted funds with untainted funds as to make it impossible to trace the tainted funds to their final resting place*." *SEC v. Camarco*, No. 19-1486, 2021 WL 5985058, at *14 (10th Cir. Dec. 16, 2021) (emphasis added)).

Moreover, the authorities Barton cites are inapplicable to the facts here. For instance, *Adams* arose out of the *Stanford* receiver's claw-back efforts and considered whether passive investors who received ill-gotten gains as profits were

properly designated as relief defendants. *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). Barton's characterization of the *Adams* two-part test misrepresents the holding of the case, which did not impose a strict tracing requirement where the target of a claim—here Barton and the entities he controlled—are not designated as "relief defendants." Instead, the case identified the factual predicate for designating defendants as "relief defendants," a holding that has no relevance here.

In *Netsphere*, this Court considered the propriety of a receivership imposed over an individual's assets and two corporations he controlled to preclude the defendant's vexatious litigation tactics, where no allegation was made that the entities were used by the defendant in any wrongdoing, or possessed any assets related to the litigation. *Netsphere, Inc. v. Baron*, 703 F.3d 296, 301-302, 304 (5th Cir. 2012). The case arose from a dispute between private litigants; securities violations and preserving assets for defrauded victims was not in issue. *Id.* In concluding the district court abused its discretion in imposing the receivership, the Fifth Circuit observed that receiverships over "corporate assets," i.e., corporate entities, were appropriate where the "corporate assets are the underlying subject matter of the dispute." *Id.* at 306.

Similarly, the *Faulker* Court considered a motion to expand a receivership estate. In partially granting the motion, the district court explained that it "will include in the receivership estate the assets of any non-party entity that is (i)

controlled by Faulkner and (ii) in possession of funds traceable to BOG or BECC investors." *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *5 (N.D. Tex. Sept. 12, 2018). These cases do not require impose a protracted tracing requirement in every instance a receivership is imposed, particularly in a securities enforcement proceeding.

**2. To Date, Barton Has Rendered Tracing Impossible**

If the Court finds tracing is required, Barton's role in rendering a robust tracing analysis impossible prior to the Receiver's Motion to Approve Sale, mitigates the requirement here. *See Long Beach Mortg. Co. v. White*, No. 95 C 4068, 1995 WL 470234, at *2 (N.D. Ill. Aug. 7, 1995) ("[W]here the presumed wrongdoer's conduct has itself created the roadblock that prevents resort to that usual process [tracing], it is entirely appropriate for a court to freeze all of that party's assets pending the determination of just which assets may be traceable to the allegedly fraudulent activities."). From the first days of the Receivership, as detailed in the Receiver's Motion to Compel Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing [Dkt. 133; 134] (which was filed after the record in this appeal was prepared) Barton has refused to provide access to the Receivership Entities' accounting records and electronic files. Barton has responded to the Receiver's requests for access to these records with delays, refusals, and roadblocks, thereby impeding the Receiver's efforts to trace the ultimate

disposition of millions of dollars that flowed through the Receivership Entities' bank accounts.[8] [Dkt. 133; 134].

### 3. Despite Barton's Efforts to Conceal Records, the Receiver has Traced Investor Funds into the Rock Creek Property

Despite Barton's best efforts to preclude review of accounting records for the Receivership Entities, the Receiver has recently obtained bank records for many of the Receivership Entities and traced funds from Receivership Entities into the Rock Creek Property. For example, as detailed in the Receiver's Verified Motion to Compel Documents and Information from Attorneys, Request for Sanctions, and Brief in Support [Dkt. 199], on August 17, 2020, $300,000 was transferred from a JMJ Development, LLC account (5193) to SF Rock Creek, LLC (3575). That same day nearly $300k was wired to HSTX Title with the memo "41047 [sic] Rock Creek Drive…Balance Due at Closing." The JMJ account statement showed a corresponding transfer of $300k to the SF Rock Creek account, the balance of which at the beginning of the month was $446. On February 17, 2021, SF Rock Creek wired BSI Financial $6,700. Several transfers from JMJ Residential, LLC and JMJ Development accounts provided the funds for the wire to BSI. On March 09, 2021 JMJ Development wired SF Rock Creek $10,200. On March 11, SF Rock Creek wired BSI Financial nearly $10,200. [Dkt. 199].

