NO. 22-11226

# United States Court of Appeals for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

## REPLY BRIEF OF APPELLANT TIMOTHY BARTON

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

# **Table of Contents**


Table of Authorities .................................................................... iii

INTRODUCTION ........................................................................... 1

ARGUMENT ................................................................................. 3

I. The District Court Erred By Placing SF Rock Creek, LLC Into the Receivership Estate, Which Allowed the Receiver To Sell the Rock Creek House. ................................................................ 3

II. The District Court Erred By Selling the Appellant's Home, Making His Removal From His Only Residence Permanent...................... 12

III. This Court Has Appellate Jurisdiction. ........................................ 18

A. This Court Has Appellate Jurisdiction Under 28 U.S.C. § 1291 Because a Judicial Order Confirming a Sale Is a Final Order. ....... 18

B. Alternatively, This Court Has Appellate Jurisdiction Under the Collateral Order Doctrine. ................................................ 19

CONCLUSION ............................................................................ 22

Certificate of Filing and Service .................................................... 23

Certificate of Compliance ............................................................. 24

# Table of Authorities

**Cases** **Page(s)**

*Citibank, N. A. v. Data Lease Fin. Corp.*,
645 F.2d 333 (5th Cir. 1981) .......... 18

*Fed. Sav. & Loan Ins. Corp. v. Dixon*,
835 F.2d 554 (5th Cir. 1987) .......... 16

*Gordon v. Washington*,
295 U.S. 30 (1935) .......... 13

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) .......... *passim*

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) .......... 17, 19

*Madison v. Gordon*,
39 S.W.3d 604 (Tex. 2001) .......... 20

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) .......... 5, 6, 7, 12

*Opulent Life Church v. City of Holly Springs*,
697 F.3d 279 (5th Cir. 2012) .......... 21

*Sage v. Cent. R. Co. of Iowa*,
96 U.S. 712 (1877) .......... 18

*SEC v. Am. Bd. of Trade, Inc.*,
829 F.2d 341 (2d Cir. 1987) .......... 19

*SEC v. Am. Bd. Of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987) .......... 17

*SEC v. Cherif*,
933 F.2d 403 (7th Cir. 1991) .......... 7, 8, 15

*SEC v. CKB168 Holdings, Ltd.*,
No. 13-CV-5584 (RRM), 2017 WL 4465726 (E.D.N.Y. June 20, 2017) ........ 15

*SEC v. First Fin. Grp. of Tex.*,
645 F.2d 429 (5th Cir. 1981) ........ 13

*SEC v. Forex Asset Mgmt. LLC*,
242 F.3d 325 (5th Cir. 2001) ........ 20

*SEC v. Hallam*,
42 F.4th 316 (5th Cir. 2022) ........ 15

*SEC v. Hardy*,
803 F.2d 1034 (9th Cir. 1986) ........ 6

*SEC v. Keller Corp.*,
323 F.2d 397 (7th Cir. 1963) ........ 6

*SEC v. Phillip A. Michael Sec., Inc.*,
No. 74 CIV. 2158, 1974 WL 416 (S.D.N.Y. June 26, 1974) ........ 17

*Solis v. Matheson*,
563 F.3d 425 (9th Cir. 2009) ........ 5

*Tanzer v. Huffines*,
408 F.2d 42 (3d Cir. 1969) ........ 6

*United States v. 4816 Chaffey Lane*,
699 F.3d 956 (6th Cir. 2012) ........ 21

*United States v. 55 Pub. Square*,
No. 21-10696, 2022 WL 1549161 (11th Cir. May 17, 2022) ........ 21

*Westmoreland Brick Co. v. U.S. Malleable Iron Co.*,
16 F.2d 371 (6th Cir. 1926) ........ 19

**Statutes**

28 U.S.C. § 1291 ........ 18, 19

# INTRODUCTION

The Government's arguments in this case have the criminal and civil justice system turned backwards. Before the production of any evidence in discovery, before any evidentiary hearing, before a trial, and before a judgment assessing liability, the United States Government kicked a citizen out of his home and sold it. The SEC accomplished this act through a Receiver it sought as a pretrial remedy, which the Government and the District Court said served the purpose of penalizing the Appellant's alleged wrongdoing. And it did so in the name of special Securities and Exchange Commission equitable powers to secure assets now for a liability it has not proven and to satisfy a potential future judgment it has not secured. A citizen—facing the mighty power of the U.S. Government—is now left to his children's couches for rest, his home and all its contents seized.