---

[8] *See* ROA. 167–171.

But–for Barton's refusal to comply with the Receivership Order, this information would have been included in the Receiver's Motion to Approve Sale.

### C. The Receiver's Absence as an Appellee Potentially Prejudices the Receivership Estate and the Defrauded Investors

Barton's interlocutory appeals cause a continuing strain on the Receivership Estate by delaying or disrupting sales of real property, which are the primary Receivership Assets. And the outcome of these appeals will directly impact the amount recovered for the defrauded investors. Excluding the Receiver from the docket in this, and related appeals arising from orders issued at the Receiver's request, raises grave due process and procedural concerns.

Ideally, spending Receivership Assets to defend improper interlocutory appeals should be unnecessary. To the extent Barton continues to flout the absence of jurisdiction for these appeals, however, the Receiver occupies the best position to defend orders related to the administration of the Estate, as well as providing all relevant information related to his motions, and representing the interests of the defrauded investors on whose behalf the Receiver serves. While the SEC is interested in the final outcome of the case, it lacks the same procedural "interest" in interlocutory appeals of orders granted based on the Receiver's motions.

As explained in the Motion to be Recognized, designating the Receiver as the appellee or otherwise as an interested party is appropriate. Based on the Receivership Order, ROA.601–625, and subject to the District Court's supervision, the Receiver

possesses and controls all Receivership Property and is authorized, subject to further orders, to sell receivership property. *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). Indeed, the Receiver is currently the *only* person or entity vested with authority to make decisions regarding the Rock Creek Property, including paying taxes and insurance for the Property and determining its appropriate disposition. ROA.604-05.

Nor would including the Receiver as a party to the appeal be novel. *See Crawford v. Sillette* Appeal No. 09-40641 (designating the receiver as an interested party, although the underlying case clearly reflected the CFTC as the Plaintiff); *Zacarias v. Stanford Int'l Bank, Ltd.*, Appeal No. 17-11073 and many other *Stanford*-related appeals, (identifying the receiver as a ("null") appellee and permitted to file responsive motions and briefs); *Helt v. Sethi Petroleum, L.L.C.*, No. 20-40240, 2022 WL 127977, at *1 (5th Cir. Jan. 13, 2022) (designating receiver, Helt, as the Appellee in SEC enforcement case involving interlocutory appeal of denial of motion to intervene by party who sought to challenge Receiver's authority over certain receivership entities as assets); *SEC v. Res. Dev. Intern.*, 291 Fed. Appx. 660, 661 (5th Cir. 2008) (case docketed reflecting receiver as "Counter-Defendant Appellee" where order at issue, finding appellant in contempt, was issued based on receiver's motion). A similar docketing practice was followed by the Seventh Circuit in *SEC v. Ventus Holdings,* Appeal No. 21-2664, where that receiver was designated

as "Court-Appointed Receiver-Appellee," while the SEC, the Plaintiff, was identified as the "Plaintiff-Appellee" and allowed to file motions and briefs.

Here, no one is harmed by the Receiver's inclusion in this appeal, but his absence potentially harms the investors whose interests he serves and on whose behalf the Rock Creek Order was issued.

## CONCLUSION

The appeal should be dismissed for lack of jurisdiction, or in the alternative, the Rock Creek Order should be affirmed. In the event the appeal proceeds, the Receiver should be included as a party and permitted to be heard.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
Timothy B. Wells
State Bar No. 24131941
tim@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
T: (214) 327-5000
F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF COMPLIANCE

1. I certify that this Motion complies with the type-volume limit of FED. R. APP. P. 21(d) because, excluding the words that need not be counted, it contains 2,973 words.

2. This Motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

## CERTIFICATE UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I certify that (1) required privacy redactions have been made (*see* Local Rule 25.2.13); (2) the electronic submission is an exact copy of the paper document (*see* Local Rule 25.2.1); and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Charlene C. Koonce*
Charlene C. Koonce