This cannot be right as a matter of fundamental fairness or justice. Fortunately, the precedents of this Court make clear that the Government's action here is improper, and that the District Court erred in approving it.

The Government's principal excuse for seizing a citizen's personal home is that it was held by a single-purpose corporation (SF Rock Creek, LLC) on the Appellant's behalf. But this arrangement—holding one's home through a limited liability corporation with no other purpose or assets—is not an uncommon arrangement. This structure also does not carry the Government's burden to seize the home. First, this Court has held that, to place a corporation and its assets into a receivership, much less to begin selling those assets off, the Government needs to show that ill-gotten assets were used by that corporation. *See Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). The Government made no such showing, and in fact, like many Americans, the home was purchased and renovated almost entirely through bank financing. The SEC's only real argument as to why *Janvey* does not apply is that it did not attempt to satisfy *Janvey* when moving for receivership. But that is not an argument in support of receivership, but rather one disclaiming the SEC's potential argument as to why a receivership would be proper. Thus, the SEC's court-appointed receiver (the "Receiver") lacked authority to take control of the Appellant's house and the District Court lacked authority to approve the Receiver's sale of that property.

Second, the District Court erred in its decision to approve the sale of the property. Receivership is an equitable remedy to preserve the status quo of assets, for return to a defendant or use to address any later-proven liability. The SEC's Brief makes no mention of the value of the SF Rock Creek assets that it seeks to preserve for the end of this suit, let alone assess appropriate measures to preserve that amount. The SEC nonetheless attempts to defend the District Court's decision to throw the Appellant's home away forever, without any justification other than it would have been a pain to maintain. Such a destructive and unevaluated decision upends the status quo, rather than preserves it. In the end, the sale serves no more than a punitive purpose, which is not a proper basis to dispose of a party's property.

This Court should reverse the District Court's order approving the sale and remand with instructions to return Appellant's house to him.

## ARGUMENT

### I. The District Court Erred By Placing SF Rock Creek, LLC Into the Receivership Estate, Which Allowed the Receiver To Sell the Rock Creek House.

The SEC does not seriously contend that the District Court applied this Court's test under *Janvey v. Adams*, 588 F.3d 831 (5th Cir. 2009), for

whether a corporation that is not accused of wrongdoing can be seized by the Government and placed into receivership. Instead, the SEC claims only that the *Janvey* decision does not apply and suggests that, if it does apply, it is a defendant's burden to disprove the elements set forth in that precedent. SEC Br. 22–24. Both arguments are wrong. *Janvey* applies and, under *Janvey*'s test, the burden lies with the movant to demonstrate that a relief defendant belongs in the receivership estate. *See Janvey*, 588 F.3d at 834 (addressing a receiver's failure to meet its burden). In this case, the SEC did not meet its burden under *Janvey*, so the District Court erred by placing SF Rock Creek into receivership. If SF Rock Creek was never lawfully part of the receivership estate, it likewise was unlawful to sell the property it held, namely, the Appellant's home. Approving the sale was error.[1]

---

[1] The SEC's assertion that the inclusion of SF Rock Creek in the receivership estate is beyond the scope of this appeal is puzzling. *See* SEC Br. at 22. If SF Rock Creek was not lawfully included in the receivership estate then the District Court could not lawfully have entered its order approving the sale, which is the subject of the present appeal. The Appellant made that argument before the District Court with respect to the Receiver's motion to sell the Rock Creek home, **ROA.2637–38**, and the District Court rejected the argument in approving the sale.

The District Court placed SF Rock Creek into the receivership estate only indirectly under the provision of its Receivership Order that subsumed, without specifically naming, "any . . . entities that Defendant Timothy Barton directly or indirectly controls." **ROA.602.** In appointing such a receivership with such undefined scope, the District Court made no findings of fact or conclusions of law. **ROA.1179**. *See Solis v. Matheson*, 563 F.3d 425, 438 (9th Cir. 2009) ("The district court was correct that it has authority to order a receivership, but only after evidence has been presented and findings made showing the necessity of a receivership.").

Both the SEC and Appellant agree that "equity does not allow a receivership to be imposed over property that [is] not the subject of the underlying dispute." *Netsphere, Inc. v. Baron,* 703 F.3d 296, 306 (5th Cir. 2012); *Janvey*, 588 F.3d at 834. The SEC, however, struggles to explain how this principle applies in the present case against non-defendant SF Rock Creek. The SEC contends only that the Rock Creek property could have been placed into receivership because the house is a corporate asset that is the subject of the underlying securities dispute. SEC Br. at 22 (quoting *Netsphere*, 703 F.3d at 306). That argument by the SEC is

unsupported by anything in the record. Neither the SEC's Complaint nor any subsequent motion practice mentions this house as being relevant to the merits of this lawsuit. Further, when corporate assets are the underlying subject matter of a securities case, it generally is because *the corporation that owns that property is being accused of securities fraud*. *See Netsphere*, 703 F.3d at 306 (SEC sought appointment of a receiver over the corporate assets of corporations alleged to have directly violated the law) (citing *SEC v. Keller Corp.*, 323 F.2d 397, 398–99 (7th Cir. 1963); *Tanzer v. Huffines*, 408 F.2d 42, 43 (3d Cir. 1969) (per curiam) (stockholders sought to appoint a receiver over corporations that they alleged the defendants directly used to commit wrongdoing); *SEC v. Hardy*, 803 F.2d 1034, 1035 (9th Cir. 1986) (SEC sought to appoint a receiver over "entities [that] had conducted an elaborate scheme to defraud persons who invested with the[m]"). The facts of this case are much different. Here, SF Rock Creek is not named as a defendant, and the SEC does not allege that SF Rock Creek played any role in defrauding or taking money from any SEC-protected lenders. How could the SEC have? SF Rock Creek *is not an operating business*. Its sole purpose is to hold ownership, on behalf of the Appellant, of a single asset: The

Appellant's private residence. The SEC therefore had no basis under *Netsphere* to impose a receivership over SF Rock Creek.

The SEC's only potential means to obtain equitable relief over a non-defendant is to establish that it properly can be joined as a "relief defendant." A relief defendant is one that has not been named or charged with wrongdoing, but who holds amounts of property or funds in which it has no ownership interest and is thus added to the lawsuit to aid in the plaintiff's potential recovery related to those amounts. *Janvey*, 588 F.3d at 834; *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991). That said, the SEC admits it did not attempt to obtain a receivership over SF Rock Creek in its a capacity as a "relief defendant." SEC Br. at 23. That admission is significant. By disclaiming SF Rock Creek's status as a relief defendant, the SEC disclaims its only potential avenue to obtain a receivership over that entity.

The SEC did not inadvertently establish grounds to include SF Rock Creek as a relief defendant either. This Court's requirements for adding a relief defendant to a lawsuit are set forth in *Janvey*. Specifically, to satisfy *Janvey*, the SEC was required to show that SF Rock Creek "(1) has received ill-gotten funds, and (2) does not have a

legitimate claim to those funds." *Janvey*, 588 F.3d at 834. But, as the SEC concedes, SEC Br. at 24, no funds could be traced "from one investor into [SF Rock Creek]." **ROA.3095:5–8**. That fact is fatal under the first prong of *Janvey*. And if the SEC could not establish that SF Rock Creek received such funds, "the district court lacked authority" to place it into the receivership estate, *Janvey*, 588 F.3d at 834, the Receiver could not have lawfully attempted to sell the Rock Creek property, and the District Court could not have lawfully approved that sale.

It is of no import that the SEC *alleged* that certain of the Appellant's other businesses commingled funds, or that the District Court apparently believed allegations of commingling despite a lack of supporting evidence. *See* SEC Br. at 23–24 (contending that such allegations are sufficient). As an initial matter, mere assertion is not enough to satisfy the SEC's burden. *Cf. Cherif*, 933 F.2d at 414 n.11 ("mere assertion" that a party is a proper "nominal defendant" is insufficient). In any event, not even the SEC's assertions in the District Court are relevant to its burden under *Janvey*. When moving for receivership, the SEC claimed to be aware of numerous other Barton-controlled entities such as SF Rock Creek, but it could only speculate as

to whether many of those entities might have received or benefitted from the investor funds at issue. *Compare* **ROA.179** (referring only to a possibility that "other entities" "may have also received or benefited from investor funds"), *with* **ROA.187–88** (identifying 107 entities associated with Barton, most of which are not alleged to have received lender funds). What the SEC actually said to the District Court in seeking its receivership cannot be squared with what it claims on appeal: That *all* entities related to Mr. Barton now should be found to have used or benefitted from such funds. SEC Br. at 23–24.

The Receiver separately admits he could not trace funds "from [any] investor into [SF Rock Creek] to purchase the house." **ROA.3095:5–8.** Instead, the Receiver, and apparently the District Court, assumed that funds were commingled because the Receiver could not otherwise explain "how these businesses operated." **ROA.3095:9–10**. However, *Janvey*'s requirements cannot be met by claiming a lack of understanding or by jumping to unsupported conclusions about commingling. There is a burden of proof.

In any event, the record is plain as to how the Appellant's home was purchased and renovated: Through a mortgage, the vehicle that most

Americans use to buy and improve their homes. **ROA.1214** (referencing home financing amount from third-party lender). And neither the Government nor the District Court addressed the fact that the Appellant has operated a successful real estate development business for 30 years, generating income completely unrelated to the loan proceeds that the SEC now contends were procured in violation of the Securities Exchange Act of 1934. Even the Government's head scratching as to how this home could have been purchased cannot be squared with the evidence in the record.

Importantly, it is not the Appellant's burden to provide tracing evidence or to disprove unsubstantiated allegations of commingling. *Janvey* is clear: "the Receiver [must] establish that" any relief defendant it seeks to place into receivership has actually "received ill-gotten funds" without "a legitimate claim to those funds." *Janvey*, 588 F.3d at 834. As the *Janvey* panel noted, unless "the Receiver" demonstrates both prongs of the *Janvey* test, a "district court *lack[s] authority*" to reach a relief defendant's assets. *Id.* at 834–35 (emphasis added). The District Court's placement of SF Rock Creek into receivership based on the Receiver's non-showing was, therefore, outside its authority, and its subsequent

approval of the sale—the foundation of which was this unlawful inclusion of SF Rock Creek in the receivership estate—was error.

Needless to say, neither the Receiver nor the Government even attempts to satisfy *Janvey*'s second prong, under which it was required to show that SF Rock lacked "a legitimate claim to [any lender] funds." *Id.* at 834. They never got out of the gate to show what, if any, subject funds the corporation holding the defendant's personal residence received. That omission alone is enough to render SF Rock Creek's inclusion in the receivership estate unlawful. *Id.* (holding that a receiver did not establish proper relief defendants because it failed to meet its burden on the second prong to establish those parties' lack of legitimate claim to the funds in question).

Because the District Court lacked authority to place SF Rock Creek into the receivership estate, the Receiver lacked authority to sell SF Rock Creek's assets, including the Appellant's home. The District Court's approval of that sale was error.

## II. The District Court Erred By Selling the Appellant's Home, Making His Removal From His Only Residence Permanent.

A receivership, and the actions taken by a Receiver, is an equitable remedy. *Netsphere*, 703 F.3d at 305. There is *nothing equitable* about the Receiver's rush to sell the Appellant's only home, and the District Court's approval of that sale. This is not some antiseptic corporate governance issue, where the SEC takes over some heavily-regulated broker dealer it has accused of wrongdoing and runs it through a receiver. *The Government kicked the Appellant out of his home* and watched while the Receiver and the District Court *sought to permanently sell it*. That action was not taken as a last resort, to use the proceeds to keep the lights on and preserve millions in assets, *but as the Receiver's very first move*. The Receiver seized the Appellant's home two days after he was appointed. *Compare* **ROA.601** (appointing Receiver on October 18, 2022), *with* **ROA.628** (reflecting the Receiver's efforts to remove Appellant from the home on October 20, 2022). He listed it for sale two weeks later, not after some thorough appraisal of the assets at his disposal. And it was the very first sale of assets for which the Receiver sought the District Court's approval.

This sale had absolutely nothing to do with sound administration of the receivership estate, and had everything to do with turning up the heat on a defendant in parallel criminal prosecution. It carried out what the District Court expressly and erroneously said was a purpose of the Receivership: To punish the Appellant, before the production of any discovery, much less proof of wrongdoing at trial. **ROA.602** (Receivership Order reciting penal purpose). Even Bernie Madoff, accused of outrageous actions not remotely at issue in this case, was allowed to stay in his Park Avenue apartment while he considered defending himself. Mr. Barton was not permitted to remain in his modest, three bedroom, Dallas home, forced to mount his defense from the living room couches of his adult children.

The SEC mounts no meaningful defense of the seizure and sale of the Appellant's home that sounds in the legal principles governing receiverships. Of course, a prejudgment receivership is generally supposed to preserve the status quo, pending a final resolution of allegations, not to permanently alter it. *Gordon v. Washington*, 295 U.S. 30, 37 (1935) (noting that receiverships are supposed "to preserve and protect . . . property pending its final disposition"); *SEC v. First Fin. Grp.*

*of Tex.*, 645 F.2d 429, 438 (5th Cir. 1981) (approving "the appointment of a receiver to maintain the status quo"). This is so property can be either returned as it was found to the Appellant (in the event he prevails) or (if representing the actual proceeds of wrongdoing) used to compensate victims if the SEC prevails at trial.

The SEC concedes that prejudgment receivers must "preserve the status quo," but contorts itself to contend that what this Receiver was doing by permanently selling the Appellant's home was somehow carrying out that mandate. SEC Br. at 25. The SEC says the sale was "a tool to preserve receivership value." SEC Br. at 25. As an initial matter, if the claim is that the house was more trouble than it was worth and that the costs of maintenance did not merit worth the few hundred thousand dollars in net value, *the SEC and the Receiver should not have seized the house in the first place.* Maintaining it and paying the mortgage would have been the Appellant's problem.

Second, the record makes clear that, to the extent operating cash needed to be raised, there were other asset sales to which the Appellant would have consented that would have raised much more. **ROA.2635; ROA.3062–64; ROA.3068–69**. The value of the sale to the Government

and the Receiver was not in administration of the estate, but in hitting the Appellant where it hurts—discarding his only home forever. Selling those other assets that were ready for sale, while maintaining the home, would have preserved the status quo by bringing in value while causing the least disruption to the estate in the state the Receiver found it.

Third, the SEC makes no attempt to explain what value in Appellant's home supposedly needed to be liquidated to secure the disgorgement award it purportedly seeks against SF Rock Creek. A disgorgement order against an entity is limited to the amount that entity has been unjustly enriched. *SEC v. Hallam*, 42 F.4th 316, 320 (5th Cir. 2022); *see also SEC v. CKB168 Holdings, Ltd.*, No. 13-CV-5584 (RRM), 2017 WL 4465726, at *7 (E.D.N.Y. June 20, 2017) ("[A]ny funds which are found to be [a relief defendant's alone] rather than [a defendant's] must be excluded from [a] freeze order.") (citing *Cherif*, 933 F.2d at 416 n.15). Without any assessment of what a potential disgorgement amount against SF Rock Creek may be, if any, the SEC has no basis to argue that prejudgment liquidation of the entire entity is required to secure such an amount. Indeed, liquidation of the entire asset without any assessment

of the underlying value to be recovered is a destructive measure that upends the status quo rather than preserves it.

Separately, the District Court abused its discretion by approving liquidation to advance the improper punitive purpose of the receivership. Contrary to the SEC's contentions, the District Court's receivership order expressly rested on, in part, "preserving the illicit proceeds of fraudulent conduct, *penalizing past unlawful conduct* and deterring future wrongdoing." **ROA.602** (emphasis added). By characterizing the lender funds as "illicit proceeds" and the Appellant's *past* conduct as "unlawful," the District Court impermissibly "assume[d] the wrongdoing before judgment" in a "suit . . . brought to establish the [Appellant's] wrongdoing," and, by imposing the receivership, "remove[d] the [Appellant's] ability to defend [himself]." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 564–65 (5th Cir. 1987). Lest there be any doubt that going after assets with personal meaning to punish him is driving the District Court's decisions, the District Court removed that doubt in its Order on December 13, 2022, when mandating seizure of the property of the Appellant's son. The District Court quoted the Old Testament to explain: "[T]he Court acts consistently with Scripture's just admonition

that each out to be *penalized* for his own wrongdoing." **ROA.2605 n.16** (emphasis added).

Moreover, that punitive purpose is borne out in the sale of the Appellant's home, an intensely personal asset, unrelated to any conduct at issue in the SEC's Complaint, that was included in the receivership for no reason other than to punish the Appellant. By approving a sale to dispose of this property without a meritorious basis, the District Court abused its discretion. *See, e.g., SEC v. Phillip A. Michael Sec., Inc.*, No. 74 CIV. 2158, 1974 WL 416, at *2 (S.D.N.Y. June 26, 1974) ("[T]he extraordinary remedies of injunctive relief and receivership should not be invoked when the only effect would be punitive, not remedial."); *see also Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (expressing concern about the "penalty" that would result by ordering liquidation through SEC receivership); *SEC v. Am. Bd. Of Trade, Inc.*, 830 F.2d 431, 436–37 (2d Cir. 1987) (counseling against receivership liquidation).

## III. This Court Has Appellate Jurisdiction.

### A. This Court Has Appellate Jurisdiction Under 28 U.S.C. § 1291 Because a Judicial Order Confirming a Sale Is a Final Order.

The thrust of the SEC's argument against jurisdiction under 28 U.S.C. § 1291 is that an order confirming the sale of property can only be "final" if the sale arises in a foreclosure or bankruptcy context. SEC Br. at 12. But the precedents advanced by the SEC do not so hold.

In *Sage v. Cent. R. Co. of Iowa*, cited by the SEC (SEC Br. at 12), the Supreme Court of the United States long ago made clear that "a decree confirming a sale . . . may be appealed from" when "it is final." 96 U.S. 712, 714 (1877). An order is "final" by disposing of right to title to the purchaser such that "relief against the sale . . . can alone be had to an appeal from the decree of confirmation." *Id.* The Fifth Circuit has adopted this same law. *Citibank, N. A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981) (citing *Sage* for the proposition that "An order confirming a judicial sale of property is a final order from which an appeal may be taken pursuant to 28 U.S.C. § 1291.").

The case law imposes no further or additional requirement that a sale occur in a third-party foreclosure or bankruptcy context for the sale

to be final. *See, e.g., Westmoreland Brick Co. v. U.S. Malleable Iron Co.*, 16 F.2d 371, 372 (6th Cir. 1926) (citing the holding from *Sage* in reversing order confirming sale order during receivership). That is why the Ninth Circuit took up an appeal of a SEC receivership liquidation order under 28 U.S.C. § 1291, *Los Angeles Tr. Deed & Mortg. Exch.*, 285 F.2d at 165, and the Second Circuit recognized that, in an SEC receivership proceeding, "an order confirming a judicial sale is final and appealable under Section 1291." *SEC v. Am. Bd. of Trade, Inc.*, 829 F.2d 341, 344 (2d Cir. 1987) (ultimately rejecting jurisdiction because the district court did *not* "purport to dispose of the property conclusively" when ordering a second auction to occur prior to ultimate sale). In all such scenarios, an order confirming the sale of real property results in a final, irreversible disposition that is appealable.

### B. Alternatively, This Court Has Appellate Jurisdiction Under the Collateral Order Doctrine.

The District Court's order involves a sale of *real property* that will be difficult, if not impossible, to unwind if the Appellant is forced to wait until the end of this action to seek relief. The SEC's argument against application of the collateral order doctrine ignores that simple fact. *See generally* SEC Br. at 13–20. This is not a transfer of liquid funds that

are fungible and may easily be redistributed at the end of a case. It is the transfer of title to the Appellant's home, which was taken away from him before he ever had a chance to file an answer as a party in the SEC's lawsuit below.

That makes a difference. A judicial order confirming sale of real property "conclusively determines the manner in which the receivership asset[] should be distributed," it "resolves [the] important issue regarding" whether the property will be sold, "which is separate from the merits of the SEC's complaint," and it "is effectively unreviewable on appeal" because once title to the real property is transferred, the buyer can raise a bevy of defenses to any attempt by the Appellant to reclaim it. *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001).

Those defenses include the bona fide purchaser status that any buyer could use as a shield to prevent returning the property. *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) ("Status as a bona fide purchaser is an affirmative defense to a title dispute."). While state law permits persons in the Appellant's position to file a *lis pendens* to provide constructive notice of the disputed nature of the title, the District Court extinguished the *lis pendens* that the Appellant filed. **ROA.2741.**

Losing title would constitute irreparable harm. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that losing an interest in real property, even a leasehold, constitutes irreparable harm).

The question, then, is whether judicial orders confirming sales are appealable under the collateral order doctrine where the sale will transfer title to real property, leaving little chance for the rightful owner to get the property back if forced to wait until the conclusion of litigation. In that sense, the question here is similar to the civil asset forfeiture context, wherein multiple sister circuits have found that the collateral order doctrine applies. *See United States v. 55 Pub. Square*, No. 21-10696, 2022 WL 1549161, at *2 n.1 (11th Cir. May 17, 2022) (unpublished) ("[A]n interlocutory order authorizing the immediate sale of real property in a forfeiture case is a collateral order subject to immediate appeal."); *United States v. 4816 Chaffey Lane*, 699 F.3d 956, 959 (6th Cir. 2012) (same). The same logic applies in this case. Because the District Court's order confirming the sale meets the requirements of the collateral order doctrine, this Court has jurisdiction to reverse that order.

## CONCLUSION

This Court should reverse the District Court's order as the result of several erroneous applications of receivership law and violations of this Court's precedents, and remand with instructions to return the Rock Creek house to the Appellant.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Michael J. Edney*

Michael J. Edney
Michael Dingman
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*
*mdingman@huntonak.com*

Ted A. Huffman
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
(214) 979-3000
*thuffman@huntonak.com*

ATTORNEYS FOR APPELLANT
TIMOTHY LYNCH BARTON

April 19, 2023

## Certificate of Filing and Service

I hereby certify that on April 19, 2023, this document was filed and served in PDF format using the United States Court of Appeals for the Fifth Circuit's CM/ECF system upon all counsel of record, as follows:

Ezekiel L. Hill
hillez@sec.gov
Securities and Exchange Commission
100 F St., N.E.
Washington, DC 20549

Keefe M. Bernstein
bernsteink@sec.gov
James E. Etri
etrij@sec.gov
David B. Reece
reeced@sec.gov
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102

*Counsel for the Securities and Exchange Commission*

In addition, I further certify that this electronic filing is an exact copy of the paper document and any privacy redactions have been made. This filing has been scanned for viruses and has been found to be free of viruses.

*/s/ Michael J. Edney*

## Certificate of Compliance

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 4,440 words, as calculated using the word processor used to prepare this document, Microsoft Word for Microsoft 365. I also certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Michael J. Edney*